**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON HILL, an individual, and INTERARCH, INC., a New Jersey corporation,<br><br>        Plaintiffs,<br><br>     v.<br><br>REPUBLIC FIRST BANCORP, INC., d/b/a REPUBLIC BANK, a Pennsylvania corporation;<br>RODNEY DEAN, an individual; and<br>JOHN CHESSA, an individual,<br><br>        Defendants. | CIVIL ACTION NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Vernon Hill II ("Mr. Hill") and InterArch, Inc. ("InterArch"), by and through their undersigned counsel, hereby file this Complaint against Defendant Republic First Bancorp, Inc., d/b/a Republic Bank ("Republic Bank" or the "Bank") and former InterArch employees Rodney Dean and John Chessa (Dean and Chessa constituting the "Individual Defendants"), and in support thereof, aver as follows:

## NATURE OF THE ACTION

1.      This action arises out of a vindictive campaign by Republic Bank's new management ("New Management") to oust its now-former CEO and Board president, Plaintiff Vernon Hill II – the man who oversaw Republic Bank's rise to success – while misappropriating the unique, highly valuable banking model and brand equity that Mr. Hill developed and has used to bring great success to three different banking institutions so far.  In its eagerness to cut all ties with Mr. Hill, the Bank's New Management also terminated its relationships with other long-

standing business partners of the Bank for no reason other than their affiliation with Mr. Hill. InterArch, a company owned and managed by Mr. Hill's wife, Shirley Hill, is one of those partners.

2.      There is no question that New Management terminated its relationship with InterArch out of spite, and not for any legitimate reason.  In fact, just last June, senior management and the Board conducted an extensive review of InterArch's work and its pricing.  An independent third party was engaged to assess the value of InterArch's services and concluded that the services were provided at a fair market value and pursuant to terms "favorable" to Republic Bank.  This evaluation further concluded that "[a]s the marketing arm of Republic Bank, the expertise, experience, efficiency and quality of InterArch's work appears to be a great example of outsourcing to provide cost savings for Republic Bank."  It is therefore not a surprise that the Bank's COO and the Chair of the Audit Committee of the Board both recommended an increase to InterArch's scope of work and its fee, and the Board approved this decision.

3.      Notwithstanding this decision just last year, the Bank quickly turned on the Hills and InterArch without any valid basis.  As set forth herein, although New Management was quick to terminate the Bank's relationships with Mr. Hill and InterArch, it realized belatedly that the Bank is in no position to operate without the valuable brand assets that Mr. Hill and InterArch brought to it, including but not limited to numerous copyrighted artistic creations, memorable slogans (specifically including but not limited to "THE POWER OF RED IS BACK"), and popular images of Mr. Hill and his dog (collectively, "Plaintiffs' Work Product," the "InterArch Work Product" or "Work Product").

4.      Rather than cease its use of those valuable brand assets – which Mr. Hill and InterArch own – the Bank has wrongfully continued to use and exploit them, without the

permission of or compensation to Mr. Hill and InterArch.  Moreover, the Bank poached two of InterArch's key employees to facilitate its ongoing wrongful use of those valuable assets.

5.     Plaintiffs accordingly seek relief in this suit to enjoin and redress: (a) the Bank's copyright infringement, trademark infringement, contractual breach, unfair competition, unjust enrichment, and tortious interference with InterArch's relationships with its employees; (b) the Individual Defendants' breach of their duty of loyalty to InterArch; and (c) all Defendants' misappropriation of Plaintiffs' valuable trade secrets.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state law claims.

7.     This judicial district is the proper venue for this proceeding pursuant to 28 U.S.C. § 1391, as the Defendant's principal place of business is located in the Eastern District of Pennsylvania, and because a substantial part of the events giving rise to the cause of action occurred in the Eastern District of Pennsylvania.

## PARTIES

8.     Plaintiff Vernon Hill II is an adult individual, residing at Villa Collina, 262 East Main Street, Moorestown, NJ 08057.  Mr. Hill is the founder and former chairman of New Jersey-based Commerce Bank (now part of TD Bank), and Metro Bank, a UK bank with 77 retail stores.

9.     Plaintiff InterArch, Inc. is a company organized and existing pursuant to the laws of the State of New Jersey with its principal place of business located at 123 Chester Ave,

Moorestown, NJ 08057.  InterArch was founded, and is owned and run, by Shirley Hill ("Mrs. Hill").  Shirley Hill is Vernon Hill's spouse.

10.     Defendant Republic First Bancorp, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business located at Two Liberty Place, 50 S 16th Street, Philadelphia, PA 19102. Republic First Bancorp, Inc. does business as Republic Bank.

11.     Defendant Rodney Dean is an adult individual residing at 1327 South 17th Street, Philadelphia, Pennsylvania, 19146.  Dean held a senior role at InterArch in its Moorestown, New Jersey office until September 13, 2022, when he resigned.  After that resignation, Dean became an employee of Republic Bank, and upon information and belief, now manages its marketing and promotional outreach with Defendant Chessa.

12.     Defendant John Chessa is an adult individual residing at 337 North Pennsylvania Avenue, Morrisville, PA 19067, Pennsylvania.  Chessa held a senior role at InterArch in its Moorestown, New Jersey office until September 13, 2022, when he resigned.   After that resignation, Chessa became an employee of Republic Bank and, upon information and belief now manages its marketing and promotional outreach with Defendant Dean.

## STATEMENT OF FACTS
*"THE POWER OF RED IS BACK":*
*Republic Bank's Rise to Success Under Mr. Hill's Leadership*

13.     Republic Bank was founded in 1987. For its first twenty years, the Bank was a relatively small player in the Philadelphia-area banking market, offering primarily commercial banking services.

14.     By 2008, the Bank was in distress.  Among other things, it was suffering from serious capital problems, it was engaged in questionable practices such as payday lending, its share price and market capitalization had dropped precipitously and its net income was negative.

15.     In 2008, the Bank retained Mr. Hill – who had previously founded and led two highly successful retail banks (New Jersey-based Commerce Bank and Metro Bank in the UK) – as a financial and strategic consultant. Mr. Hill also provided a substantial capital contribution to Republic Bank in 2008, which Republic Bank sorely needed at the time.

16.     Mr. Hill brought more than thirty years' worth of experience as a pioneering banking executive to his work with Republic Bank.  Over more than three decades, Mr. Hill had developed a unique marketing plan and brand for the two banks he had previously founded – Metro Bank (UK) and Commerce Bank.  His innovative, customer-focused strategy and highly distinctive branding – featuring, among other things, stylized logos for the banks' names featuring a prominent red first letter and white lettering against a blue background, dog-friendly store policies and advertising campaigns (often featuring the Hills' own Yorkshire terrier, Sir Duffield ("Duffy")), in-store coin counting machines with distinctive trade dress, crowd-pleasing mascots and striking architectural designs for bank stores – led to notable commercial success for both Commerce Bank and Metro Bank, and garnered considerable media and public attention.  As international best-selling business author Tom Peters wrote, "[t]he story of Commerce Bank and now Metro Bank is virtually one of a kind - they do so damn much right."  Tom Peters, *Foreword to* Vernon Hill, Fans Not Customers at ix-xv (2012).  Peters includes "Vernon Hill's Commerce Bank and Metro Bank" in his "Hall of Fame" of "Customer Service Kings," praising both Mr. Hill's remarkable banking business model and the "matchless" innovative red and blue color design that Mr. Hill and InterArch developed as a core brand identity for his banks.  *Id.*

17.     Representative images of Mr. Hill's distinctive banking brand, as used with Commerce and Metro Banks (with Mr. Hill, Mrs. Hill and Duffy featured in the fourth and fifth images), are shown below:







18.     As a result of Mr. Hill's decades of work in building a distinctive, successful brand for his two highly popular consumer banks, consumers had come to associate key elements of

those brands – including those referenced above – with customer-focused banking services offered by a particular source (namely, a bank led by Mr. Hill). Republic Bank frequently used images of Mr. Hill in its advertising and promotional materials as a means of indicating to consumers that Mr. Hill endorsed, sponsored, and/or was affiliated with Republic Bank.

19.     Mr. Hill has always maintained ownership and control of his banking-related brand assets.  As set forth in greater detail below, the day-to-day use of those assets has always been managed and controlled by InterArch, with Mr. Hill's active and ongoing input and involvement.

20.     When Republic Bank engaged Mr. Hill in 2008, it did so in large part because it wanted to adopt his tested, proven and highly successful banking brand and marketing plan.

21.     Mr. Hill delivered.  Under Mr. Hill's guidance, Republic Bank increased deposits, reduced its loan-to-deposit ratio, and maintained strong liquidity and reserve ratios while also aggressively managing its asset quality. Among its more public-facing changes, under Mr. Hill's leadership the Bank changed its business model to offer stores that were open seven days a week (save federal holidays) with extended lobby and drive-through hours, providing customers with the longest hours of any bank in the area.  The Bank also offered absolutely free checking, free coin counting, ATM/Debit cards issued on the spot, and access to more than 55,000 surcharge-free ATMs worldwide.

22.     The Bank's Board – including the leader of its New Management – acknowledged Mr. Hill's key role in transforming Republic Bank into a highly successful enterprise.  In an article published by the Philadelphia Business Journal on December 5, 2016, Mr. Madonna was quoted regarding Mr. Hill's role, stating: "I think it's a great idea . . . I want the bank to be associated with Vernon Hill.  He has a proven track record of success and our investors like him and his model works.  We were oversubscribed in raising $100 million and some of that has to do with Vernon."

23.     Since in or around 2014, the Bank has aggressively promoted its revamped, retail customer-focused business under the tagline "THE POWER OF RED IS BACK."  That slogan, which Mr. Hill created, is a reference to the brand model that Mr. Hill had built with his highly successful Commerce Bank (as well as Metro Bank in the UK), featuring the prominent use of red in its logos and marketing materials.  Representative images showing the use of Mr. Hill's brand for Republic Bank are shown below:








24.     As Mr. Hill intended, consumers and the media recognized the connection between the old Commerce Bank and new Republic Bank business models, and understood the "THE POWER OF RED IS BACK" to mean that Republic Bank, under Mr. Hill's leadership, was now offering the same kind of customer-focused banking services that Commerce Bank had previously offered under his leadership.

25.     In 2016, Mr. Hill joined the Bank's Board of Directors and assumed the role of Chairman of the Board.  In 2021, the Bank made Mr. Hill its Chief Executive Officer.

26.     The Bank thrived under Mr. Hill's leadership, growing from $700 million to $5.6 billion in assets and increasing its number of retail stores to thirty-three.

27.     On March 18, 2022, Mr. Hill was ranked in the top 12% of the "NASDAQ CEO Scorecard" as a result of the Bank's net profit growth in the fourth quarter of 2021.

*InterArch's Role in Republic Bank's Branding Success*

28.     InterArch is an international design firm that specializes in architecture, interiors, and branding.  Among other things, it provides innovative branding, marketing, and advertising services to its customers.  InterArch's designs and branding strategies are the core of its business and provide InterArch (and its clients) with a competitive edge.

29.     For years, InterArch has partnered closely with Mr. Hill to implement his vision for the banks he has led.

30.     For both Commerce Bank and Metro Bank, InterArch created and managed the use of the architectural designs, logos and marketing materials that gave life to Mr. Hill's "THE POWER OF RED" brand and vision for innovative, customer-focused banking services.

31.     When Republic Bank retained Mr. Hill to bring his successful banking model to Republic, it also retained InterArch to design, deploy and oversee use of the myriad of promotional and marketing materials that embody Mr. Hill's brand in the eyes of consumers.

32.     The Work Product that InterArch has created over the past twelve years to bring Mr. Hill's "THE POWER OF RED IS BACK" brand to life for Republic Bank includes, but is not limited to, the Bank's distinctive stylized logo featuring a red "R" and white lettering against a blue background, Bank "mascots" (including photographic and cartoon images of the Hills' dog, Duffy, as well as a cartoon "R-Dog" character), and innumerable brochures, buckslips, booklets, advertisements, recruiting materials, graphics for the Republic Bank mobile app, video production, in-store displays, T-shirt designs, holiday door clings, grand opening signs, and photography for the Bank's website.

33.     Among many other things, InterArch created the following federally registered artistic works in the course of its relationship with Republic Bank (the "Registered Works"):

| Reg. No. (Name) | Work | Effective Date of Reg. |
|---|---|---|
| VA 2-317-805 ("Duffy Photo") |  | September 9, 2022 |
| VA 2-319-005 ("R-Dog") |  | September 9, 2022 |
| VA 2-322-672 ("Republic Bank Money Zone") |  | September 9, 2022 |
| VA 2-322-673 ("Magic Money 5 for 5 Club") |  | September 9, 2022 |
| VA ("Duffy") |  | September 23, 2022 |
| VA ("Bones Dog Treat Bowl") |  | September 23, 2022 |

| | | |
|---|---|---|
| VA ("<u>Magic Money Machine Display</u>") |  | September 23, 2022 |
| VA ("<u>Safe Deposit Box Display</u>") |  | September 23, 2022 |

34.     InterArch is the sole creator and owner of the Registered Works, and is the sole owner of the federal copyright registrations for the Registered Works.

*Plaintiffs' Ownership of Their Work Product*

35.     Mr. Hill and InterArch have at all times maintained ownership of the valuable brand assets they have created for use in connection with banking services at banks led by Mr. Hill, specifically including the Work Product they created in the course of their relationship with Republic Bank.

36.     Mr. Hill entered into several contracts with the Bank, including a 2008 consulting agreement and employment agreements in 2017 and 2021.  None of those agreements provides for any transfer of ownership rights in Mr. Hill's "THE POWER OF RED IS BACK" slogan or the other Work Product he has developed in his nearly five decades of experience as a bank founder and leader.

37.     InterArch, too, has entered into at least two Master Agreements with the Bank – one for the provision of branding, marketing and advertising services (the "<u>Branding Agreement</u>"), and another for the provision of architectural services (the "<u>Architectural Agreement</u>") – as well

as a series of letter agreements detailing the particular services that InterArch would provide for the Bank for particular periods of time pursuant to those Master Agreements.  InterArch has never, in the course of its relationship with the Bank, agreed to transfer ownership of the Work Product that is at issue in this suit to the Bank (*i.e.*, Work Product other than architectural drawings and related materials associated with the completed construction of a new store).  On the contrary, in the Branding Agreement, InterArch made clear that it retained ownership of all Work Product that it created pursuant to the Agreement, and that it was granting the Bank a limited license to use its Work Product only for projects in which InterArch was engaged.

38.    Specifically, the Branding Agreement states that "All work product shall remain the sole property of Consultant [InterArch], who grants the Owner/Developer [Republic Bank] a limited license to utilize such work products on those projects in which Consultant has been engaged."

39.    Even if InterArch and Republic Bank did not enter into such an agreement, without a signed writing explicitly assigning its ownership rights, InterArch retains all rights to the work product it creates.

*Republic Bank's Termination of Its Relationship with Plaintiffs*
*and Ongoing Wrongful Use of Plaintiffs' Work Product*

40.    In July 2022, after a heated struggle between New Management and a group led by Mr. Hill for control of the Bank and its Board that spawned multiple lawsuits, Mr. Hill resigned from the Board and from his role as Bank CEO.

41.    Almost immediately thereafter, on July 15, 2022, the Bank's New Management informed InterArch that it was terminating the parties' Branding and Architectural Agreements, effective as of August 14, 2022.  The Bank gave no reason for its termination.

42.     Pursuant to the Branding Agreement, the Bank's limited license to use InterArch's Work Product expired with the termination of the parties' relationship.

43.     The Bank, however, has wrongfully continued to use Mr. Hill's "THE POWER OF RED IS BACK" brand, Mr. Hill's likeness (and that of the Hills' dog), and a wide range of InterArch's Work Product, ranging from images of the real world and cartoon canine mascots that InterArch devised, to advertising and marketing materials posted on the Bank's website and in its stores. To cite just a few examples:

a.     A Republic Bank branch located at 90 5th Avenue, New York, NY 10011 ("5th Avenue Republic Bank"), distributed pamphlets displaying the Duffy Photo, R-Dog, and Magic Money 5 for 5 Club works (each a Registered Work) at least as recently as September 27, 2022, after each of these Registered Works was registered.

b.     The 5th Avenue Republic Bank also displayed the Magic Money Machine Display and Bones Dog Treat Bowl at least as recently as September 27, 2022, after each of these Registered Works was registered.

c.     Numerous Republic Bank locations still have a Magic Money Machine Display, Bones Dog Treat Bowl, and Safe Deposit Box Display on display. Each of these displays constitutes a separate copyright infringement of each of these Registered Works.

44.     Additionally, InterArch's Twitter page has continued to feature copies of InterArch's Duffy Photo and R-Dog drawings (both Registered Works) and derivative works of R-Dog, as shown in the screenshots below, captured after these works were registered:



captured on November 10, 2022



Capture on November 10, 2022



captured on September 21, 2022



captured on September 21, 2022



captured on September 21, 2022

45.     Further, Republic Bank has continued to use Work Product created by InterArch that contains images of Mr. Hill and Duffy, as well as prominent usage of Mr. Hill's "THE POWER OF RED IS BACK" slogan, such as the one shown below:



46.     Plaintiffs have demanded that Republic Bank cease all use of Plaintiffs' Work Product, including materials featuring Mr. Hill. Mr. Hill does not consent to the Bank's use of his name or likeness in connection with advertising, promotion, or any other commercial purpose of the Bank.

47.     Nevertheless, at least as recently as early November 2022, the Bank has continued to display images of Mr. Hill in its store window advertisements. Upon information and belief, images of Mr. Hill continue to be shown in Republic Bank windows and on brochures, pamphlets, and other promotional and advertising materials displayed and distributed by or on behalf of Republic Bank.

*InterArch and the Individual Defendants*

48.     Mr. Dean and Mr. Chessa were key, high-level employees of InterArch.

49.     Mr. Dean worked at InterArch for 16 years.  His final role at InterArch prior to his resignation was Creative Director.

50.     Mr. Chessa worked at InterArch for 13 years.  His final role prior to his resignation was Graphic Designer.

51.     As part of the Individual Defendants' roles as high-level employees at InterArch, they were privy to InterArch's highly confidential and proprietary information and intellectual property.

52.     Among the confidential and proprietary information made accessible to the Individual Defendants were InterArch's work-in-progress designs, images, products and website designs, as well as market studies, plans and analyses for promotional campaigns and strategies, compilations of branding and marketing materials, projections and other documents prepared for clients (collectively, "Confidential Information") – specifically including but not limited to Confidential Information that related to InterArch's work for Republic Bank.

53.     The Individual Defendants were privy to the Confidential Information in the regular course of their work duties, including by nature of their roles as senior design employees and their access to InterArch's computer systems.  The Individual Defendants both worked on Republic Bank projects for many years, and were intimately involved with the development of materials for Republic Bank.

54.     InterArch's Confidential Information, which InterArch developed over many years and at great expense, and which InterArch shared with the Individual Defendants in confidence to enable them to perform their duties for InterArch, gives InterArch a competitive advantage over its competitors. It is not part of the public domain and is closely guarded by InterArch.

55.     In order to protect its Confidential Information, InterArch employs a comprehensive corporate confidentiality policy regarding its business information. For example, in 2014, InterArch required that all employees sign a confidentiality agreement ("Confidentiality Agreement"), specifying that they would hold any confidential and propriety information learned or received in the course of their employment with InterArch in strict confidence, and that they would not disclose or otherwise use such information except for in the performance of their duties for InterArch. Upon hiring, all InterArch employees further were required to sign acknowledgment of InterArch's email, Internet, and other policies. The acknowledgement further requires all employees to "accept the principle that the welfare of InterArch depends upon the conduct and honesty of the employee and upon trust and confidence of the public."

56.     The Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to the Confidential Information. As employees of InterArch, the Individual Defendants were required to sign the Confidentiality Agreement and acknowledgement of InterArch's policies. Moreover, Mr. Dean was substantially involved in a prior dispute between InterArch and Commerce Bank, in which InterArch vigorously enforced its ownership rights to similar work product and intellectual property materials that are at issue in this litigation. Thus, Mr. Dean is well aware of InterArch's longstanding claim to ownership of its work product and prior enforcement of its rights.

57.     Mr. Dean was also involved in sensitive attorney-client privileged discussions with InterArch's outside counsel regarding InterArch's plans to pursue its claims against Republic Bank with respect to InterArch's Work Product in this case, and was aware of InterArch's privileged legal strategy and plans to enforce its rights.  Indeed, Mr. Dean was one of the key contacts between

InterArch and outside counsel, and assisted with crafting legal strategy and developing InterArch's claims against Republic Bank.

*Republic Bank's Solicitation of the Individual Defendants*

58.     For more than a decade, the Bank depended on InterArch to manage its branding, marketing and advertising operations.

59.     When the Bank terminated its relationship with InterArch as part of New Management's vendetta against Mr. Hill, it effectively cut off its own ability to continue to promote its business and communicate with customers.

60.     The Bank also was not prepared to cease its use of Plaintiffs' Work Product, despite the fact that its limited license to use InterArch's Work Product terminated when the Bank terminated its Master Agreement with InterArch, and that Mr. Hill had never conveyed any rights to his likeness or "THE POWER OF RED IS BACK" brand to the Bank (beyond an implied license to use them while he was affiliated with the Bank).

61.     The Bank knew that the Individual Defendants had access to InterArch's Confidential Information, in light of their high-level positions at InterArch and their long-standing relationship with the Bank as InterArch representatives.  The Bank also knew that the Individual Defendants had been actively involved for years in InterArch's management of marketing and advertising work on the Bank's behalf.

62.     The Bank accordingly orchestrated a targeted raid on InterArch with the intent of luring the Individual Defendants away from InterArch.  By doing so, the Bank intended to maintain its access to InterArch's Confidential Information (which the Individual Defendants possessed) and continue its now-unauthorized and infringing use of Plaintiffs' Work Product.

63.     In furtherance of this scheme, the Bank induced the Individual Defendants to tender their resignations to InterArch and accept employment with the Bank – even in the midst of the ongoing dispute between InterArch and the Bank regarding the Bank's wrongful continued use of InterArch's Work Product, and notwithstanding the Bank's knowledge that the Individual Defendants possessed Confidential Information and trade secrets belonging to InterArch.

64.     The Individual Defendants knew that Republic Bank had not ceased its use of Plaintiffs' Work Product and had hamstrung its own marketing activities by terminating its contract with InterArch.  The Individual Defendants also knew that InterArch was consulting with outside litigation counsel regarding potential claims against the Bank for the Bank's wrongful ongoing use of InterArch's Work Product; indeed, Defendant Dean participated directly in those discussions.  The Individual Defendants further knew that they were in possession of highly valuable and proprietary InterArch Confidential Information relating to InterArch's past and contemplated future work for the Bank.

65.     After the Individual Defendants gave InterArch notice of their intention to terminate their employment with InterArch and accept employment with the Bank, InterArch asked the Individual Defendants to confirm in writing that they had returned all of InterArch's Confidential Information in their possession and that they understood their obligations with respect to InterArch's Confidential Information and intellectual property.  The Individual Defendants refused to do so.

66.     In light of that refusal, as well as the Bank's clear intent to hire away key InterArch employees in order to facilitate its own continuing misuse of Plaintiffs' Work Product, InterArch has reason to believe that the Individual Defendants wrongfully accessed and took InterArch's Confidential Information prior to or upon their departure from InterArch, with the intention of

sharing that Confidential Information with Republic Bank and using that Confidential Information in the course of their employment with Republic Bank.

67.     Republic Bank either orchestrated this employee raid and encouraged the Individual Defendants to so act and violate their confidentiality obligations or aided and abetted such violations for the specific purpose of misappropriating and continuing its wrongful use of Plaintiffs' Work Product and InterArch's Confidential Information.

68.     Republic Bank knew, or was reckless in not knowing, that the Individual Defendants had improperly taken Confidential Information from InterArch with the intent of disclosing and using it at Republic Bank.

69.     Republic Bank knew, or was reckless in not knowing, that the Individual Defendants' common-law duties of loyalty and confidentiality forbade certain kinds of conduct on the part of the Individual Defendants, both before and after the termination of their InterArch employment.

70.     On September 16, 2022, InterArch, through its outside counsel, advised the Individual Defendants in writing of many of the facts described above.  InterArch demanded, among other things, that the Individual Defendants cease and desist from any and all wrongful disclosure and/or use of InterArch's Confidential Information and acknowledge in writing whether they had returned all of InterArch's Confidential Information in their possession.  Once again, the Individual Defendants refused to sign such an acknowledgement.

71.     On September 27, 2022, InterArch, through counsel, wrote to outside counsel for Republic Bank to remind the Bank of its obligations to InterArch following the departure of the Individual Defendants.  InterArch informed the Bank that the Individual Defendants were high-level employees at InterArch with knowledge of InterArch's Confidential Information, and that

Mr. Dean in particular had been involved in sensitive attorney-client privileged discussions regarding InterArch's claims against Republic Bank.

72.     In its September 27 letter, InterArch demanded that Republic Bank provide a sworn affidavit certifying that:  (1) neither Republic Bank nor any person acting on its behalf will view, discuss, or otherwise use any of InterArch's confidential, proprietary, or privileged information; (2) Republic Bank will ensure that the Individual Defendants are walled off from any and all discussions regarding any legal or anticipated legal matter (with this term to be construed in the broadest sense possible) with InterArch; and (3) Republic Bank will provide to InterArch any and all documents regarding the prospective employment of Mr. Dean and Mr. Chessa with Republic Bank.

73.     Republic Bank refused to provide the information and acknowledgements that InterArch demanded.  Instead, Republic Bank responded through counsel on September 28, 2022, asserting that "neither Mr. Dean nor Mr. Chessa took anything from InterArch when their employment terminated" and would return any "stray materials from their years of employment," but otherwise refusing to give InterArch the assurances it requested.

74.     Defendants' conduct was, and is, in furtherance of a scheme to obtain and convert to their own benefit and competitive advantage InterArch's Confidential Information and intellectual property (including but not limited to the Registered Works).

75.     Through this conduct, Defendants have unlawfully raided InterArch's workforce, engaged in unfair competition, tortious interference, breach of duty of loyalty, and misappropriation of InterArch's trade secrets and confidential customer information, among other improper acts.

## COUNT I: COPYRIGHT INFRINGEMENT
### (InterArch against Republic Bank)

76.     InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

77.     The Registered Works are original works of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq.* InterArch is the exclusive owner of rights under copyright in and to the Registered Works. InterArch owns valid copyright registrations for the Registered Works, attached as **Exhibit A**.

78.     Through Republic Bank's conduct alleged herein, including Republic Bank's reproduction, distribution, and public display of the Infringing Works, which are identical to InterArch's Registered Works, without InterArch's permission, Republic Bank has directly infringed InterArch's exclusive rights in the Registered Works in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

79.     Republic Bank's infringing conduct alleged herein was and continues to be willful and with full knowledge of InterArch's rights in the Registered Works and has enabled Republic Bank illegally to obtain profit therefrom.

80.     As a direct and proximate result of Republic Bank's infringing conduct alleged herein, InterArch has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), InterArch is also entitled to recovery of Republic Bank's profits attributable to the Bank's infringing conduct alleged herein and an accounting of and a constructive trust with respect to such profits.

81.     Alternatively, InterArch is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each of InterArch's Registered Works that the Bank has infringed, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

82.     InterArch further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

83.     As a direct and proximate result of Republic Bank's infringing conduct alleged herein, InterArch has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, the Bank will continue to infringe the Registered Works. InterArch therefore is entitled to permanent injunctive relief restraining and enjoining the Bank's ongoing infringing conduct.

## COUNT II: TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))
### (Mr. Hill against Republic Bank)

84.     Mr. Hill incorporates by reference the foregoing paragraphs as if set forth fully herein.

85.     Before he joined Republic Bank, over a period of more than thirty years Mr. Hill had built a highly distinctive brand for customer-focused banking services that features, among other things, a distinctive bank logo featuring the name of the bank with a prominent red first letter and white lettering against a blue background.  He used that brand at both Commerce and Metro Banks, and built considerable consumer goodwill in his brand.

86.     As a result of Mr. Hill's considerable and extensive promotion of his pioneering, customer-focused approach to banking through, among other things, the use of stylized logos and marketing materials with prominent red features, consumers have come to associate such red-featuring stylized logos and marketing features with Mr. Hill's customer-focused banking services.

87.     When Republic Bank asked Mr. Hill in 2008 to bring both his capital and his banking model to the Bank, first as a strategic consultant and ultimately as Board Chairman and

CEO, it did so with the specific intention of gaining access to Mr. Hill's proven customer-focused banking brand and marketing strategies.

88.     After he joined Republic Bank, Mr. Hill coined the phrase "THE POWER OF RED IS BACK" as a marketing slogan to emphasize the connection between Republic Bank and his distinctive brand of customer-focused banking services.

89.     Since at least 2014, the Bank has prominently featured Mr. Hill's "THE POWER OF RED IS BACK" mark in its marketing, promotional and corporate materials, expressly acknowledged its desire to benefit from the consumer goodwill associated with Mr. Hill's unique brand of banking services, and expressly stated that it intended its use of "THE POWER OF RED IS BACK" to create an association in consumers' minds between the Vernon Hill-led Commerce Bank and the Vernon Hill-led Republic Bank.

90.     Mr. Hill never transferred ownership of his "THE POWER OF RED IS BACK" mark to the Bank.  Rather, at most Mr. Hill granted the Bank a limited implied license to use his mark and brand for so long as Mr. Hill – the owner of the red-themed banking brand – was affiliated with the Bank.

91.     When the Bank terminated its relationship with Mr. Hill and InterArch in July 2022, its limited license to use Mr. Hill's "THE POWER OF RED IS BACK" mark and his brand expired.

92.     The Bank has nevertheless wrongfully continued to use the "THE POWER OF RED IS BACK" mark in promotional, advertising, marketing and other materials to promote banking services that are no longer associated with Mr. Hill and his customer-focused banking services.  Indeed, the Bank has even continued to display images of Mr. Hill (and the Hills' dog, Duffy) in its marketing and advertising materials, to promote its banking services.

93.     The Bank's unauthorized continued use of Mr. Hill's "THE POWER OF RED IS BACK" mark and brand assets is likely to cause consumer confusion regarding the affiliation, connection or association of the Bank with Mr. Hill, and/or regarding the origin, sponsorship or approval of the Bank's banking services and commercial activities.

94.     The Bank's wrongful continued use of Mr. Hill's "THE POWER OF RED IS BACK" mark constitutes trademark infringement pursuant to 15 U.S.C. § 1125(a).

95.     The Bank's infringement of Mr. Hill's trademark rights has been knowing, deliberate, intentional and willful.

96.     As a direct and proximate result of Republic Bank's infringing conduct as alleged herein, Mr. Hill has been harmed and is entitled to an accounting of profits and/or other damages in an amount to be proven at trial.

97.     Mr. Hill is also entitled to a declaration that this case is exceptional, and to an award of his attorneys' fees.

98.     As a direct and proximate result of Republic Bank's infringing conduct alleged herein, Mr. Hill has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, the Bank will continue to infringe Mr. Hill's trademark rights. Mr. Hill therefore is entitled to permanent injunctive relief restraining and enjoining the Bank's ongoing infringing conduct.

## COUNT III: MISAPPROPRIATION OF TRADE SECRETS
### Under the Defend Trade Secrets Act, 18 U.S.C.A. § 1836
**(InterArch against all Defendants)**

99.     InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

100.    InterArch's work-in-progress designs, images, products and website designs, as well as its market studies, plans and analyses for promotional campaigns and strategies, compilations of branding and marketing materials, projections and other documents prepared for clients, constitute protectable trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C.A. § 1836 ("DTSA"), insofar as:

    a.  InterArch invests substantial resources to create, compile and maintain this information;

    b.  the information is not known outside of InterArch, except to the extent it is shared confidentially with its customers;

    c.  InterArch takes reasonable and significant precautions to safeguard the confidentiality of this information, including but not limited to requiring Individual Defendants – and all InterArch employees - to sign Confidentiality Agreements, prohibiting employees from disclosing or otherwise using confidential information obtained in the course their employment with InterArch;

    d.  the information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense; and

    e.  the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

101.    InterArch's Confidential Information is of significant value to InterArch, provides it with a significant competitive advantage and is extremely important in the conduct of its business.

102.    InterArch disclosed its Confidential Information to the Individual Defendants while they were in positions of trust and confidence and under circumstances that make it inequitable and unjust for them to have appropriated the materials and to be using them for their own benefit or that of defendant Republic Bank.

103.    The Individual Defendants were privy to InterArch's Confidential Information in the regular course of their work duties, including by nature of their roles as senior design employees and their access to InterArch's computer systems.

104.    The two Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to the Confidential Information.

105.    In violation of their obligations described above, the Individual Defendants accessed and misappropriated InterArch's trade secrets.

106.    By copying, taking, retaining, or otherwise using InterArch's Confidential Information in breach of their duty of secrecy and loyalty, and/or causing these actions to be taken, the Individual Defendants have actually, willfully, and maliciously misappropriated InterArch's trade secrets in violation of the DTSA.

107.    The Individual Defendants obtained improper and unauthorized access to InterArch's confidential and proprietary information and intellectual property prior to or upon their departure, and that information is now improperly in the possession of Republic Bank.

108.    In addition, because the Individual Defendants now act as representatives of and are employed by defendant Republic Bank, defendant Republic Bank has likewise misappropriated InterArch's trade secrets in violation of the DTSA.

109.    Republic Bank knew, had reason to know, or was reckless in not knowing that the trade secrets were acquired through improper means; or knew or had reason to know that the

information consisted of a trade secret and that knowledge of it had been acquired through improper means.

110.    Republic Bank knew, or was reckless in not knowing, that the Individual Defendants whom it had hired to work had improperly taken confidential information and trade secrets from InterArch for their use at Republic Bank.

111.    In the alternative, even if InterArch's Confidential Information did not constitute trade secrets within the meaning of the DTSA – and it does – the Defendants are nonetheless liable for the wrongful conversion of such proprietary materials and for breach of their fiduciary duties.

112.    As a direct result of the misappropriation of its trade secrets by all Defendants, InterArch is suffering, has suffered and/or will suffer actual and/or consequential damages, including the wrongful ongoing disclosure and use of its proprietary and confidential business information and attorney-client privileged material, as well as other injuries.

113.    Defendants' misappropriation of InterArch's Confidential Information and trade secrets has been knowing, deliberate, intentional and willful.

114.    As a direct and proximate result of Defendants' wrongful conduct as alleged herein, InterArch has been harmed and is entitled to damages in an amount to be proven at trial.

115.    As a direct and proximate result of Republic Bank's infringing conduct alleged herein, InterArch has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, Defendants will continue to make wrongful disclosure and/or use of InterArch's Confidential Information and trade secrets. InterArch therefore is entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing wrongful conduct.

**COUNT IV: MISAPPROPRIATION OF TRADE SECRETS**
**Under the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.***
**(InterArch against all Defendants)**

116.    InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

117.    InterArch's work-in-progress designs, images, products and website designs, as well as its market studies, plans and analyses for promotional campaigns and strategies, compilations of branding and marketing materials, projections and other documents prepared for clients, constitute protectable trade secrets under the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.* ("NJTSA"), insofar as:

   a.  InterArch invests substantial resources to create, compile and maintain this information;

   b.  the information is not known outside of InterArch, except to the extent it is shared confidentially with its customers;

   c.  InterArch takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring Individual Defendants – and all InterArch employees - to sign Confidentiality Agreements, prohibiting employees from disclosing or otherwise using confidential information obtained in the course their employment with InterArch; and

   d.  the information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense.

118.    InterArch's Confidential Information is of significant value to InterArch, provides it with a significant competitive advantage and is extremely important in the conduct of its business.

119.    InterArch disclosed its Confidential Information to the Individual Defendants while they were in positions of trust and confidence and under circumstances that make it inequitable and unjust for them to have appropriated the materials and to be using them for their own benefit or that of defendant Republic Bank.

120.    The Individual Defendants were privy to InterArch's Confidential Information in the regular course of their work duties, including by nature of their roles as senior design employees and their access to InterArch's computer systems.

121.    The two Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to the Confidential Information.

122.    In violation of their obligations described above, the Individual Defendants accessed and misappropriated InterArch's trade secrets.

123.    By copying, taking, retaining, or otherwise using InterArch's Confidential Information in breach of their duty of secrecy and loyalty, and/or causing these actions to be taken, the Individual Defendants have actually and willfully misappropriated InterArch's trade secrets in violation of the NJTSA.

124.    The Individual Defendants obtained improper and unauthorized access to InterArch's confidential and proprietary information and intellectual property prior to or upon their departure, and that information is now improperly in the possession of Republic Bank.

125.    In addition, because the Individual Defendants now act as representatives of and are employed by defendant Republic Bank, defendant Republic Bank has likewise misappropriated InterArch's trade secrets in violation of the NJTSA.

126.    Republic Bank knew, had reason to know, or was reckless in not knowing that the trade secrets were acquired through improper means; or knew or had reason to know that the

information consisted of a trade secret and that knowledge of it had been acquired through improper means.

127.    Republic Bank knew, or was reckless in not knowing, that the Individual Defendants whom it had hired to work had improperly taken confidential information and trade secrets from InterArch for their use at Republic Bank.

128.    In the alternative, even if InterArch's Confidential Information did not constitute trade secrets within the meaning of the NJTSA – and it does – the Defendants are nonetheless liable for the wrongful conversion of such proprietary materials and for breach of their fiduciary duties.

129.    As a direct result of the misappropriation of its trade secrets by all Defendants, InterArch is suffering, has suffered and/or will suffer actual and/or consequential damages, including the wrongful ongoing disclosure and use of its proprietary and confidential business information and attorney-client privileged material, as well as other injuries. As a direct result of the misappropriation of its trade secrets by all Defendants, InterArch is suffering, has suffered and/or will suffer actual and/or consequential damages, including the wrongful ongoing disclosure and use of its proprietary and confidential business information and attorney-client privileged material, as well as other injuries.

130.    Defendants' misappropriation of InterArch's Confidential Information and trade secrets has been knowing, deliberate, intentional and willful.

131.    As a direct and proximate result of Defendants' wrongful conduct as alleged herein, InterArch has been harmed and is entitled to damages in an amount to be proven at trial.

132.    As a direct and proximate result of Republic Bank's infringing conduct alleged herein, InterArch has sustained and will continue to sustain substantial, immediate, and irreparable

injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, Defendants will continue to make wrongful disclosure and/or use of InterArch's Confidential Information and trade secrets. InterArch therefore is entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing wrongful conduct.

## COUNT V: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE BUSINESS RELATIONSHIPS
### (InterArch against Republic Bank)

133.   InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

134.   Mr. Dean was employed at InterArch from 2006, and Mr. Chessa from 2009, until September 13, 2022, when they both left InterArch to work at Republic Bank.

135.   During the term of their employment with InterArch and thereafter, the Individual Defendants were aware of their attendant obligations of confidentiality towards InterArch.

136.   Republic Bank purposefully and actually interfered with the contractual and business relationships between the Individual Defendants, third parties and InterArch by, *inter alia*, inducing the Individual Employees to breach their obligations of confidentiality owed to InterArch and to terminate their employment with InterArch.

137.   Republic Bank used wrongful means to effectuate its interference, in that it acted for the improper purpose of taking from InterArch the employees who had knowledge of InterArch's Confidential Information and the ability to use that Confidential Information and InterArch Work Product, so that the Bank could continue to use and benefit from InterArch's Confidential Information and Work Product without compensation to InterArch. Republic Bank expropriated InterArch's business so that it could take that business in-house and raided

InterArch's leadership for the purpose of acquiring InterArch's proprietary or confidential business information.

138.     Republic Bank's misconduct not only interfered with InterArch's relationship with two senior and valuable team members; it also harmed InterArch's existing and prospective business relationships.   By poaching these two key team members, the Bank has harmed InterArch's relationships with existing customers, as well as its ability to attract new customers.

139.     The conduct of Republic Bank was, and continues to be, improper and not privileged.

140.     As a direct result of Republic Bank's tortious interference, InterArch is suffering, has suffered and/or will suffer actual and/or consequential damages, including the wrongful disclosure and ongoing use of its Confidential information and Work Product, as well as other injuries.

## COUNT VI: BREACH OF CONTRACT
### (InterArch against Republic Bank)

141.     InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

142.     InterArch and Republic Bank are parties to a Master Branding Agreement.

143.     Pursuant to the Branding Agreement, InterArch agreed to create branding, marketing, and advertising materials for Republic Bank's use, and granted Republic Bank a limited license to use those materials in connection with projects in which InterArch was engaged.

144.     In exchange for InterArch's services, Republic Bank agreed to pay InterArch agreed compensation in the form of monthly fees, the amount of which was fixed from time to time in ancillary letter agreements.

145.   InterArch performed its duties under the parties' Branding Agreement. Specifically, InterArch developed, created, and provided hundreds if not thousands of branding, marketing, and advertising products for Republic Bank's use, subject to the limited license.

146.   On July 15, 2022, Republic Bank terminated the Branding Agreement, effective as of August 14, 2022.

147.   Following termination of the Branding Agreement, Republic Bank continued using InterArch's valuable Work Product, despite its limited license having expired upon termination.

148.   Republic Bank has materially breached the Branding Agreement by continuing to use InterArch's Work Product after termination of the Branding Agreement, without InterArch's permission and without compensation to InterArch.

149.   Republic Bank's breach has caused InterArch to suffer damages, which are continuing to accrue, including loss of revenue from Republic Bank's use of InterArch's Work Product without compensation to InterArch, and InterArch's loss of control over its Work Product.

150.   InterArch is entitled to judgment in its favor directing Republic Bank to make payment to InterArch in an amount to be determined at trial.

151.   As a result of Republic Bank's breach, InterArch is entitled to an award of prejudgment interest at the statutory rate of 6% measured from when the underlying damages were due or payable, pursuant to 41 P.S. §§ 201-202.

152.   InterArch is additionally entitled to an injunction requiring Republic Bank to immediately cease use, and be permanently enjoined from using, of all of InterArch's Work Product previously provided to Republic Bank, in all forms and all media.

## COUNT VII: UNJUST ENRICHMENT
### (Plaintiffs against Republic Bank)

153.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

154.    Republic Bank's continued use of Plaintiffs' Work Product after termination of its relationship with Plaintiffs constitutes a benefit conveyed on Republic Bank that was outside of or over and above the benefits contemplated by the parties' contractual agreements with the Bank.

155.    Republic Bank benefited from the use of Plaintiffs' Work Product in that it uses that Work Product to market and advertise its business, attract customers, recruit employees, and generally increase its revenues from the use of these materials.

156.    Plaintiffs reasonably expected to be compensated for Republic Bank's use of their Work Product, and were in fact so compensated until the Bank terminated its relationship with Plaintiffs in July 2022.

157.    It would be inequitable to allow Republic Bank to retain the benefits conferred by Plaintiffs without paying for their value.

158.    As restitution, Plaintiffs are entitled to a judgment in their favor directing Republic Bank to make payment to Plaintiffs for the reasonable value of the benefit provided in an amount to be determined at trial, plus interest, costs, and expenses.

159.    Plaintiffs are additionally entitled to an injunction, requiring Republic Bank to immediately cease use, and be permanently enjoined from using, of all of Plaintiffs' Work Product previously provided to Republic Bank, in all forms and all media.

## <u>COUNT VIII: BREACH OF THE DUTY OF LOYALTY</u>
**(InterArch against Individual Defendants)**

160.    InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

161.    While employed at InterArch, the Individual Defendants were part of its management and enjoyed a high level of trust and confidence from InterArch.  Accordingly, the Individual Defendants were privy to InterArch's proprietary Confidential Information and intellectual property.

162.    The Individual Defendants had a continuing duty after they left InterArch not to use the Confidential Information they had acquired during their employ in such a way as to harm InterArch's interests.

163.    While still employed by InterArch, the Individual Defendants breached their fiduciary duty of loyalty by, among other misdeeds:

     a.    Misappropriating or causing to be misappropriated Confidential Information belonging to InterArch;

     b.    Participating, while still in InterArch's employment, in Republic Bank's scheme to misappropriate and continue wrongful use of InterArch's Work Product and Confidential Information, all the while being aware that the purpose of the scheme was to injure and damage InterArch's business and to improperly gain access to and wrongfully use InterArch's Work Product and Confidential Information; and

     c.    Concealing their activities and misdeeds from InterArch.

164.    The Individual Defendants undertook these actions in anticipation of their resignation, intending to use InterArch's Work Product and Confidential Information against InterArch's interests, and for the Individual Defendants' own purpose or those of a third party.

165.    On information and belief, following their termination of employment with InterArch, both Defendants continued to breach their fiduciary duties to InterArch by using the Confidential Information they had acquired from InterArch and facilitating Republic Bank's misuse of Work Product belonging to InterArch.

166.    The Individual Defendants' actions had the result of aiding an adverse party engaged in a dispute with their employer and whose interests conflict with those of their employer.

167.    As a result of the above-described breaches of fiduciary duty, InterArch is suffering, has suffered and/or will suffer actual and/or consequential damages, including the wrongful disclosure and ongoing use of its Confidential information and Work Product, as well as other injuries.

## COUNT IX: UNFAIR COMPETITION
### (InterArch against Republic Bank)

168.    InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

169.    Republic Bank undertook the aforementioned conduct in bad faith for the improper purpose of taking from InterArch the employees who had knowledge of InterArch's Confidential Information and the ability to use that Confidential Information and InterArch Work Product, so that the Bank could continue to use and benefit from InterArch's Confidential Information and Work Product without compensation to InterArch.

170.     As a direct and proximate result of the above-described unfair methods of competition, InterArch is suffering harm including, among other things, the wrongful disclosure and ongoing use of its Confidential information and Work Product, as well as other injuries.

## COUNT X: DECLARATORY JUDGMENT
### (InterArch against all Defendants)

171.     InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

172.     InterArch engaged outside counsel regarding InterArch's potential litigation claims against Republic Bank with respect to InterArch's Work Product.

173.     At least one of the Individual Defendants was involved in sensitive attorney-client privileged discussions with InterArch's outside counsel regarding InterArch's potential litigation claims against Republic Bank and InterArch's legal strategy to enforce its rights.

174.     The attorney-client privilege attached to those discussions resides with InterArch, and the Individual Defendants do not have the authority to waive that privilege.

175.     Defendant Republic Bank was aware that the Individual Defendants had access to InterArch's Confidential Information as well as InterArch's privileged discussions with its outside litigation counsel regarding its dispute with the Bank.

176.     The Individual Defendants have refused to acknowledge that they have returned all of InterArch's confidential and privileged documents or that they understand their obligations with respect to InterArch's attorney-client privileged discussions.

177.     Republic Bank has also refused to confirm that:  (1) neither Republic Bank nor any person acting on its behalf will view, discuss, or otherwise use any of InterArch's Confidential Information; and/or (2) Republic Bank will ensure that the Individual Defendants are walled off

from any and all discussions regarding any legal or anticipated legal matter (with this term to be construed in the broadest sense possible) with InterArch.

178.     As a direct and proximate result of Defendants' wrongdoing as described herein, InterArch is, has been and/or will be suffering actual and/or consequential damages in the form of the imminent threat of the disclosure of its attorney-client privileged and other confidential information to Republic Bank or to the public.

### COUNT XI: VIOLATION OF VERNON HILL'S RIGHT OF PUBLICITY
**(Mr. Hill against Republic Bank)**

179.     Mr. Hill incorporates by reference the foregoing paragraphs as if set forth fully herein.

180.     Republic Bank has used, and continues to use, Mr. Hill's likeness without his permission or consent in connection with commercial and promotional purposes.

181.     Specifically, Republic Bank has used, and continues to use, images of Mr. Hill on advertisements displayed in its bank branch windows, on pamphlets and brochures distributed in its bank branches, and on other promotional and advertising materials.

182.     As a direct and proximate result of Republic Bank's unauthorized use of Mr. Hill's likeness alleged herein, Mr. Hill has been harmed and is entitled to damages in an amount to be proven at trial.

183.     Further, as a direct and proximate result of Republic Bank's unauthorized use of Mr. Hill's likeness alleged herein, Mr. Hill has sustained and will continue to sustain immediate and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Republic Bank's infringing conduct is enjoined by this Court, the Bank will continue to use Mr. Hill's likeness without his consent. Mr. Hill therefore is entitled to permanent injunctive relief restraining and enjoining the Bank's use of his image for a commercial purpose.

WHEREFORE, for the claim of copyright infringement, InterArch requests that judgment be entered in favor of in favor of InterArch and against Republic Bank, for the following relief:

a) Damages, in an amount to be determined at trial, plus interest;

b) Should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits;

c) Plaintiff's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

d) An order that:

   i. Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any of InterArch's Registered Works;

   ii. Defendant Republic Bank be ordered to destroy or deliver up for destruction all Infringing Works in Defendant's possession, custody, or control used by Defendant; and

e) Such other legal and equitable relief recoverable under the Parties' contracts or applicable law.

WHEREFORE, for the claim of trademark infringement, Mr. Hill requests that judgment be entered in his favor and against Republic Bank, for the following relief:

a) An accounting of profits and/or compensatory damages, in an amount to be determined at trial, plus interest;

b) A declaration that this case is exceptional and an award of Mr. Hill's attorneys' fees;

c) An order that:

      i.   Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing Mr. Hill's "THE POWER OF RED IS BACK" mark and/or any derivative or confusingly similar marks;

     ii.   Defendant Republic Bank be ordered to destroy or deliver up for destruction all infringing materials in Defendant's possession, custody, or control used by Defendant; and

d)  Such other legal and equitable relief recoverable under the Parties' contracts or applicable law.

WHEREFORE, for the claims of breach of contract (InterArch as Plaintiff) and unjust enrichment (both Plaintiffs), Plaintiffs requests that judgment be entered in favor of in favor of Plaintiffs and against all Defendants, jointly and severally, for the following relief:

a)  Damages, in an amount to be determined at trial, plus interest;

b)  An order that:

      i.   Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any of Plaintiffs' Work Product; and

     ii.   Defendant Republic Bank be ordered to destroy or deliver up for destruction all unlawful uses of Plaintiffs' Work Product in Defendant's possession, custody, or control used by Defendant; and

c)  Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

WHEREFORE, for the claims of misappropriation of trade secrets (under federal and New Jersey law), breach of the duty of loyalty, tortious interference with contractual and business

relationships, and unfair competition, InterArch requests that judgment be entered in favor of InterArch and against all Defendants, jointly and severally, for the following relief:

    a)  Damages in an amount to be determined at trial, plus interest;

    b)  Punitive damages;

    c)  A permanent injunction ordering Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act:

        i)  To return immediately all originals and copies of any documents, information, data, files, or other materials that Defendants took, copied, caused to be taken or copied, or received from InterArch;

        ii)  To cease and refrain from copying, distributing, displaying, or otherwise using any of InterArch's confidential, proprietary, or privileged information, documents, information, data, files, or other materials;

        iii)  To cease and refrain from using any attorney-client privileged information, communications, or materials prepared for or made between InterArch and its counsel; and

    d)  Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

WHEREFORE, for its declaratory judgment claim, InterArch requests that judgment be entered in favor of InterArch and against all Defendants, jointly and severally, for the following relief:

    a)  A declaratory judgment holding that communications between InterArch and its outside counsel pertaining to InterArch's dispute with the Bank are attorney-client

privileged, that the privilege resides with InterArch alone, and that Individual Defendants do not have the authority to waive the privilege;

b) A permanent injunction ordering Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act:

    i) To return immediately all originals and copies of any documents, information, data, files, or other materials that Defendants took, copied, caused to be taken or copied, or received from InterArch;

    ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of InterArch's confidential, proprietary, or privileged information, documents, information, data, files, or other materials;

    iii) To cease and refrain from using any attorney-client privileged information, communications, or materials prepared for or made between InterArch and its counsel;

WHEREFORE, for his right-of-publicity claim, Mr. Hill requests that judgment be entered in favor of Mr. Hill and against Republic Bank for the following relief:

a) Damages in an amount to be determined at trial, plus interest;

b) A permanent injunction ordering Republic Bank, any person or firm acting on its behalf or in concert with it, and any person or firm through which it acts, to immediately cease and refrain from using Mr. Hill's name or likeness for any advertising, promotional, or other commercial purpose;

c) Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

By:     _Tracy Zurzolo Quinn_____
        Tracy Zurzolo Quinn
        **HOLLAND & KNIGHT LLP**
        2929 Arch Street
        Suite 800
        Philadelphia, PA 19104
        (215) 252-9522
        Tracy.Quinn@hklaw.com

        *Counsel for Plaintiffs*

Dated: November 28, 2022