**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON HILL, an individual, and INTERARCH, INC., a New Jersey corporation,<br><br>    Plaintiffs,<br><br>      v.<br><br>REPUBLIC FIRST BANCORP, INC., d/b/a REPUBLIC BANK, a Pennsylvania corporation; RODNEY DEAN, an individual; and JOHN CHESSA, an individual,<br><br>    Defendants. | No. 22-cv-04735-CFK<br><br>AMENDED COMPLAINT |

## AMENDED COMPLAINT

Plaintiffs Vernon Hill II ("Mr. Hill") and InterArch, Inc. ("InterArch"), by and through their undersigned counsel, hereby file this Amended Complaint against Defendant Republic First Bancorp, Inc., d/b/a Republic Bank ("Republic Bank" or the "Bank") and former InterArch employees Rodney Dean and John Chessa (Dean and Chessa constituting the "Individual Defendants"), and in support thereof, aver as follows:

## NATURE OF THE ACTION

1.       This action arises out of Republic Bank's ouster of its now-former CEO and Board president, Plaintiff Vernon Hill II.  Upon assuming control of the Bank in 2022, the Bank's new management group ("New Management") quickly moved to sever all ties with Mr. Hill.  The Bank terminated its agreements with Mr. Hill and other long-standing business partners of the Bank for no reason other than their affiliation with him.  InterArch, a company owned and managed by Mr. Hill's wife, Shirley Hill, is one of those partners.

2.       Although Republic Bank cut ties with Mr. Hill and InterArch, the Bank has

continued to use Plaintiffs' intellectual property in violation of various laws and agreements. Indeed, the Bank quickly realized that it was in no position to operate without the valuable brand assets that Mr. Hill and InterArch brought to it and were key to its success. This included numerous copyrighted artistic creations, memorable slogans (specifically including but not limited to "THE POWER OF RED IS BACK"), marketing and advertising materials, and popular images of Mr. Hill and his dog (collectively, "Plaintiffs' Work Product," the "InterArch Work Product" or "Work Product"). Yet, rather than cease its use of those valuable brand assets – which Mr. Hill and InterArch own – the Bank has wrongfully used and continues to exploit them, without the permission of or compensation to Mr. Hill and InterArch.

3.     The Bank also realized that it was in no position to maintain its competitive standing without access to Mr. Hill and InterArch's confidential methodologies, strategies, and brand overhaul and execution processes that equally were critical to the Bank's sustained success and future growth. Thus the Bank induced two key, long-term InterArch employees to terminate their employment with InterArch in favor of employment at the Bank – all while one of those employees, Mr. Chessa, was actively aiding Plaintiffs' counsel in the preparation of this lawsuit. As was its design, the Bank then misappropriated the unique, highly valuable banking model and brand equity that Mr. Hill and InterArch developed and have successfully used for three banking institutions so far.

4.     Plaintiffs accordingly seek relief in this suit to enjoin and redress: (a) the Bank's copyright infringement, trademark infringement, contractual breach, unfair competition, unjust enrichment, and tortious interference with InterArch's relationships with prospective business opportunities; (b) the Individual Defendants' breach of their duty of loyalty to InterArch; and (c) all Defendants' misappropriation of Plaintiffs' valuable trade secrets.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1338(a) and 28 U.S.C. § 1331, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over

Plaintiffs' state law claims.

6.      This judicial district is the proper venue for this proceeding pursuant to 28 U.S.C.

§ 1391, as Defendant Republic Bank's principal place of business is located in the Eastern District

of Pennsylvania, both Individual Defendants reside in the Eastern District of Pennsylvania and a

substantial part of the events giving rise to the cause of action occurred in the Eastern District of

Pennsylvania.

## PARTIES

7.      Plaintiff Vernon Hill II is an adult individual, residing at Villa Collina, 262 East

Main Street, Moorestown, NJ 08057.  Mr. Hill is the founder and former chairman of  New Jersey-

based Commerce Bank (now part of TD Bank), and Metro Bank, a UK bank with 77 retail stores.

8.      Plaintiff InterArch, Inc. is a company organized and existing pursuant to the laws

of the State of New Jersey with its principal place of business located at 123 Chester Ave,

Moorestown, NJ 08057.  InterArch was founded, and is owned and run, by Shirley Hill ("Mrs.

Hill").  Shirley Hill is Vernon Hill's spouse.

9.      Defendant Republic First Bancorp, Inc. is a corporation organized under the laws

of the Commonwealth of Pennsylvania with its principal place of business located at Two Liberty

Place, 50 S 16th Street, Philadelphia, PA 19102. Republic First Bancorp, Inc. does business as

Republic Bank.

10.     Defendant Rodney Dean is an adult individual residing at 1327 South 17th Street,

Philadelphia, Pennsylvania, 19146.  Dean held a senior role at InterArch in its Moorestown, New

Jersey office until September 13, 2022, when he resigned.  After that resignation, Dean became an employee of Republic Bank, and upon information and belief, now manages its marketing and promotional outreach with Defendant Chessa.

11.    Defendant John Chessa is an adult individual residing at 337 North Pennsylvania Avenue, Morrisville, PA 19067, Pennsylvania.  Chessa held a senior role at InterArch in its Moorestown, New Jersey office until September 13, 2022, when he resigned.   After that resignation, Chessa became an employee of Republic Bank and, upon information and belief now manages its marketing and promotional outreach with Defendant Dean.

## STATEMENT OF FACTS

### I.    "THE POWER OF RED IS BACK":  Republic Bank's Overhaul and Success Using Mr. Hill's Distinctive Brand

#### A.  Mr. Hill and InterArch's Historic Development and Use of Marketing Strategies and Banking Brand

12.    Republic Bank was founded in 1987. Historically, it was a relatively small player in the Philadelphia-area banking market, offering primarily commercial banking services.  By 2008, the Bank was in distress.  Among other things, it was suffering from capital problems, its share price and market capitalization had dropped precipitously and its net income was negative.

13.    In 2008, the Bank retained Mr. Hill as a financial and strategic consultant to assist in revamping Republic Bank in the same way he had done for Commerce Bank and Metro Bank.

14.    Over more than three decades, Mr. Hill—with InterArch at his side—developed a unique marketing plan and brand.  His innovative, customer-focused strategy and distinctive branding – featuring, among other things, stylized logos for the banks' names, dog-friendly store policies and advertising campaigns (often featuring the Hills' own Yorkshire terrier, Sir Duffield ("Duffy")), in-store coin counting machines with distinctive trade dress, crowd-pleasing mascots and

striking architectural designs for bank stores – led to notable commercial success for both Commerce Bank and Metro Bank.

15.     Representative images of Mr. Hill's distinctive banking brand, as used with Commerce and Metro Banks (with Mr. Hill, Mrs. Hill and Duffy featured in the fourth and fifth images), are shown below:







16.     Signature branding, distinctive of Mr. Hill and InterArch, include, for example, a prominent red first letter and white lettering against a blue background:

  

17.     Other signature branding includes red door handles in the shape of the first letter of each bank (C, M, and R), as shown in the images below:

 

18.     Each bank also had lollipop holders in the shape of the bank's first letter (C, M, and R), and dog bone-shaped treat bowls in every store:

   

19.     As a result of Mr. Hill's decades of work in building a distinctive, successful brand for Commerce Bank and Metro Bank, consumers had come to associate key elements of those brands – including those referenced above – with customer-focused banking services offered by a particular source (namely, a bank led by Mr. Hill).

B.  Republic Bank's Success Using Mr. Hill and InterArch's Signature Brand

20.     When Republic Bank engaged Mr. Hill in 2008, it did so in large part because it wanted to adopt his tested, proven and highly successful banking brand and marketing plan, including the use of Mr. Hill's image.

21.     After engaging Mr. Hill and partnering with InterArch, Republic Bank began frequently using images of Mr. Hill in its advertising and promotional materials as a means of indicating to consumers that the same source that had been responsible for Commerce Bank's innovative, customer-focused banking services – Mr. Hill – now endorsed, sponsored, and/or was affiliated with Republic Bank.

22.     Mr. Hill has always maintained ownership and control of his banking-related brand assets.  As set forth in greater detail below, the day-to-day use of those assets has always been managed and controlled by InterArch, with Mr. Hill's active and ongoing input and involvement.

23.     Under Mr. Hill's guidance and with InterArch's expertise, Republic Bank achieved tangible success (increased deposits, reduced loan-to-deposit ratio, strong liquidity and reserve ratios and improved asset quality). Among its more public-facing changes, under Mr. Hill's leadership the Bank changed its business model to offer stores that were open seven days a week with extended lobby and drive-through hours, providing customers with the longest hours of any bank in the area.  The Bank also offered absolutely free checking, free coin counting, ATM/Debit cards issued on the spot, and access to more than 55,000 surcharge-free ATMs worldwide.

24.     Since in or around 2014, the Bank has aggressively promoted its revamped, retail customer-focused business under the tagline "THE POWER OF RED IS BACK."  That slogan, which Mr. Hill created and used in connection with his customer-focused banking services, is a reference to the brand model that Mr. Hill and InterArch had built with Commerce Bank (as well as Metro Bank), featuring the prominent use of red in its logos and marketing materials. Representative images showing the use of Mr. Hill's brand for Republic Bank are shown below:






25.     As Mr. Hill intended, consumers and the media recognized the connection between the old Commerce Bank and new Republic Bank business models, and understood the "THE POWER OF RED IS BACK" to mean that Republic Bank, under Mr. Hill's leadership, was now

offering the same kind of customer-focused banking services that Commerce Bank had previously offered under his leadership.

26.    Mr. Hill has also used the following design marks (collectively, the MONEY Design Marks), which InterArch created in partnership with Mr. Hill, as identifiers of Mr. Hill as the source of his unique banking business model services, at least since Mr. Hill was at Commerce Bank and Metro Bank and before he permitted Republic Bank to use the marks:

  

27.    In 2016, Mr. Hill joined the Bank's Board of Directors and assumed the role of Chairman of the Board.  In 2021, the Bank made Mr. Hill its Chief Executive Officer.

28.    The Bank thrived under Mr. Hill's leadership, growing from $700 million to $5.6 billion in assets and increasing its number of retail stores to thirty-three.

C.    InterArch's Role in Republic Bank's Branding Success

29.    When Republic Bank retained Mr. Hill to bring his successful banking model to the Bank, it also retained InterArch to design, deploy and oversee use of the myriad of promotional and marketing materials that embody Mr. Hill's brand in the eyes of consumers.

30.    InterArch is a design firm that specializes in architecture, interiors, and branding for financial institutions.  Among other things, it provides innovative branding, marketing, and advertising services to its customers.  InterArch's designs and branding strategies are the core of its business and provide InterArch (and its clients) with a competitive edge.

31.     For years, InterArch has partnered closely with Mr. Hill to implement and execute his vision for the banks he has led.

32.     For both Commerce Bank and Metro Bank, InterArch created and managed the use of the architectural designs, logos and marketing materials that gave life to Mr. Hill's "THE POWER OF RED" brand and vision for innovative, customer-focused banking services.

33.     The Work Product that InterArch has created over the past twelve years to bring Mr. Hill's "THE POWER OF RED IS BACK" brand to life for Republic Bank includes, but is not limited to, the Bank's distinctive stylized logo featuring a red "R" and white lettering against a blue background, Bank "mascots" (including photographic and cartoon images of the Hills' dog, Duffy, as well as a cartoon "R-Dog" character), and innumerable brochures, buckslips, booklets, advertisements, recruiting materials, graphics for the Republic Bank mobile app, video production, in-store displays, T-shirt designs, holiday door clings, grand opening signs, and photography for the Bank's website.

34.     Among many other things, InterArch created the following federally registered artistic works in the course of its relationship with Republic Bank (the "Registered Works"):

| Reg. No. (Name) | Work | Date |
|---|---|---|
| VA 2-317-805 ("Duffy Photo") |  | Effective Date of Reg.: September 9, 2022<br><br>Reg. Decision Date: September 12, 2022 |

| VA 2-319-005 ("R-Dog") |  | Effective Date of Reg.: September 9, 2022 |
| | | Reg. Decision Date: September 17, 2022 |
| VA 2-322-672 ("Republic Bank Money Zone") |  | Effective Date of Reg.: September 9, 2022 |
| | | Reg. Decision Date: October 11, 2022 |
| VA 2-322-673 ("Magic Money 5 for 5 Club") |  | Effective Date of Reg.: September 9, 2022 |
| | | Reg. Decision Date: October 11, 2022 |
| VA 2-319-778 ("Duffy") |  | Effective Date of Reg.: September 23, 2022 |
| | | Reg. Decision Date: September 26, 2022 |
| VA 2-319-776 ("Bones Dog Treat Bowl") |  | Effective Date of Reg.: September 23, 2022 |
| | | Reg. Decision Date: September 26, 2022 |
| VA 2-319-773 ("Magic Money Machine Display") |  | Effective Date of Reg.: September 23, 2022 |
| | | Reg. Decision Date: September 27, 2022 |

| VA 2-319-775 ("<u>Safe Deposit Box Display</u>") |  | Effective Date of Reg.: September 23, 2022<br><br>Reg. Decision Date: September 26, 2022 |
| --- | --- | --- |

35.     InterArch is the sole creator and owner of the Registered Works, and is the sole owner of the federal copyright registrations for the Registered Works. The Certificates of Registration for each of the Registered Works is attached as **Exhibit A**.

## II.   **Plaintiffs' Ownership of Their Work Product**

36.     Mr. Hill and InterArch have at all times maintained ownership of the valuable brand assets they have created for use in connection with banking services at banks led by Mr. Hill, specifically including the Work Product they created in the course of their relationship with Republic Bank.

37.     Mr. Hill entered into several contracts with the Bank, including a 2008 consulting agreement and employment agreements in 2017 and 2021.  None of those agreements provides for any transfer of ownership rights in Mr. Hill's "THE POWER OF RED IS BACK" slogan or the other Work Product he has developed over nearly five decades.

38.     InterArch, too, has entered into two Master Agreements with the Bank – one for the provision of branding, marketing and advertising services (the "<u>Branding Agreement</u>"), and another for the provision of architectural services (the "<u>Architectural Agreement</u>").  These were followed by a series of letter agreements detailing the particular services that InterArch would provide for the Bank for particular periods of time pursuant to those Master Agreements.  But none of these transferred ownership of the Work Product to the Bank.

39.     On or about January 1, 2010, the Bank prepared a draft of the Branding Agreement which contained language stating that: (1) the Bank would own any work product created by InterArch and associated intellectual property rights as a work for hire for the Bank; and (2) if InterArch created work that was not a work for hire, InterArch would assign the work product and intellectual property rights to the Bank.

40.     InterArch rejected the Bank's proposal, preparing instead a January 4, 2010 version of the Branding Agreement that was essentially the same as the Bank's version except that, as set forth in article 8(C), InterArch would retained ownership of all of its Work Product and granted a limited license to the Bank to use that Work Product only for projects in which InterArch was engaged.

41.     For more than a decade thereafter, InterArch provided Republic Bank with branding, marketing and advertising services under the Branding Agreement, as reflected in a series of corollary letter agreements outlining the services that InterArch would perform and the compensation it would receive for a particular period of time.

42.     InterArch has never, in the course of its twelve-year relationship with the Bank, agreed (in writing or otherwise) to transfer ownership of its Work Product to the Bank (*i.e.*, Work Product other than architectural drawings and related materials associated with the completed construction of a new store, which InterArch expressly agreed to transfer pursuant to the Architectural Agreement).

### III.    Republic Bank's Termination of Its Relationship with Plaintiffs and Ongoing Wrongful Use of Plaintiffs' Work Product

43.     In July 2022, following multiple breaches by Republic Bank of Mr. Hill's Employment Agreement and constructive discharge of Mr. Hill through the same, Mr. Hill was

forced to resign from the Board and from his role as CEO of both Republic Bank and Republic First Bancorp, Inc.

44.     Almost immediately thereafter, on July 15, 2022, the Bank's New Management informed InterArch that it was terminating the parties' Branding and Architectural Agreements, effective as of August 14, 2022.  The Bank gave no reason for its termination.

45.     Pursuant to the Branding Agreement, the Bank's limited license to use InterArch's Work Product expired with the termination of the parties' relationship.

46.     The Bank, however, has wrongfully continued to use Mr. Hill's "THE POWER OF RED IS BACK" brand, Mr. Hill's likeness (and that of the Hills' dog), and a wide range of InterArch's Work Product, ranging from images of the real world and cartoon canine mascots that InterArch devised, to advertising and marketing materials posted on the Bank's website and in its stores. To cite just a few examples:

      a.     A Republic Bank branch located at 90 5th Avenue, New York, NY 10011 ("5th Avenue Republic Bank"), distributed pamphlets displaying the Duffy Photo, R-Dog, and Magic Money 5 for 5 Club works (each a Registered Work) at least as recently as September 27, 2022, after each of these Registered Works was registered.

      b.     The 5th Avenue Republic Bank also displayed the Magic Money Machine Display and Bones Dog Treat Bowl at least as recently as September 27, 2022, after each of these Registered Works was registered.

      c.     Numerous Republic Bank locations still have a Magic Money Machine Display, Bones Dog Treat Bowl, and Safe Deposit Box Display on display. Each

of these displays constitutes a separate copyright infringement of each of these Registered Works.

47.    Additionally, InterArch's Twitter page has continued to feature copies of InterArch's Duffy Photo and R-Dog drawings (both Registered Works) and derivative works of R-Dog, as shown in the screenshots below, captured after these works were registered:



captured on November 10, 2022



Capture on November 10, 2022



captured on September 21, 2022



captured on September 21, 2022



captured on September 21, 2022

48.     Further, Republic Bank has continued to use Work Product created by InterArch that contains images of Mr. Hill and Duffy, as well as prominent usage of Mr. Hill's "THE POWER OF RED IS BACK" slogan, such as the one shown below:



49.     Plaintiffs have demanded that Republic Bank cease all use of Plaintiffs' Work Product, including materials featuring Mr. Hill.

50.     The Bank has refused to do so, and at least as recently as November 2022, the Bank has continued to display images of Mr. Hill in its store window advertisements. Upon information and belief, images of Mr. Hill continue to be shown in Republic Bank windows and on brochures, pamphlets, and other promotional and advertising materials displayed and distributed by or on behalf of Republic Bank.

## IV.     Mr. Hill and InterArch's Trade Secrets and Confidential Information

51.     For decades, Mr. Hill and InterArch have amassed considerable knowledge regarding consumer behavior and preferences that has enabled them to develop unique strategies, techniques, and processes for building a commercially successful retail bank brand.  Plaintiffs' insights regarding consumer behavior, and the strategies, techniques and processes they developed

from those insights (together, the "Trade Secrets"), comprise a valuable compilation of confidential information that gives Plaintiffs a competitive advantage when they set out to build a successful new bank brand, as they have done three times so far.  In particular, Plaintiffs' Trade Secrets include knowledge, derived from decades of Plaintiffs' work in building successful business models for three separate banks, regarding:

- how consumers respond to various architectural design elements;

- how consumers respond to various marketing and promotional materials, campaigns, and programs; and

- how to combine architectural design elements, brand design elements, and marketing and promotional elements to create a distinctive, attention-getting bank brand for retail banking services.

52.     Plaintiffs also have accumulated considerable information over their decades of work in building bank brands that, even if not rising to the level of a trade secret, is confidential and proprietary to Plaintiffs and gives Plaintiffs a competitive advantage when they set out to build a new bank brand (the "Confidential Information").  Such Confidential Information includes, for example, marketing strategies, insights and plans that Plaintiffs developed for their bank clients' proprietary use and shared with the banks in confidence.

53.     Plaintiffs have deployed their Trade Secrets and Confidential Information to create three highly successful bank brands to date:  Commerce Bank, Metro Bank UK and the revamped Republic Bank.

54.     The competitive advantage that Plaintiffs enjoy as a result of the Trade Secrets and Confidential Information they have developed is evidenced by, among other things, the industry

acclaim, commercial success and lack of comparable competition that Commerce, Metro and Republic Banks experienced under Mr. Hill's leadership.

55.     Although the bank brands that Plaintiffs created are well known, the Trade Secrets and Confidential Information that Plaintiffs created and compiled over a period of more than forty years to create those brands are not.  Plaintiffs have kept their Trade Secrets and Confidential Information secret by, among other things, requiring InterArch employees (including the Individual Defendants) to sign confidentiality agreements acknowledging their obligation to preserve the confidentiality of the Trade Secrets and Confidential Information shared with them by InterArch and Mr. Hill in the course of their employment.

## V.     Individual Defendants' Access to Plaintiffs' Trade Secrets, Confidential Information and Privileged Information

56.     Individual Defendants both are long-tenured employees of InterArch and key contributors to InterArch's historic relationships with financial institutions.

57.     Mr. Dean worked at InterArch for sixteen years, holding the title of Creative Director at the time of his resignation in September 2022.  Mr. Chessa worked at InterArch for thirteen years, holding the position of Graphic Designer at the time of his resignation in September 2022.  Upon information and belief, both signed employment agreements with InterArch in or around the time they started working for InterArch.

58.     The Individual Defendants were privy to Plaintiffs' Trade Secrets and Confidential Information in the regular course of their work duties, including in their roles as senior design employees and their access to InterArch's computer systems.  This included work-in-progress designs, images, products and website designs, as well as market studies, plans and analyses for promotional campaigns and strategies, marketing materials, projections and other documents

prepared for clients – specifically including but not limited to Confidential Information that related to InterArch's work for Republic Bank.

59.     The Individual Defendants worked on Republic Bank projects for many years, and were intimately involved with the use of Plaintiffs' Trade Secrets and Confidential Information to develop marketing plans, strategies and materials for Republic Bank.

60.     The Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to Plaintiffs' Trade Secrets and Confidential Information.  Indeed, Mr. Dean was substantially involved in a prior dispute between InterArch and Commerce Bank, in which InterArch vigorously enforced its ownership rights to work product and proprietary materials similar to those that are at issue in this litigation. Thus, Mr. Dean is well aware of InterArch's longstanding claim to ownership of its work product and prior enforcement of its rights.

61.     More recently, in the weeks leading up to his departure from InterArch, Mr. Dean participated in privileged meetings and communications with Plaintiffs and their outside litigation counsel regarding Plaintiffs' plans and strategy for pursuing its claims against Republic Bank in this case.  In fact, Mr. Dean was one of the key contacts between InterArch and outside counsel, assisting with crafting legal strategy and developing InterArch's claims against Republic Bank. Indeed, Mr. Dean is party to at least 30 email communications with Plaintiffs' outside litigation counsel for that purpose in the month prior to his departure, continuing through at least September 8, 2022, just days before he gave notice that he was leaving InterArch to work for Republic Bank.

62.     On September 13, 2022, Mr. Dean and Mr. Chessa both resigned from InterArch. Upon information and belief, their employment at Republic Bank began shortly thereafter.  At no point during any of his communications with Plaintiffs' counsel did Mr. Dean disclose to Plaintiffs

or their counsel that he or Mr. Chessa was being solicited by or considering employment at Republic Bank.

## VI.    Republic Bank's Improper Solicitation of the Individual Defendants

63.    For more than a decade, the Bank depended on InterArch to manage its branding, marketing and advertising operations.

64.    When the Bank terminated its relationship with InterArch as part of New Management's decision to cut all ties with Mr. Hill, it effectively cut off its own ability to continue to promote its business and communicate with customers.

65.    The Bank also was not prepared to cease its use of Plaintiffs' Work Product, despite the fact that its limited license to use InterArch's Work Product terminated when the Bank terminated its Brand Agreement with InterArch, and that Mr. Hill had never conveyed any rights to his likeness or "THE POWER OF RED IS BACK" brand to the Bank (beyond an implied license to use them while he was affiliated with the Bank).

66.    The Bank knew that the Individual Defendants had access to InterArch's Confidential Information and Trade Secrets, in light of their high-level positions at InterArch and their long-standing relationship with the Bank as InterArch representatives.  The Bank also knew that the Individual Defendants had been actively involved for years in InterArch's management of marketing and advertising work on the Bank's behalf.  The Bank concluded that, by hiring the Individual Defendants, the Bank could continue using Plaintiffs' Work Product, guided by the Individual Defendants' knowledge of Plaintiffs' Trade Secrets and Confidential Information, to sustain a commercial advantage in the market while simultaneously diluting and hampering Plaintiffs' ability to use their Trade Secrets, Confidential Information and Work Product to build new brands for other banks.

22

67.     The Bank accordingly orchestrated a targeted raid on InterArch with the intent of luring the Individual Defendants away from InterArch.  By doing so, the Bank intended to maintain its access to InterArch's Trade Secrets and Confidential Information (which the Individual Defendants possessed) and continue its now-unauthorized and infringing use of Plaintiffs' Work Product.

68.     In furtherance of this plan, the Bank induced the Individual Defendants to tender their resignations to InterArch and accept employment with the Bank – even in the midst of the ongoing dispute between InterArch and the Bank regarding the Bank's wrongful continued use of InterArch's Work Product, and notwithstanding the Bank's knowledge that the Individual Defendants possessed Trade Secrets and Confidential Information belonging to InterArch. The Individual Defendants knew that Republic Bank had not ceased its use of Plaintiffs' Work Product and had hamstrung its own marketing activities by terminating its contract with InterArch.  The Individual Defendants knew or should have known that their employment with Republic Bank would require them to use the knowledge and material they had gained from years of access to Plaintiffs' Trade Secrets and Confidential Information.

69.     The Individual Defendants also knew that InterArch was consulting with outside litigation counsel regarding potential claims against the Bank for the Bank's wrongful ongoing use of InterArch's Work Product; indeed, Defendant Dean participated directly in those discussions. The Individual Defendants further knew that they were in possession of highly valuable and proprietary InterArch Trade Secrets and Confidential Information relating to InterArch's past and contemplated future work for the Bank.

70.     Upon information and belief, Defendant Dean was planning to leave InterArch for Republic when he participated in those privileged communications.

**VII.    Defendants' Refusal to Provide Assurances They Would Not Misuse or Misappropriate Plaintiffs' Confidential Information**

71.    After the Individual Defendants gave InterArch notice of their intention to terminate their employment with InterArch and accept employment with the Bank, InterArch asked the Individual Defendants to confirm in writing that they had returned all of InterArch's Confidential Information in their possession and that they understood their obligations with respect to InterArch's Confidential Information and intellectual property.  The Individual Defendants refused to do so.

72.    In light of that refusal, as well as the Bank's clear intent to hire away key InterArch employees in order to facilitate its own continuing misuse of Plaintiffs' Work Product, InterArch has good cause to believe that the Individual Defendants wrongfully accessed and took InterArch's Trade Secrets and Confidential Information prior to or upon their departure from InterArch, with the intention of sharing those Trade Secrets and Confidential Information with Republic Bank and using those Trade Secrets and Confidential Information in the course of their employment with Republic Bank.

73.    Republic Bank took an outsourced service in-house by poaching the Individual Defendants, making it impossible for the Individual Defendants to perform their jobs at Republic Bank without revealing or using Trade Secrets and Confidential Information that the Individual Defendants learned through their employment with InterArch.  Upon information and belief, Individual Defendants' current employment responsibilities for Republic directly overlap with the work that they were performing for InterArch.

74.    Republic Bank placed Individual Defendants in positions at the Bank where they could continue to use Plaintiffs' Trade Secrets and Confidential Information to advance the Bank's interest without compensation to InterArch.

75.     Republic Bank's sole purpose for hiring Individual Defendants was to continue and replicate the work InterArch used to perform for the Bank, but now without any compensation to InterArch and without InterArch's control over the use of its Work Product, Trade Secrets and Confidential Information.

76.     Republic Bank either orchestrated this employee raid and encouraged the Individual Defendants to so act and violate their confidentiality obligations or aided and abetted such violations for the specific purpose of misappropriating and continuing its wrongful use of Plaintiffs' Work Product, Trade Secrets and Confidential Information.

77.     Republic Bank knew, or was reckless in not knowing, that the Individual Defendants had improperly taken Trade Secrets and Confidential Information from InterArch with the intent of disclosing and using it at Republic Bank.

78.     Republic Bank knew, or was reckless in not knowing, that the Individual Defendants' common law duties of loyalty and confidentiality forbade certain kinds of conduct on the part of the Individual Defendants, both before and after the termination of their InterArch employment.

79.     On September 16, 2022, InterArch, through its outside counsel, advised the Individual Defendants in writing of many of the facts described above.  InterArch demanded, among other things, that the Individual Defendants cease and desist from any and all wrongful disclosure and/or use of InterArch's Confidential Information and acknowledge in writing whether they had returned all of InterArch's Confidential Information in their possession.  Once again, the Individual Defendants refused to sign such an acknowledgement.

80.     On September 27, 2022, InterArch, through counsel, wrote to outside counsel for Republic Bank to remind the Bank of its obligations to InterArch following the departure of the

Individual Defendants.  InterArch informed the Bank that the Individual Defendants were high-level employees at InterArch with knowledge of InterArch's Confidential Information, and that Mr. Dean in particular had been involved in sensitive attorney-client privileged discussions regarding InterArch's claims against Republic Bank.

81.     In its September 27 letter, InterArch demanded that Republic Bank provide a sworn affidavit certifying that:  (1) neither Republic Bank nor any person acting on its behalf will view, discuss, or otherwise use any of InterArch's confidential, proprietary, or privileged information; (2) Republic Bank will ensure that the Individual Defendants are walled off from any and all discussions regarding any legal or anticipated legal matter (with this term to be construed in the broadest sense possible) with InterArch; and (3) Republic Bank will provide to InterArch any and all documents regarding the prospective employment of Mr. Dean and Mr. Chessa with Republic Bank.

82.     Republic Bank refused to provide the information and acknowledgements that InterArch demanded.  Instead, Republic Bank responded through counsel on September 28, 2022, asserting that "neither Mr. Dean nor Mr. Chessa took anything from InterArch when their employment terminated" and would return any "stray materials from their years of employment," but otherwise refusing to give InterArch the assurances it requested.  To date, the Individual Defendants have returned nothing to InterArch.

83.     Defendants' conduct was, and is, in furtherance of a scheme to obtain and convert to their own benefit and competitive advantage InterArch's Confidential Information and intellectual property (including but not limited to the Registered Works).

84.     Through this conduct, Defendants have unlawfully raided InterArch's workforce, engaged in tortious interference, breach of duty of loyalty, and misappropriation of InterArch's trade secrets and confidential customer information, among other improper acts.

### COUNT I: COPYRIGHT INFRINGEMENT
**(InterArch against Republic Bank)**

85.     InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

86.     The Registered Works are original works of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq.* InterArch is the exclusive owner of rights under copyright in and to the Registered Works. InterArch owns valid copyright registrations for the Registered Works, attached as Exhibit A.

87.     Through Republic Bank's conduct alleged herein, including Republic Bank's reproduction, distribution, and public display of the Infringing Works, which are identical to InterArch's Registered Works, without InterArch's permission, Republic Bank has directly infringed InterArch's exclusive rights in the Registered Works in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

88.     Republic Bank's infringing conduct alleged herein was and continues to be willful and with full knowledge of InterArch's rights in the Registered Works and has enabled Republic Bank illegally to obtain profit therefrom.

89.     As a direct and proximate result of Republic Bank's infringing conduct alleged herein, InterArch has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), InterArch is also entitled to recovery of Republic Bank's profits attributable to the Bank's infringing conduct alleged herein and an accounting of and a constructive trust with respect to such profits.

90.     Alternatively, InterArch is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each of InterArch's Registered Works that the Bank has infringed, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

91.     InterArch further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

92.     As a direct and proximate result of Republic Bank's infringing conduct alleged herein, InterArch has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, the Bank will continue to infringe the Registered Works. InterArch therefore is entitled to permanent injunctive relief restraining and enjoining the Bank's ongoing infringing conduct.

WHEREFORE, InterArch requests that judgment be entered in favor of InterArch and against Republic Bank, for the following relief:

a)  Damages, in an amount to be determined at trial, plus interest;

b)  Should InterArch so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits;

c)  InterArch's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

d)  An order that: (i) Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any of InterArch's Registered Works; and (ii) Defendant Republic Bank be ordered to destroy or deliver up for destruction all Infringing Works in Defendant's possession, custody, or control used by Defendant; and

e)  Such other legal and equitable relief recoverable under the law.

## COUNT II: BREACH OF CONTRACT
### (InterArch against Republic Bank)

93.     InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

94.     InterArch and Republic Bank are parties to a Master Branding Agreement.

95.     Pursuant to the Branding Agreement, InterArch agreed to create branding, marketing, and advertising materials for Republic Bank's use, and granted Republic Bank a limited license to use those materials in connection with projects in which InterArch was engaged.

96.     In exchange for InterArch's services, Republic Bank agreed to pay InterArch agreed compensation in the form of monthly fees, the amount of which was fixed from time to time in ancillary letter agreements.

97.     InterArch performed its duties under the parties' Branding Agreement. Specifically, InterArch developed, created, and provided hundreds if not thousands of branding, marketing, and advertising products for Republic Bank's use, subject to the limited license.

98.     On July 15, 2022, Republic Bank terminated the Branding Agreement, effective as of August 14, 2022.

99.     Following termination of the Branding Agreement, Republic Bank continued using InterArch's valuable Work Product, despite its limited license having expired upon termination.

100.    Republic Bank has materially breached the Branding Agreement by continuing to use InterArch's Work Product after termination of the Branding Agreement, without InterArch's permission and without compensation to InterArch.

101.    Republic Bank's breach has caused InterArch to suffer damages, which are continuing to accrue, including loss of revenue from Republic Bank's use of InterArch's Work Product without compensation to InterArch, and InterArch's loss of control over its Work Product.

102.     InterArch is entitled to judgment in its favor directing Republic Bank to make payment to InterArch in an amount to be determined at trial.

103.     As a result of Republic Bank's breach, InterArch is entitled to an award of prejudgment interest at the statutory rate of 6% measured from when the underlying damages were due or payable, pursuant to 41 P.S. §§ 201-202.

104.     InterArch is additionally entitled to an injunction requiring Republic Bank to immediately cease use, and be permanently enjoined from using, of all of InterArch's Work Product previously provided to Republic Bank, in all forms and all media.

WHEREFORE, InterArch requests that judgment be entered in favor of InterArch and against all Defendants, jointly and severally, for the following relief:

a)   Damages, in an amount to be determined at trial, plus interest;

b)   An order that: (i) Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any of InterArch's Work Product; and (ii) Defendant Republic Bank be ordered to destroy or deliver up for destruction all unlawful uses of InterArch's Work Product in Defendant's possession, custody, or control used by Defendant; and

c)   Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

### COUNT III: UNJUST ENRICHMENT
#### (Plaintiffs against Republic Bank)

105.     Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

106.    Republic Bank's continued use of Plaintiffs' Work Product after termination of its relationship with Plaintiffs constitutes a benefit conveyed on Republic Bank that was outside of or over and above the benefits contemplated by the parties' contractual agreements with the Bank.

107.    Republic Bank benefited from the use of Plaintiffs' Work Product in that it uses that Work Product to market and advertise its business, attract customers, recruit employees, and generally increase its revenues from the use of these materials.

108.    Plaintiffs reasonably expected to be compensated for Republic Bank's use of their Work Product, and were in fact so compensated until the Bank terminated its relationship with Plaintiffs in July 2022.

109.    It would be inequitable to allow Republic Bank to retain the benefits conferred by Plaintiffs without paying for their value.

110.    As restitution, Plaintiffs are entitled to a judgment in their favor directing Republic Bank to make payment to Plaintiffs for the reasonable value of the benefit provided in an amount to be determined at trial, plus interest, costs, and expenses.

111.    Plaintiffs are additionally entitled to an injunction, requiring Republic Bank to immediately cease use, and be permanently enjoined from using, of all of Plaintiffs' Work Product previously provided to Republic Bank, in all forms and all media.

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Republic Bank for the following relief:

a)  Damages, in an amount to be determined at trial, plus interest;

b)  An order that: (i) Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any of Plaintiffs' Work Product; and (ii) Defendant Republic Bank be ordered to destroy or deliver up for destruction all

unlawful uses of Plaintiffs' Work Product in Defendant's possession, custody, or control used by Defendant; and

c)   Such other legal and equitable relief recoverable under the law.

### COUNT IV: TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))
#### (Mr. Hill against Republic Bank)

112.   Mr. Hill incorporates by reference the foregoing paragraphs as if set forth fully herein.

113.   Before he joined Republic Bank, over a period of more than thirty years Mr. Hill had built a highly distinctive brand for customer-focused banking services that features, among other things, a distinctive bank logo featuring the name of the bank with a prominent red first letter and white lettering against a blue background.  He used that brand at both Commerce and Metro Banks, and built considerable consumer goodwill in his brand.

114.   As a result of Mr. Hill's considerable and extensive promotion of his pioneering, customer-focused approach to banking through, among other things, the use of stylized logos and marketing materials with prominent red features, consumers have come to associate such red-featuring stylized logos and marketing features with Mr. Hill's customer-focused banking services.

115.   When Republic Bank asked Mr. Hill in 2008 to bring both his capital and his banking model to the Bank, first as a strategic consultant and ultimately as Board Chairman and CEO, it did so with the specific intention of gaining access to Mr. Hill's proven customer-focused banking brand and marketing strategies. Bank founder Harry Madonna recognized as much in the *Philadelphia Business Journal* on December 5, 2016, stating "I want the bank to be associated with Vernon Hill."

116.   Mr. Hill coined and used the phrase "THE POWER OF RED IS BACK" as a marketing slogan to emphasize the connection between Republic Bank and his distinctive brand

32

of customer-focused banking services.

117.    Mr. Hill used his MONEY Design Marks in connection with Metro Bank and used the same MONEY Design Marks with Republic Bank (and granted a limited license for the Bank to use his and MONEY Design Marks), to promote the collaboration between Republic Bank and Mr. Hill, with Mr. Hill as the source of the services provided under the MONEY Design Marks.

118.    Since at least 2014, the Bank has prominently featured Mr. Hill's "THE POWER OF RED IS BACK" mark and MONEY Design Marks in its marketing, promotional and corporate materials, expressly acknowledged its desire to benefit from the consumer goodwill associated with Mr. Hill's unique brand of banking services, and expressly stated that it intended its use of "THE POWER OF RED IS BACK" and MONEY Design Marks to create an association in consumers' minds between the Vernon Hill-led Commerce Bank, Vernon Hill-led Metro Bank, and the Vernon Hill-led Republic Bank.

119.    Mr. Hill never transferred ownership of his "THE POWER OF RED IS BACK" mark or his MONEY Design Marks to the Bank.  Rather, at most Mr. Hill granted the Bank a limited implied license to use his marks and brand for so long as Mr. Hill – the owner of the red-themed banking brand – was affiliated with the Bank.

120.    When the Bank terminated its relationship with Mr. Hill and InterArch in July 2022, its limited license to use Mr. Hill's "THE POWER OF RED IS BACK" mark, his MONEY Design Marks, and his brand expired.

121.    The Bank has nevertheless wrongfully continued to use the "THE POWER OF RED IS BACK" mark and MONEY Design Marks in promotional, advertising, marketing and other materials to promote banking services that are no longer associated with Mr. Hill and his customer-focused banking services.  Indeed, the Bank has even continued to display images of Mr.

Hill (and the Hills' dog, Duffy) in its marketing and advertising materials, to promote its banking services.

122.    The Bank's unauthorized continued use of Mr. Hill's "THE POWER OF RED IS BACK" mark, MONEY Design Marks, and brand assets is likely to cause consumer confusion regarding the affiliation, connection or association of the Bank with Mr. Hill, and/or regarding the origin, sponsorship or approval of the Bank's banking services and commercial activities.

123.    The Bank's wrongful continued use of Mr. Hill's "THE POWER OF RED IS BACK" mark and MONEY Design Marks constitutes trademark infringement pursuant to 15 U.S.C. § 1125(a).

124.    The Bank's infringement of Mr. Hill's trademark rights has been knowing, deliberate, intentional and willful.

125.    As a direct and proximate result of Republic Bank's infringing conduct as alleged herein, Mr. Hill has been harmed and is entitled to an accounting of profits and/or other damages in an amount to be proven at trial.

126.    Mr. Hill is also entitled to a declaration that this case is exceptional, and to an award of his attorneys' fees.

127.    As a direct and proximate result of Republic Bank's infringing conduct alleged herein, Mr. Hill has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, the Bank will continue to infringe Mr. Hill's trademark rights. Mr. Hill therefore is entitled to permanent injunctive relief restraining and enjoining the Bank's ongoing infringing conduct.

WHEREFORE Mr. Hill requests that judgment be entered in his favor and against Republic

Bank, for the following relief:

    a)  An accounting of profits and/or compensatory damages, in an amount to be determined at trial, plus interest;

    b)  A declaration that this case is exceptional and an award of Mr. Hill's attorneys' fees;

    c)  An order that: (i) Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing Mr. Hill's THE POWER OF RED IS BACK mark, his MONEY Design Marks, and/or any derivative or confusingly similar marks; and (ii) Defendant Republic Bank be ordered to destroy or deliver up for destruction all infringing materials in Defendant's possession, custody, or control used by Defendant; and

    d)  Such other legal and equitable relief recoverable under the law.

## COUNT V: VIOLATION OF VERNON HILL'S RIGHT OF PUBLICITY
### (Mr. Hill against Republic Bank)

128.    Mr. Hill incorporates by reference the foregoing paragraphs as if set forth fully herein.

129.    Republic Bank has used, and continues to use, Mr. Hill's likeness without his permission or consent in connection with commercial and promotional purposes.

130.    Specifically, Republic Bank has used, and continues to use, images of Mr. Hill on advertisements displayed in its bank branch windows, on pamphlets and brochures distributed in its bank branches, and on other promotional and advertising materials.

131.    As a direct and proximate result of Republic Bank's unauthorized use of Mr. Hill's likeness alleged herein, Mr. Hill has been harmed and is entitled to damages in an amount to be proven at trial.

132.    Further, as a direct and proximate result of Republic Bank's unauthorized use of Mr. Hill's likeness alleged herein, Mr. Hill has sustained and will continue to sustain immediate and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Republic Bank's infringing conduct is enjoined by this Court, the Bank will continue to use Mr. Hill's likeness without his consent. Mr. Hill therefore is entitled to permanent injunctive relief restraining and enjoining the Bank's use of his image for a commercial purpose.

WHEREFORE Mr. Hill requests that judgment be entered in favor of Mr. Hill and against Republic Bank for the following relief:

a)  Damages in an amount to be determined at trial, plus interest;

b)  A permanent injunction ordering Republic Bank, any person or firm acting on its behalf or in concert with it, and any person or firm through which it acts, to immediately cease and refrain from using Mr. Hill's name or likeness for any advertising, promotional, or other commercial purpose;

c)  Such other legal and equitable relief recoverable under the law.

**COUNT VI: UNFAIR COMPETITION, N.J.S.A. 56:4-1, *et seq.***
**(Plaintiffs against Republic Bank)**

133.    Plaintiffs incorporates by reference the foregoing paragraphs as if set forth fully herein.

134.    Republic Bank, despite terminating its relationship with Mr. Hill and InterArch, has continued to appropriate for its own use Plaintiffs' brand, trademarks, reputation, and goodwill.

135.    Republic Bank is wrongfully appropriating Mr. Hill's goodwill, which Mr. Hill and InterArch worked to create over the past three decades and nurture during their contractual relationships with the Bank.  Republic Bank continues to use statements and branding that causes

consumers to associate the Bank with Mr. Hill's goodwill thereby causing confusion among the Bank's customers.

136. The Bank has wrongfully continued to use the slogan "THE POWER OF RED IS BACK" and Mr. Hill's MONEY Design Marks, which sends a message to Bank customers that Mr. Hill is still associated with the Bank.

137. The Bank has also, upon information and belief, continued to display images of Mr. Hill, Mrs. Hill, and Duffy, which falsely indicates to customers that the Hill family is still associated with Republic Bank.

138. The Bank benefits from the above-described customer confusion because customers associate the Hill family with customer-friendly banking practices and the successful banking model that Mr. Hill implemented at Republic Bank.

139. The Bank's continued messaging is used as a means of maintaining its customer base that has grown exponentially as a result of Mr. Hill's association, despite the Bank actually cutting ties with Mr. Hill.

140. Republic has continued this messaging by wrongfully misappropriating Plaintiffs' Confidential Information, in clear violation of business morals and agreements between InterArch and Republic Bank.

141. Republic Bank has been able to continue such misleading messaging in part by poaching InterArch's employees who had knowledge of InterArch's Confidential Information and the ability to use that Confidential Information and InterArch Work Product, so that the Bank could also continue to use and benefit from InterArch's Confidential Information and Work Product without compensation to InterArch.

142.    As a direct and proximate result of the above-described unfair methods of competition, Plaintiffs are suffering harm including, among other things, the wrongful use of Plaintiffs' intellectual property, Mr. Hill's image, Mrs. Hill and Duffy's image, Plaintiffs' goodwill and reputation, as well as wrongful disclosure and ongoing use of Plaintiffs' Confidential Information and Work Product, as well as other injuries.

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Republic Bank for the following relief:

    a)  Damages, in an amount to be determined at trial, including any treble damages at the Court's discretion, plus interest;

    b)  An order that: (i) Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any materials with the slogan "THE POWER OF RED IS BACK," the MONEY Design Marks, Mr. Hill's likeness, or other images associated with Mr. Hill, including images of Mrs. Hill and Duffy, (ii) Defendant Republic Bank be permanently enjoined from using, displaying, reproducing, or distributing any of Plaintiffs' Confidential Information and Work Product; and (iii) Defendant Republic Bank be ordered to destroy or deliver up for destruction all unlawful uses of Plaintiffs' Confidential Information and Work Product in Defendant's possession, custody, or control used by Defendant; and

    c)  Such other legal and equitable relief recoverable under the law.

### COUNT VII: MISAPPROPRIATION OF TRADE SECRETS
### Under the Defend Trade Secrets Act, 18 U.S.C.A. § 1836
#### (Plaintiffs against all Defendants)

143.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

144.     Plaintiffs' insights regarding consumer behavior, and the strategies, techniques and processes they developed from those insights – including knowledge regarding how consumers respond to various architectural design elements; how consumers respond to various marketing and promotional materials and programs; and how to combine architectural design elements, brand design elements, and marketing and promotional elements to create an attention-getting bank brand for retail banking services constitute protectable trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C.A. § 1836 ("DTSA"), insofar as:

    a.   Plaintiffs invest substantial resources to create, compile and maintain this information;

    b.   the information is not known outside of Plaintiffs, except to the extent it is shared confidentially with their customers;

    c.   Plaintiffs take reasonable and significant precautions to safeguard the confidentiality of this information, including but not limited to requiring Individual Defendants – and all InterArch employees – to sign Confidentiality Agreements, prohibiting employees from disclosing or otherwise using confidential information obtained in the course their employment with InterArch;

    d.   the information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense; and

    e.   the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

145.     Plaintiffs' Trade Secrets are of significant value to Plaintiffs, provide them with a significant competitive advantage and are extremely important in the conduct of their business.

146.     Plaintiffs disclosed their Trade Secrets to the Individual Defendants while they were in positions of trust and confidence at InterArch and under circumstances that make it inequitable and unjust for them to have appropriated those Trade Secrets and to be using them for their own benefit or that of defendant Republic Bank.

147.     The Individual Defendants were privy to Plaintiffs' Trade Secrets in the regular course of their work duties, including by the nature of their roles as senior design employees and their access to InterArch's computer systems.

148.     The two Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to the Trade Secrets.

149.     In violation of their obligations described above, the Individual Defendants accessed and misappropriated Plaintiffs' Trade Secrets.

150.     By copying, taking, retaining, or otherwise using Plaintiffs' Trade Secrets in breach of their duty of secrecy and loyalty, and/or causing these actions to be taken, the Individual Defendants have actually, willfully, and maliciously misappropriated Plaintiffs' Trade Secrets in violation of the DTSA.

151.     The Individual Defendants obtained improper and unauthorized access to Plaintiffs' Trade Secrets prior to or upon their departure from InterArch, and that information is now improperly in the possession of Republic Bank.

152.     In addition, Defendant Republic Bank has likewise misappropriated Plaintiffs' Trade Secrets in violation of the DTSA by deliberately inducing the Individual Defendants to terminate their employment with InterArch and accept employment with the Bank for the intended

purpose of wrongfully continuing to use Plaintiffs' Work Product, Trade Secrets and Confidential Information.

153.    Republic Bank knew, had reason to know, or was reckless in not knowing that the Individual Defendants had no right to take, use or disclose Plaintiffs' Trade Secrets after terminating their employment with InterArch.

154.    Republic Bank knew, or was reckless in not knowing, that the Individual Defendants whom it had hired to work had improperly taken, and intended to disclose and/or use, Plaintiffs' Trade Secrets in the course of their employment at Republic Bank.

155.    As a direct result of the misappropriation of their trade secrets by all Defendants, Plaintiffs are suffering, have suffered and/or will suffer actual and/or consequential damages, including the wrongful ongoing disclosure and use of their Trade Secrets, as well as other injuries.

156.    Defendants' misappropriation of Plaintiffs' Trade Secrets has been knowing, deliberate, intentional, and willful.

157.    Defendants' acts constitute willful and malicious misappropriation of trade secrets under the DTSA because Defendants acted with intent to injure Plaintiffs because of their history with Mr. Hill and InterArch's association with Mr. Hill and ownership by Mrs. Hill.

158.    As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial.

159.    As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, Defendants will continue to make wrongful disclosure and/or use of

Plaintiffs' Trade Secrets. Plaintiffs therefore are entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing wrongful conduct.

WHEREFORE Plaintiffs request that judgment be entered in favor of Plaintiffs and against all Defendants, jointly and severally, for the following relief:

a) Damages in an amount to be determined at trial, plus interest;

b) A permanent injunction ordering Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act: (i) To return immediately all originals and copies of any Trade Secrets that Defendants took, copied, caused to be taken or copied, or received from InterArch; and (ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of Plaintiffs' Trade Secrets;

c) Such other legal and equitable relief recoverable under the parties' contracts or applicable law; and

d) Exemplary or punitive damages against Defendant Republic Bank due to its willful and malicious misappropriation.

### COUNT VIII: MISAPPROPRIATION OF TRADE SECRETS
#### Under the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.*
#### (Plaintiffs against all Defendants)

160.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

161.    Plaintiffs' insights regarding consumer behavior, and the strategies, techniques and processes they developed from those insights – including knowledge regarding how consumers respond to various architectural design elements; how consumers respond to various marketing and promotional materials and programs; and how to combine architectural design elements, brand

design elements, and marketing and promotional elements to create an attention-getting bank brand for retail banking services constitute protectable trade secrets under the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1 *et seq.* ("NJTSA"), insofar as:

    a.  Plaintiffs invest substantial resources to create, compile and maintain this information;

    b.  the information is not known outside of Plaintiffs, except to the extent it is shared confidentially with their customers;

    c.  Plaintiffs take significant precautions to safeguard the confidentiality of this information, including but not limited to requiring Individual Defendants – and all InterArch employees – to sign Confidentiality Agreements, prohibiting employees from disclosing or otherwise using confidential information obtained in the course their employment with InterArch; and

    d.  the information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense.

162. Plaintiffs' Trade Secrets are of significant value to Plaintiffs, provide them with a significant competitive advantage and are extremely important in the conduct of their business.

163. Plaintiffs disclosed their Trade Secrets to the Individual Defendants while they were in positions of trust and confidence at InterArch and under circumstances that make it inequitable and unjust for them to have appropriated the materials and to be using them for their own benefit or that of defendant Republic Bank.

164. The Individual Defendants were privy to Plaintiffs' Trade Secrets in the regular course of their work duties, including by nature of their roles as senior design employees and their access to InterArch's computer systems.

165.    The two Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to the Trade Secrets.

166.    In violation of their obligations described above, the Individual Defendants accessed and misappropriated Plaintiffs' Trade Secrets.

167.    By copying, taking, retaining, or otherwise using Plaintiffs' Trade Secrets in breach of their duty of secrecy and loyalty, and/or causing these actions to be taken, the Individual Defendants have actually and willfully misappropriated Plaintiffs' Trade Secrets in violation of the NJTSA.

168.    The Individual Defendants obtained improper and unauthorized access to Plaintiffs' Trade Secrets prior to or upon their departure, and that information is now improperly in the possession of Republic Bank.

169.    In addition, because the Individual Defendants now act as representatives of and are employed by defendant Republic Bank, defendant Republic Bank has likewise misappropriated Plaintiffs' Trade Secrets in violation of the NJTSA.

170.    Republic Bank knew, had reason to know, or was reckless in not knowing that the trade secrets were acquired through improper means; or knew or had reason to know that the information consisted of a trade secret and that knowledge of it had been acquired through improper means.

171.    Republic Bank knew, or was reckless in not knowing, that the Individual Defendants whom it had hired to work had improperly taken confidential information and trade secrets from Plaintiffs for their use at Republic Bank.

172. In the alternative, even if Plaintiffs' Trade Secrets did not constitute trade secrets within the meaning of the NJTSA – and it does – the Defendants are nonetheless liable for the wrongful conversion of such proprietary materials and for breach of their fiduciary duties.

173. As a direct result of the misappropriation of their Trade Secrets by all Defendants, Plaintiffs are suffering, have suffered and/or will suffer actual and/or consequential damages, including the wrongful ongoing disclosure and use of their Trade Secrets, as well as other injuries.

174. Defendants' misappropriation of Plaintiffs' Trade Secrets has been knowing, deliberate, intentional and willful.

175. Defendant Republic Bank's acts constitute willful and malicious misappropriation of trade secrets under the NJTSA because the Bank acted with intent to injure Plaintiffs because of their history with Mr. Hill and InterArch's association with Mr. Hill and ownership by Mrs. Hill.

176. As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial.

177. As a direct and proximate result of Republic Bank's infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Republic Bank's infringing conduct is enjoined by this Court, Defendants will continue to make wrongful disclosure and/or use of Plaintiffs' Trade Secrets. Plaintiffs therefore are entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing wrongful conduct.

WHEREFORE Plaintiffs requests that judgment be entered in favor of Plaintiffs and against all Defendants, jointly and severally, for the following relief:

1. Damages in an amount to be determined at trial, plus interest;

2.  Punitive damages;

3.  A permanent injunction ordering Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act: (i) To return immediately all originals and copies of any Trade Secrets that Defendants took, copied, caused to be taken or copied, or received from InterArch; and (ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of InterArch's Trade Secrets; and

4.  Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

## COUNT IX: MISAPPROPRIATION OF CONFIDENTIAL INFORMATION
### Under New Jersey Common Law
### (Plaintiffs against all Defendants)

178.  Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

179.  Plaintiffs' Confidential Information is defined above and includes, for example, marketing strategies, insights and plans that Plaintiffs developed for their bank clients' proprietary use.

180.  Plaintiffs' Confidential Information is legally protected insofar as:

a.  Plaintiffs invest substantial resources to create, compile and maintain this information;

b.  the information has been shared with InterArch employees, including Individual Defendants, in confidence and for the sole purpose of serving Plaintiffs' clients;

c.  Plaintiffs take reasonable and significant precautions to safeguard the Confidential Information, by including but not limited to requiring Individual Defendants – and

all InterArch employees – to sign Confidentiality Agreements, prohibiting employees from disclosing or otherwise using confidential information obtained in the course their employment with InterArch;

d.   the information cannot be replicated, compiled or recreated by a competitor without substantial time, effort and expense; and

e.   the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

181.   The Individual Defendants were privy to Plaintiffs' Confidential Information in the regular course of their work duties with InterArch, including by nature of their roles as senior design employees and their access to InterArch's computer systems.

182.   The two Individual Defendants understood that they were subject to confidentiality obligations regarding their work and with respect to the Confidential Information.

183.   In violation of their obligations described above, the Individual Defendants accessed and misappropriated Plaintiffs' Confidential Information.

184.   By copying, taking, retaining, or otherwise using Plaintiffs' Confidential Information in breach of their duty of secrecy and loyalty, and/or causing these actions to be taken, the Individual Defendants have actually, willfully, and maliciously misappropriated InterArch's Confidential information.

185.   The Individual Defendants obtained improper and unauthorized access to Plaintiffs' Confidential Information prior to or upon their departure, and that information is now improperly in the possession of Republic Bank.

186.     The Confidential Information has been misappropriated by Individual Defendants who, despite knowing such information was shared with them in confidence, shared the Confidential Information with Republic Bank to the detriment of Plaintiffs.

187.     In addition, Republic Bank has likewise misappropriated Plaintiffs' Confidential Information by deliberately inducing the Individual Defendants to terminate their employment with InterArch and accept employment with the Bank for the intended purpose of wrongfully continuing to use InterArch's Work Product, Trade Secrets and Confidential Information.

188.     Republic Bank knew, had reason to know, or was reckless in not knowing that the Confidential Information it now uses was brought to Republic Bank by Individual Defendants in violation of their confidentiality obligations.

189.     Defendants' misappropriation of Plaintiffs' Confidential Information has been malicious, knowing, deliberate, intentional, and willful.

190.     As a direct result of the misappropriation of their Confidential Information by all Defendants, Plaintiffs are suffering, have suffered and/or will suffer actual and/or consequential damages, including the wrongful ongoing disclosure and use of their proprietary and confidential business information and attorney-client privileged material, as well as other injuries.

191.     As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial.

192.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to make wrongful disclosure and/or use of Plaintiffs'

Confidential Information. Plaintiffs therefore are entitled to permanent injunctive relief restraining and enjoining Defendants' ongoing wrongful conduct.

WHEREFORE Plaintiffs request that judgment be entered in favor of Plaintiffs and against all Defendants, jointly and severally, for the following relief:

1. Damages in an amount to be determined at trial, plus interest;

2. A permanent injunction ordering Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act: (i) To return immediately all originals and copies of any Confidential Information, product that Defendants took, copied, caused to be taken or copied, or received from InterArch; and (ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of Plaintiffs' Confidential Information;

3. Such other legal and equitable relief recoverable under the parties' contracts or applicable law; and

4. Exemplary or punitive damages against Defendant Republic Bank due to its willful and malicious misappropriation.

## COUNT X: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS
### (Plaintiffs against Republic Bank)

193. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

194. Mr. Hill has been a banking executive who has worked in the banking industry for more than forty years.  InterArch is a specialized design firm provides architectural, interior, and branding services for financial institutions.  Through Mr. Hill's reputation, contacts, and successful leadership at multiple banks, and InterArch's expertise and experience, they possess a network of unique banking relationships through which business opportunities arise.

195.    Since Republic Bank's termination of its relationship of InterArch and Mr. Hill's resignation from the Bank, Mr. Hill and InterArch are actively identifying prospective opportunities and banking customers who can benefit from the acumen, expertise, and services that were provided to Republic Bank, and before it, Commerce Bank and Metro Bank.

196.    However, Republic has intentionally and wrongfully interfered with Plaintiffs' ability to market their services to another financial institution.  Republic has acted with malice by siphoning away InterArch's senior employees and by misappropriating and continuing to use Plaintiffs' Trade Secrets, Confidential Information and Work Product. By doing so, Republic is damaging Plaintiffs' ability to control and maintain the unique nature of the brand and business model they can offer to other financial institutions.

197.    Republic's interference was unjustified and not privileged because Republic has benefited and intends to continue to benefit from the use of Plaintiffs' Work Product and Confidential Information, guided by people with knowledge of Plaintiffs' Trade Secrets, despite Republic terminating its relationship with Plaintiffs and without compensation to Plaintiffs.

198.    Republic Bank's misconduct has harmed Plaintiffs' existing and prospective business relationships. The conduct of Republic Bank was, and continues to be, improper and not privileged.

WHEREFORE Plaintiffs requests that judgment be entered in favor of Plaintiffs and against Republic Bank for the following relief:

    a)  Damages in an amount to be determined at trial, plus interest;

    b)  Punitive damages;

    c)  A permanent injunction ordering Republic Bank, any person or firm acting on its behalf or in concert with it, and any person or firm through which it acts: (i) To

return immediately all originals and copies of any Confidential Information and Work Product that Republic Bank took, copied, caused to be taken or copied, or received from InterArch; and (ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of InterArch's Confidential Information and Work Product; and

d)   Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

## COUNT XI: BREACH OF THE DUTY OF LOYALTY
### (InterArch against Individual Defendants)

199.   InterArch incorporates by reference the foregoing paragraphs as if set forth fully herein.

200.   Upon information and belief, Defendants Mr. Dean and Mr. Chessa both signed employment contracts with InterArch when they began working at InterArch.

201.   Individual Defendants had a duty of loyalty to InterArch while employed by InterArch and a continuing duty after their employment.

202.   While employed at InterArch, the Individual Defendants were part of its management and enjoyed a high level of trust and confidence from InterArch.  Accordingly, the Individual Defendants were privy to InterArch's proprietary Confidential Information and intellectual property.

203.   While still employed by InterArch, the Individual Defendants breached their duty of loyalty by, among other misdeeds:

a.   Misappropriating or causing to be misappropriated Confidential Information belonging to InterArch;

    b.    Participating, while still in InterArch's employment, in Republic Bank's scheme to misappropriate and continue wrongful use of InterArch's Work Product and Confidential Information, all the while being aware that the purpose of the scheme was to injure and damage InterArch's business and to improperly gain access to and wrongfully use InterArch's Work Product and Confidential Information; and

    c.    Concealing their activities and misdeeds from InterArch.

204.   The Individual Defendants undertook these actions in anticipation of their resignation, intending to use InterArch's Work Product and Confidential Information against InterArch's interests, and for the Individual Defendants' own purpose or those of a third party.

205.   The Individual Defendants had a continuing duty after they left InterArch not to use the Confidential Information they had acquired during their employ in such a way as to harm InterArch's interests.

206.   On information and belief, following their termination of employment with InterArch, both Defendants continued to breach their duties of loyalty to InterArch by using the Confidential Information they had acquired from InterArch and facilitating Republic Bank's misuse of Work Product belonging to InterArch.

207.   The Individual Defendants' actions had the result of aiding an adverse party engaged in a dispute with their employer and whose interests conflict with those of their employer.

208.   As a result of the above-described breaches of fiduciary duty, InterArch is suffering, has suffered and/or will suffer actual and/or consequential damages, including the wrongful disclosure and ongoing use of its Confidential information and Work Product, as well as other injuries.

WHEREFORE InterArch requests that judgment be entered in favor of InterArch and against the Individual Defendants, jointly and severally, for the following relief:

    a)  Damages in an amount to be determined at trial, plus interest;

    b)  Punitive damages;

    c)  A permanent injunction ordering Individual Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act: (i) To return immediately all originals and copies of any Confidential Information and Work Product that Republic Bank took, copied, caused to be taken or copied, or received from InterArch; and (ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of InterArch's Confidential Information and Work Product; and

    d)  Such other legal and equitable relief recoverable under the parties' contracts or applicable law.

### COUNT XII: DECLARATORY JUDGMENT
#### (Plaintiffs against all Defendants)

209.    Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

210.    At least one of the Individual Defendants, Mr. Dean, was involved in privileged communications with Plaintiffs and their outside litigation counsel regarding Plaintiffs' plans and strategy for preparing for this suit against Republic Bank.

211.    From at least August 8, 2022 to at least September 14, 2022, Mr. Dean communicated repeatedly with Plaintiffs and their outside litigation counsel regarding litigation strategy preparation.  He was a party to at least 30 emails with Plaintiffs' counsel constituting

attorney-client privileged communications regarding the instant litigation and other litigation concerning Plaintiffs' intellectual property.

212.    The attorney-client privilege attached to those discussions resides with Plaintiffs, and the Individual Defendants do not have the authority to waive that privilege.

213.    The Individual Defendants have refused to acknowledge that they have returned all of InterArch's confidential and privileged documents or that they understand their obligations with respect to InterArch's attorney-client privileged discussions.

214.    Republic Bank has also refused to confirm that:  (1) neither Republic Bank nor any person acting on its behalf will view, discuss, or otherwise use any of InterArch's Confidential Information; and/or (2) Republic Bank will ensure that the Individual Defendants are walled off from any and all discussions regarding any legal or anticipated legal matter (with this term to be construed in the broadest sense possible) with InterArch.

215.    As a direct and proximate result of Defendants' wrongdoing as described herein, InterArch is, has been and/or will be suffering actual and/or consequential damages in the form of the imminent threat of the disclosure of its attorney-client privileged and other confidential information to Republic Bank or to the public.

WHEREFORE InterArch requests that judgment be entered in favor of InterArch and against all Defendants, jointly and severally, for the following relief:

        a)    A declaratory judgment holding that communications between InterArch and its outside counsel pertaining to InterArch's dispute with the Bank are attorney-client privileged, that the privilege resides with InterArch alone, and that Individual Defendants do not have the authority to waive the privilege;

b) A permanent injunction ordering Defendants, any person or firm acting on their behalf or in concert with them, and any person or firm through which they act: (i) To return immediately all originals and copies of any documents, information, data, files, or other materials that Defendants took, copied, caused to be taken or copied, or received from InterArch; (ii) To cease and refrain from copying, distributing, displaying, or otherwise using any of InterArch's confidential, proprietary, or privileged information, documents, information, data, files, or other materials; and (iii) To cease and refrain from using any attorney-client privileged information, communications, or materials prepared for or made between InterArch and its counsel.

By: *Tracy Zurzolo Quinn*
Tracy Zurzolo Quinn
Valerie Eifert Brown
James E. Delbello, Jr.
Carolyn P. Short
Adria Lamba
**HOLLAND & KNIGHT LLP**
2929 Arch Street
Suite 800
Philadelphia, PA 19104
(215) 252-9522
Tracy.Quinn@hklaw.com
Valerie.Brown@hklaw.com
James.DelBello@hklaw.com
Carolyn.Short@hklaw.com
Adria.Lamba@hklaw.com

*Counsel for Plaintiffs*

Dated: February 10, 2022