**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON HILL AND INTERARCH, INC.,<br><br>Plaintiffs,<br>v.<br><br>REPUBLIC FIRST BANCORP, INC., et al.,<br><br>Defendants. | Civil Action No.: 2:22-cv-04735 |

## <u>ORDER</u>

AND NOW, this ___ day of _____, 2023, upon consideration of

Defendants' Motion to Dismiss Amended Complaint, and any response thereto, it is hereby

ORDERED, ADJUDGED, and DECREED that the motion is GRANTED.  Plaintiffs' Amended

Complaint is hereby DISMISSED with PREJUDICE.

BY THE COURT:

_____
Kenney, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERNON HILL AND INTERARCH, INC., <br><br> Plaintiffs, <br><br> v. <br><br> REPUBLIC FIRST BANCORP, INC., et al., <br><br> Defendants. | Civil Action No.: 2:22-cv-04735 |

### Defendants' Motion to Dismiss Amended Complaint

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants, Republic First Bancorp, Inc., Rodney Dean, and John Chessa, respectfully move the Court to dismiss the Amended Complaint with prejudice for the reasons set forth in the attached Memorandum of Law, incorporated herein by reference.  A form of Order is also provided.

Respectfully submitted,

/s/ George M. Vinci, Jr.
George M. Vinci, Jr., Esquire
Neal R. Troum, Esquire
Spector Gadon Rosen Vinci P.C.
1635 Market Street
Seventh Floor
Philadelphia, PA 19103
(215) 241-8888
gvinci@lawsgr.com, ntroum@lawsgr.com

Dated: March 16, 2023                    *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERNON HILL AND INTERARCH, INC., <br><br> Plaintiffs, <br> v. <br><br> REPUBLIC FIRST BANCORP, INC., et al., <br><br> Defendants. | Civil Action No.: 2:22-cv-04735 |

**Memorandum in Support of
Defendants' Motion to Dismiss Amended Complaint**

## I.    <u>Background</u>

Plaintiff Vernon Hill worked at Republic Bank ("Republic" or the "Bank") from 2008 through 2022.  (Am. Compl. ¶¶ 1, 13.)  Plaintiffs paint a picture in which Republic stood at the brink of ruin, only to be rescued by Mr. Hill, who is literally described as saving the day "with InterArch at his side."  (Am. Compl. ¶ 14; *see also, e.g., id.* ¶ 23 ("Republic Bank achieved tangible success" only "[u]nder Mr. Hill's guidance."); ¶ 28 ("The Bank thrived under Mr. Hill's leadership.").)  According to Plaintiffs, Republic retained Plaintiff InterArch, Inc. ("Interarch"), owned by Mr. Hill's wife, Shirley Hill, during the time it employed Mr. Hill, to "provide[] innovative branding, marketing, and advertising services" to Republic.  (Am. Compl. ¶ 30.)

The gravamen of Plaintiffs' claims is that, since Mr. Hill and InterArch have parted ways with the Bank, "the Bank has continued to use Plaintiffs' intellectual property in violation of various laws and agreements."  (Am. Compl. ¶ 2.)  That intellectual property is described as "artistic creations, memorable slogans . . ., marketing and advertising materials, and popular images of Mr. Hill and his dog" that allegedly comprise Plaintiffs' "confidential methodologies, strategies, and brand overhaul and execution processes."  (Am. Compl. ¶¶ 2, 3.)

Plaintiffs allege that "Mr. Hill entered into several contracts with the Bank, including a 2008 consulting agreement and employment agreements in 2017 and 2021." (Am. Compl. ¶ 37.) They further claim that "[n]one of those agreements provides for any transfer of ownership rights in Mr. Hill's" claimed intellectual property. (*Id.*) However, Plaintiffs fail to attach any of these agreements to the Amended Complaint, so presumably none of these contracts states that the intellectual property at issue belongs to Mr. Hill either.

As to InterArch's contractual relationship with the Bank, Plaintiffs claim that the Bank provided a branding agreement to InterArch on January 1, 2010, which provided that all of the intellectual property belonged to the Bank. (Am. Compl. ¶ 39.) However, according to Plaintiffs, "InterArch rejected that proposal" and prepared an alternative draft agreement dated January 4, 2010. (Am. Compl. ¶ 40.) This revised January 4, 2010 agreement provided that InterArch would retain ownership of the intellectual property. (*Id.*) However, and again conspicuously, Plaintiffs fail to attach either the January 1 or the January 4 branding agreements to the Amended Complaint.

And for good reason. The January 1, 2010 agreement is signed by the Bank and consistent with the other documents governing the relationship between InterArch and Republic (discussed further below). (January 1, 2010 agreement, attached hereto as Exhibit 1.)[1] That agreement provides in no uncertain terms that:

> [InterArch] agrees that the Bank owns all work product resulting from the Services and the intellectual property rights there as a work for hire for the Bank. If any such work product or right is not by law a work for hire, Consultant hereby assigns such rights to the Bank without reservation.

---

[1] In ruling on a motion to dismiss, "the court may consider documents which are attached to or submitted with the complaint, as well as documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Staropoli v. Metro. Life Ins. Co.*, 465 F. Supp. 3d 501, 508 (E.D. Pa. 2020).

(January 1, 2010 agreement, Art. 8(C).)  The January 4, 2010 agreement that Plaintiffs claim governs, in contrast, was never signed by either party.  (January 4, 2010 agreement, attached hereto as Exhibit 2.)

Plaintiffs concede that "a series of letter agreements" followed pursuant to the branding agreement, (Am. Compl. ¶ 38), but Plaintiffs again fail to attach any of these agreements to the Amended Complaint.  And, again, for good reason.  The first letter agreement, dated February 16, 2011 (the "2011 letter agreement"), issued on InterArch letterhead and was signed by both InterArch and Republic.  (2011 letter agreement, attached hereto as Exhibit 3.)  The 2011 letter agreement originally provided that "[a]ll documents produced by InterArch under this proposal shall remain the property of InterArch and may not be used by [Republic] for any other endeavor without the written consent of InterArch."  (2011 letter agreement at 3.)  However, Harry Madonna, Republic's then-CEO and board chairman, crossed out this language in its entirety before signing the 2011 letter agreement, and the crossed-out text is initialed by "SH" (for Shirley Hill, InterArch's principal and Mr. Hill's wife).  (*Id.*)  Thus, the first of the letter agreements under the Republic-InterArch branding agreement, signed by both parties, was demonstrably modified to be consistent with the January 1, 2010 agreement, which provided that the intellectual property at issue belonged to Republic.  Additional letter agreements followed, but none of them contained the ownership provision struck from the 2011 letter agreement. (Letter agreements, attached hereto as Exhibit 4.)

Plaintiffs assert that they own certain "trade secrets" and "confidential information" which Defendants allegedly misappropriated.  Plaintiffs vaguely allege that their trade secrets include "insights regarding consumer behavior, and the strategies, techniques and processes they developed from those insights."  (Am. Compl. ¶ 51.)  Plaintiffs also make a claim to confidential

3

information, amorphously described as including "marketing strategies, insights and plans that Plaintiffs developed for their bank clients' proprietary use." (Am. Compl. ¶ 52.) Plaintiffs mainly base their claims against the two individual Defendants, John Chessa and Rodney Dean, Republic employees who used to work at InterArch, on this supposedly top-secret stuff. (Am. Compl. ¶ 59.) But while Plaintiffs' claims against Messrs. Dean and Chessa rely on Plaintiffs' averment that they signed confidentiality agreements and employment agreements with InterArch, (Am. Compl. ¶¶ 55, 57), such averment is made only "upon information and belief," and neither a confidentiality agreements nor an employment agreement is attached to or quoted in the Amended Complaint.

## II.    <u>Standard of Review</u>

The Court should dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) where it fails to state a claim upon which relief can be granted. In deciding a 12(b)(6) motion, courts consider whether the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court must accept as true a complaint's well-pleaded allegations of fact, *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), it need not accept a Plaintiff's bald assertions or legal conclusions, *County of Hudson v. Janiszewski*, 351 F. App'x 662, 667 (3d Cir. 2009).

## III.   <u>Argument</u>

### A.    <u>InterArch's Copyright Infringement Claim (Count I) Must Be Dismissed</u>

To use copyrighted works, "[t]he law does not require an express or written license. In appropriate circumstances, a non-exclusive license may be implied by conduct." *Lowe v. Loud Records*, 126 Fed. Appx. 545, 547 (3d Cir. 2005). "Circumstances establishing permission, or even lack of objection, can establish a nonexclusive license." *Id.* "A nonexclusive license may

arise by implication where the creator of a work at a defendant's request hands it over, intending

that the defendant copy and distribute it." *MacLean Assocs., Inc. v. Wm. M. Mercer–Meidinger–*

*Hansen, Inc*., 952 F.2d 769, 779 (3d Cir. 1991).  Such "[d]elivery of a copy of the creation . . .

may be relied upon in determining that an implied license has been granted."  *Id*.  An implied

license to use copyrighted materials thus exists where "(1) a person (the licensee) requests the

creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the

licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and

distribute his work."  *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle,* 184 Fed. Appx.

270, 274–75 (3d Cir. 2006).

Plaintiffs' copyright infringement claim must be dismissed because the facts alleged in

the Amended Complaint establish that Republic has an implied license for the copyrighted works

at issue.  That is, Plaintiffs admit that InterArch handed over the work product at issue to

Republic for Republic to use in promoting its business:

- "InterArch provided Republic  with branding, marketing and advertising services under the Branding Agreement."  (Am. Compl. ¶ 41.)
- Republic made use of the "brand assets that . . . InterArch brought to it . . . . This included numerous copyrighted artistic creations . . . ."  (Am. Compl. ¶ 2.)
- InterArch developed works which it "permitted Republic Bank to use." (Am. Compl. ¶ 26.)
- Republic "retained InterArch to design, deploy and oversee use of the myriad of promotional and marketing materials."  (Am. Compl. ¶ 29)
- InterArch "provide[d] innovative branding, marketing, and advertising services to" Republic.  (Am. Compl. ¶ 30.)

There can be no question but that InterArch gave the materials to Republic, and Republic used

them in promoting the bank's business, as everyone had intended.  InterArch tries to avoid the

legal conclusion that follows from this – that Republic has an implied license to use the work at

issue – by claiming that what was created was only a "limited license to use InterArch's Work

Product." (Am. Compl. ¶ 65; *see also id.* ¶¶ 40, 95, 99.)  But no plausible allegation can be found

anywhere in the Amended Complaint suggesting that a "limited license" was somehow created.

Moreover, "[b]y granting Defendants a nonexclusive implied license to copy and

distribute [the intellectual property], [plaintiffs] waived their right to sue for copyright

infringement." *Beholder Prods., Inc. v. Catona*, 629 F. Supp. 2d 490, 494 (E.D. Pa. 2009).  That

is the case where the bank ordered, paid for, and received the works at issue.  Importantly,

Plaintiffs do not allege copyright infringement based on Republic's use of the works for the

years that InterArch and Republic operated under the branding agreement.  Rather, InterArch

only claims copyright infringement from the *continuing* use of its branding materials after "the

termination of the parties' relationship" on August 14, 2022.  (Am. Compl. ¶ 45; *see also id.* ¶¶

65, 99, 100.)  But where, as here, Plaintiffs' own pleading establishes that InterArch granted

Republic a nonexclusive implied license to copy and distribute the intellectual property at issue,

InterArch has waived its right to sue Republic for such alleged copyright infringement.  *See*

*Lowe v. Loud Recs.*, 126 Fed. Appx. 545, 547 (3d Cir. 2005).

If InterArch attempts to argue that Republic's use of the material has exceeded the scope

of the implied license, such a claim fares no better.  There is (and could be) no claim by

InterArch that, after the branding agreement was terminated, the Bank made use of the branding

material at issue differently than it had before termination.  Interarch's argument that Republic

exceeded the scope of its license can therefore only be that Republic was obligated to employ

InterArch's services in perpetuity (notwithstanding the provisions in the agreements for

termination by either party upon thirty days' notice).  (Exhibits 3, 4.)  No support for such a far-

fetched claim can be found in the Amended Complaint.  That is, there is no support for a claim

by InterArch that an unspoken agreement between InterArch and Republic existed that, on

6

termination of the parties' relationship, Republic would be required to destroy the foregoing fourteen years' investment in branding services.  "In attempting to determine the scope of an implied license, a court must make an objective inquiry into the facts that manifest the parties' intent, as opposed to a subjective inquiry into the mind of the licensor."  *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*, 356 F. Supp. 2d 515, 527–28 (E.D. Pa. 2005).  Nothing can be found in the Amended Complaint (or elsewhere) manifesting an intent by Republic and InterArch that Republic's use of the materials be permitted only while the parties continued their ongoing relationship.

InterArch admits that it gave Republic the works at issue to use in promoting the Bank's consumer banking brand.  Absent evidence of the parties' intent to impose a limitation on the scope of use, an implied license is irrevocable where, as here, the licensor was compensated.  *See LimeCoral, Ltd. v. CareerBuilder, LLC*, 889 F.3d 847, 851 (7th Cir. 2018); *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451–52 (5th Cir. 2003).  As a result, InterArch's copyright infringement claim must be dismissed.

In addition, in connection with its copyright claim, Interarch claims an entitlement to statutory damages and attorney's fees.  (Am. Compl.  ¶¶ 90, 91.)   In certain circumstances, a copyright infringement claimant may be entitled to statutory damages and attorney's fees.  S*ee* 17 U.S.C. §§ 504, 505.  However, these provisions are limited by 17 U.S.C. § 412(c)(2), which states that statutory damages and attorney's fees are not available where, as here, the "infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

Interarch registered four of its copyrights on September 9, 2022, and four more on

September 23, 2022. (Am. Compl. ¶ 34).  InterArch admits that Republic used these works for years before registration, and any license to use them was revoked August 14, 2022, when InterArch's contract ended, at the earliest.  The Bank (through InterArch) published the works years before registration, which make InterArch ineligible for statutory damages and attorneys' fees.  *Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, 2018 WL 3193706, at *3 (E.D. Pa. June 28, 2018).  Even if the first publication date were August 15, 2022, when InterArch's contract ended, that was still the month before the copyrights were registered.  Because the alleged infringement took place "after first publication of the work and before the effective date of its registration," Interarch is not entitled to statutory damages or attorney's fees as a matter of law.  *E.g.*, *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 211 L.Ed.2d 586 (Feb. 24, 2022).

**B.    InterArch's Breach of Contract Claim (Count II) Must Be Dismissed Because No Contract Was Breached**

InterArch bases its breach of contract claim entirely on the assertion that InterArch owned the intellectual property at issue, and thus that Republic wrongfully continued to use that intellectual property after the branding agreement had been terminated.  That is, according to InterArch, "Republic Bank has materially breached the Branding Agreement by continuing to use InterArch's Work Product after termination of the Branding Agreement, without InterArch's permission and without compensation to InterArch."  (Am. Compl. ¶ 100.)

As discussed above, InterArch conspicuously fails to attach to the Amended Complaint a copy of the branding agreement on which its breach of contract claim is based.  The likely reason for this omission is the fact that this January 4, 2010 agreement was never signed by any party and never went into effect.  (Exhibit 2.)  Instead, the controlling branding agreement was dated January 1, 2010, was signed by Republic, and assigned ownership of all the relevant intellectual

property to Republic.  (Exhibit 1.)

But, as before, there's more, as spelled out in Defendants' Motion to Dismiss, which the Court directed Plaintiffs to address but which Plaintiffs steadfastly ignore.  While Plaintiffs concede that "a series of letter agreements" were entered into pursuant to the InterArch branding agreement, (Am. Compl. ¶ 38), they fail to acknowledge how these letter agreements further demonstrate Republic's ownership of the intellectual property.  For example, the first of those letter agreements (the 2011 letter agreement) originally provided that "[a]ll documents produced by InterArch under this proposal shall remain the property of InterArch," but this language was crossed out by Republic and initialed by InterArch's principal, Shirley Hill.  (2011 letter agreement at 3, Exhibit 3.)  In other words, because the controlling January 1, 2010 agreement between InterArch and Republic (Exhibit 1) provided that the intellectual property belonged to Republic, not Interarch, language to the contrary was removed from the 2011 letter agreement and was absent from all further letter agreements between Republic and InterArch.  (Exhibits 3, 4.)  InterArch thus has no contractual claim to ownership of the relevant intellectual property.

As set forth herein, the contracts signed by Republic by which the parties operated for more than a decade provided that the intellectual property at issue belonged to Republic. Because the agreement between InterArch and Republic did not provide that InterArch owned the intellectual property, Republic cannot have breached the branding agreement by continuing to make use of the intellectual property after the branding agreement was terminated.

C.   **Plaintiffs' Unjust Enrichment Claim (Count III)
     Is Not Viable and Must Be Dismissed**

Plaintiffs' unjust enrichment cause of action is based on the claim that "Republic Bank's continued use of Plaintiffs' Work Product after termination of its relationship with Plaintiffs constitutes a benefit conveyed on Republic Bank" not contemplated by the parties.  (Am. Compl.

¶ 106.)  According to Plaintiffs, "[i]t would be inequitable to allow Republic Bank to retain the benefits conferred by Plaintiffs without paying for their value."  (Am. Compl. ¶ 109.)

"[A] claim of unjust enrichment must allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Glob. Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008).  Furthermore, "unjust enrichment is actionable only to the extent that no contract governs the parties' relationship for that time period."  *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 229 (3d Cir. 2022).

*First*, the Amended Complaint admits that the relationships between Mr. Hill and Republic, and the relationship between InterArch and Republic, were governed by contract. (Compl. ¶¶ 37-38.)  Accordingly, an unjust enrichment claim will not lie.  *Brezinski v. Widener Univ.*, 582 F. Supp. 3d 257, 267 (E.D. Pa. 2022).  Plaintiffs' unjust enrichment claim must be dismissed for this reason.

*Second*, Plaintiffs' unjust enrichment claim is based on their assertion that it would be inequitable for Republic to make use of the intellectual property because the intellectual property belongs to Plaintiffs.  (*E.g.*, Am. Compl. ¶ 109.)  However, as set forth herein, the branding agreement between Republic and InterArch provides that Republic, not InterArch, owns the relevant intellectual property; and Mr. Hill has no legal rights to the intellectual property to which he makes claim.  Thus, because all of the intellectual property at issue herein belongs to Republic – and not to Plaintiffs – there is nothing unfair or inequitable about Republic's use of such material.

10

Accordingly, the Amended Complaint provides no basis for the claim that Republic's use of the intellectual property was unjust.  As there is as a matter of law no inequitable conduct on Republic's part, there is no unjust enrichment claim.

D.      **Mr. Hill's Trademark Infringement Claim (Count IV) Must Be Dismissed**

Mr. Hill claims that he personally owns the marks and trade dress used to identify the commercial services of Republic (as well as two banks where Mr. Hill was previously employed, Commerce and Metro banks).  These consist of:

- a stylized logo of the Republic name with the first letter in red and the rest in white with a blue background (similar to logos formerly used by Mr. Hill's prior banks), (Am. Compl. ¶ 113);

- the slogan "The Power of Red is Back," which Hill says he caused Republic to "aggressively promote[]" beginning in 2014 to identify its "revamped, consumer-focused business," (Am. Compl. ¶ 116);

- three "Money Design Marks," consisting of two cartoon-style signs designating consumer banking programs and a machine display sign (that Hill claims were also used by the prior banks), (Am. Compl. ¶ 117; *see also id.* ¶¶ 24-26); and

- all Republic "marketing materials with prominent red features," (Am. Compl. ¶¶ 114, 119.)

Mr. Hill does not allege that any of these marks were registered.

To plead a claim for trademark infringement, a plaintiff must plausibly allege that (1) the mark at issue is valid and legally protectable, (2) plaintiff owns the mark, and (3) defendant's use of the mark is likely to create confusion concerning the origin of the goods or services.  *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994).  Mr. Hill's trademark infringement count must be dismissed for failure to plead ownership of the marks.  The determination of who owns an unregistered mark turns on who first used the mark in commerce.  *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 219 (3d Cir. 2021).  This is because the aim of trademark protection is to avoid consumer confusion as to which business is providing the

11

service – not to identify who deserves credit for inventing the mark that a business uses. *Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc.*, 2016 WL 4719890, at *4 (S.D. Fla. June 30, 2016); 2 McCarthy on Trademarks and Unfair Competition § 16:11 (5th ed.).

Where, as here, a trademark infringement claimant allegedly created a mark but did not himself use it in commerce, he cannot succeed on a trademark infringement claim against the business that has actually used the mark in commerce. *Colon-Lorenzana v. S. Am. Restaurants Corp*. (D.P.R. May 6, 2014). Mr. Hill's claim – that he invented marks first used by his previous bank employers, which he later recycled for use by Republic – does not plead ownership. That is, Mr. Hill does not plead that he ever used the marks to identify his services as an bank employee or consultant (though Republic has used the marks to identify the source of its banking services). Because Mr. Hill does not (and could not) claim he personally first used any of the marks at issue in commerce, he cannot as a matter of law claim ownership of the marks.

Mr. Hill also fails to plausibly plead that Republic's use of the marks is likely to create consumer confusion about the source of Republic's services. Consumers are not likely to be confused and believe that Mr. Hill (and not Republic) is providing the banking services Republic offers, because Mr. Hill does not allege (and could not allege) that he ever personally offered banking services in commerce. Nor could the marks foment confusion as to whether the source of Republic's services is Commerce or Metro banks (the prior banks where Mr. Hill worked); Metro operates in the United Kingdom and Commerce operates under a different name in the Midwest.

Mr. Hill mentions a claim for false endorsement, but he does not plausibly allege any such claim. To succeed on a claim for false endorsement, a "plaintiff must prove the likelihood of consumer confusion as to the origin, approval or endorsement of the product." *Madama v.*

12

*Genesis Rehab Servs.*, WL 3695976, at *7 (D.N.J. July 24, 2014). The marks at issue, however –
logos, slogans, mascots, displays, etc. – do not suggest false endorsement of Republic by Mr.
Hill. He has nothing to do with these marks other than his claim that he and InterArch invented
them. As to the alleged continued use of Mr. Hill's likeness in advertisements that he and
Interarch created, there is no actionable false endorsement where, as here, a plaintiff voluntarily
endorses a service, then later sues over the continued use of the endorsement that he comes to
regret for business reasons; for such false endorsements claims allegedly confusing the public,
"[c]onfusion as to whether [the inventor] is getting paid does not count." *See Mktg. Prod.
Mgmt., LLC v. Healthandbeautydirect.com, Inc*., 333 F. Supp. 2d 418, 431 (D. Md. 2004). Mr.
Hill thus has no trademark endorsement claim either.

### E.    Hill's Right of Publicity Claim (Count V) Is Subject to Dismissal

Mr. Hill brings a claim for violation of his right of publicity, claiming that Republic "has
wrongfully continued to use . . . Mr. Hill's likeness (and that of the Hills' dog)." (Am. Compl. ¶
46.) The gravamen of Mr. Hill's right to publicity claim is that Republic continued to use Mr.
Hill's likeness in bank branding materials after Mr. Hill left the bank in July 2022. (Am. Compl.
¶¶ 48, 129-32.) Importantly, however, Plaintiffs admit that when the works with Mr. Hill's
likeness were originally created by InterArch and Mr. Hill, Mr. Hill consented to that use. (Am.
Compl. ¶ 2 (Mr. Hill and InterArch together "brought to" Republic materials including "popular
images of Mr. Hill and his dog"); ¶ 21 ("After engaging Mr. Hill and partnering with InterArch,
Republic Bank began frequently using images of Mr. Hill in its advertising and promotional
materials"); ¶¶ 143-177 (InterArch's and Mr. Hill's "trade secrets" are merged).) The facts as
alleged are thus not that Republic appropriated the image of employee Hill for use in its
advertisements. Rather, Plaintiffs claim that they, acting together, created publicity materials

containing Mr. Hill's image that they provided to Republic as part of their contractual services. There is no claim that Republic created and used works containing Mr. Hill's likeness on its own, without Mr. Hill's consent, or that works containing Mr. Hill's image were created and used after Mr. Hill resigned.

In Pennsylvania, a claim exists for "[u]nauthorized use of name or likeness" to compensate "[a]ny natural person whose name or likeness has commercial value" for the use of his name or likeness "for any commercial or advertising purpose without [his] written consent." 42 Pa.C.S.A. § 8316(a).  Mr. Hill has not pleaded a valid right of publicity claim.  First, he failed to allege (and could not allege) that his likeness was used without his consent.  On the contrary, Mr. Hill alleges that he himself (with InterArch) created the works at issue containing his likeness, so the works were created with his consent.  *Second*, the statute limits claims to plaintiffs whose name or likeness has "commercial value," defined as an interest "developed through the investment of time, effort and money."  42 Pa.C.S.A. § 8316(e).  While Mr. Hill implausibly alleges that his likeness as a bank executive has commercial value, the Amended Complaint concedes that all work containing his likeness was created pursuant to contracts under which Republic compensated Mr. Hill (and InterArch).  As a result, all "investment" made since 2008 to create commercial value in Mr. Hill's likeness – if any – was made by Republic, not Mr. Hill.  *Third*, the Amended Complaint fails to plead that Republic "appropriated" Mr. Hill's likeness, instead admitting that Mr. Hill and InterArch, for payment, created the relevant works for Republic to use.  *Vogel v. W.T. Grant Co*., 458 Pa. 124, 130 (1974).  There can be no appropriation where the person whose likeness is at issue created the work at issue for payment.

Even if Mr. Hill could surmount these hurdles to his publicity rights claim, Mr. Hill has waived his right to sue by consenting to the prior use of his likeness in these very advertisements.

*Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 809 (W.D. Pa. 1972). While the photographed bystander in *Raible* might raise a question of fact as to whether consent was given, here a self-declared bank branding expert admits that he created and featured himself in the works in question.

### F.    InterArch's Unfair Competition Claim (Count VI) Must Be Dismissed

Plaintiffs bring a claim under the New Jersey Unfair Competition statute, N.J.S.A. § 56:4-1, which provides that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trademark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." Plaintiffs' claim is that the Bank unfairly competes with them by continuing to use its "Republic Bank" promotional material – the Bank's own Republic Bank logo, the "R-dog" mascot, several cartoons and bank displays, and the "Red is Back" slogan – after Hill resigned his employment and after Republic terminated its contract with InterArch. (Am. Compl. ¶ 134.) Plaintiffs admit they contracted to create the promotional materials to identify the source of the Bank's banking services – *i.e.*, to develop Republic's brand *as a bank*. (Am. Compl. ¶¶ 20-21, 23-25, 29-33, 135.) They nonetheless contend that the retail banking public associates the Bank's brand with Mr. Hill personally because he was used as a model, (Am. Compl. ¶ 137), or because he was also an employee of other "consumer-friendly" banks that allegedly retain good will that used similar branding, (Am. Compl. ¶ 138).

Plaintiffs unfair competition claim is misconceived for multiple reasons. *First*, even assuming that Mr. Hill is the banking celebrity he claims to be, Plaintiffs still do not (and could not) plead that Mr. Hill has ever used Republic's marks to identify his own services to banks as an executive employee. *Second*, the claimed association of Republic's marks with the goodwill of the previous banks that employed Mr. Hill does not give Mr. Hill any personal rights in those

former banks' marks.  InterArch's claims are even worse – InterArch does not have *any* theory of how marks for banking services could identify InterArch's branding and advertising services; nor does InterArch make any claim that it used Republic's marks for any purpose (apart from performing paid services in creating those marks for the Bank's use).

Count VI is moreover duplicative of Plaintiffs' count IV trademark infringement claim, and so should be dismissed for that reason as well.  "[E]xcept for the interstate commerce requirement, the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same."  *SK & F, Co. v. Premo Pharm. Lab'ys, Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980).  Plaintiffs' unfair competition count should be dismissed for the same reason that the trademark infringement claim discussed above should be dismissed.

G.      **InterArch's Claims for Misappropriation of Trade Secrets (Counts VII and VIII) Must Be Dismissed**

Plaintiffs bring claims under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and the New Jersey Trade Secrets Act, N.J.S.A. 56:15–1, *et seq.* ("NJTSA").  Under these statutes, a plaintiff must plead (1) that he owns a "trade secret," and (2) that the defendant misappropriated it.  DTSA and NJTSA further require a plaintiff to identify the alleged trade secrets with enough particularity to separate the trade secret from matters of general knowledge in the trade.  "[V]ague references to products and information will not suffice."  *Advanced Fluid Sys., Inc. v. Huber*, 381 F. Supp. 3d 362, 386 (M.D. Pa. 2019).  A trade secret misappropriation plaintiff must also "set forth facts about how the specific secrets were utilized by" the defendant. *Oakwood*, 999 F.3d at 901.  Plaintiffs' DTSA/NJTSA claim is not viable under these standards.

In the original Complaint, InterArch let slip that its so-called "secrets" were actually public "designs, images, products and website designs."  In the Amended Complaint, however, Plaintiffs mysteriously (and confusingly) identify their joint "secrets" as comprising "insights"

16

into how consumers "respond" to public materials, such as architectural designs, "marketing and promotional materials and programs," and knowledge of "how to combine" such materials to create "an attention-getting bank brand for retail banking services."  (Am. Compl. ¶¶ 144, 161.)  Such "secrets" – to the extent it is even clear what Plaintiffs purport to describe – do not at all resemble the kinds of trade secrets that DTSA and NJTSA protect, which include plans, compilations, schematics, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, customer lists, and codes.   Rather, Plaintiffs' alleged "trade secrets" are apparently mysteries of insight and perception evoking romantic notions of personal genius.  Despite the Court's instruction to Plaintiffs to eschew puffery and "remove[] any claims that are not supported by the facts of this case," it remains unclear what the trade secrets that purport to underlie Plaintiffs' misappropriation of trade secrets claim are.  This claim must be dismissed as a result.

        Plaintiffs not only fail to allege Defendants' misappropriation of their trade secrets, they also do not indicate how the individual Defendants could have absconded with the "insights" that comprise such trade secrets.  They thus confuse alleged misappropriation of trade secrets with the palette of non-secret elements in the design business – red color, bold sans serif type, dog-themed cartoons, etc. – that the Amended Complaint admits Plaintiffs have, for decades, recycled as branding materials at three banks.  At bottom, Plaintiffs' trade secrets cause of action boils down to little more than a claim that Defendants Dean and Chessa had access to Plaintiffs' "insights," and they therefore must have "accessed and misappropriated" them at unstated times and by unspecified means.  (Am. Compl. ¶¶ 72, 149, 166, 183.)  Indeed, the only specific facts InterArch alleges relating to its trade secret claim are that Plaintiffs "ha[ve] good cause to believe" that former InterArch employees stole trade secrets because they went to work at

Republic and *could have* stolen something.  (Am. Compl. ¶ 72.)  Plaintiffs go so far as to assert

that it would have been "impossible" for the individual Defendants to work at Republic "without

revealing or using Trade Secrets" (whatever those might be), but they do not explain why.  (Am.

Compl. ¶ 73.)

Plaintiffs likewise do not indicate when the misappropriation took place or how it

occurred.  Plaintiffs further allege that Republic participated in the misappropriation, but no facts

showing that Republic was somehow complicit are alleged – other than the fact that former

InterArch employees Dean and Chessa now work for Republic, where "they *could* continue to

use Plaintiffs' Trade Secrets."  (Am. Compl. ¶ 74 (emphasis added).)  Plaintiffs are equally

vague as to how the alleged misappropriation of its so-called trade secrets caused it harm.  They

plead no facts concerning who used the stolen materials, when they were used, or for what

purpose.  While Plaintiffs allege, in conclusory terms, that they suffer from "ongoing disclosure

of their Trade Secrets," (Am. Compl. ¶ 155), their trade secrets claim is based on nothing more

than suspicion and speculation that an alleged trade secret *could* have been stolen by former

employees and used by Republic.  That is not enough.

**H.  Plaintiffs' Claim for Misappropriation of Confidential Information (Count IX) Must Be Dismissed**

It is unclear just what claim Plaintiffs purport to bring in Count IX, misappropriation of

confidential information under New Jersey common law.[2]  One possibility is that Plaintiffs

intend to bring a common law claim for misappropriation of trade secrets.  However, a New

Jersey common law claim for misappropriation of trade secrets requires, among other things, that

"the secret information was acquired by a competitor" and "was used by the competitor to the

---

[2] It is further unclear why New Jersey law would apply, where the controlling January 1, 2010 agreement specifies the application of Pennsylvania law.  (Exhibit 1, Art. 18(A).)  This is an additional basis to dismiss this claim.

detriment of plaintiff." *Rycolene Products, Inc. v. Walsh*, 756 A.2d 1047 (N.J. Super. App. Div. 2000).  Here, neither Republic Bank nor Rodney Dean nor John Chessa is a competitor of InterArch or Mr. Hill.  Further, despite their conclusory statements to the contrary, there is no plausible claim by Plaintiffs in the Amended Complaint that the trade secrets Plaintiffs claim were wrongly misappropriated have been used to Plaintiffs' detriment.  Simply, Plaintiffs have not pleaded a valid N.J. common law claim for misappropriation of trade secrets.

Alternatively, if Plaintiffs instead intend to bring a N.J. common law claim for unfair competition, their claim fares no better.  While misappropriation of confidential information may constitute unfair competition under New Jersey law, "mere access to confidential information does not establish that an employee misappropriated or improperly used such information." *Rest. Techs., Inc. v. Allora*, 2008 WL 3843527, at *7 (D.N.J. Aug. 15, 2008).  Put differently, "the mere fact that [an employee] may have gained knowledge about [plaintiff employer] while employed there does not establish that [the employee] misappropriated or improperly used [the employer's] confidential information." *Rest. Techs.*, 2008 WL 3843527, at *8.  But access is all that Plaintiffs can plausibly allege.  That is, there is nothing more than speculation on Plaintiffs' part that any of the alleged trade secrets or confidential information that Defendants Dean and Chessa allegedly had access to during their time at InterArch were ever disclosed to or misappropriated by Republic.  That Defendants Dean and Chessa had access to InterArch information during the time they worked there is not as a matter of law enough; however, nothing more than access is alleged in the Amended Complaint.

> I. **Plaintiffs' Claim for Tortious Interference with Prospective Business Relationships (Count X) Must Be Dismissed for Failure to Identify Any Prospective Business Relationship**

Plaintiffs next bring a claim against Republic for tortious interference with prospective

business relationships. According to Plaintiffs, they "possess a network of unique banking relationships through which business opportunities arise," (Am. Compl. ¶194), and "are actively identifying prospective opportunities and banking customers" to work with. (Am. Compl. ¶ 195.) Plaintiffs allege that Defendants have tortiously interfered with these opportunities, by "siphoning away InterArch's senior employees and by misappropriating and continuing to use Plaintiffs' Trade Secrets, Confidential Information and Work Product." (Am. Compl. ¶ 196.) As with many of Plaintiffs' claims, however, no information is provided in the Amended Complaint as to these "prospective opportunities and banking customers." This omission is fatal to Plaintiffs' tortious interference claim, requiring dismissal.

 "To state a claim for tortious interference with prospective contractual relations, a plaintiff must plead: (1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Sandoz Inc. v. Lannett Co., Inc.*, 544 F. Supp. 3d 505, 511 (E.D. Pa. 2021). Of course, as the first element makes clear (and as is obvious), tortious interference with prospective business relations requires a showing of the existence of a prospective business relationship. *Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1014 (3d Cir.1994). Indeed, courts routinely dismiss tortious interference with prospective business relations claims where, as here, no prospective business relations are identified. *E.g.*, *Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 639 (E.D. Pa. 2018); *Alvord-Polk*, 37 F.3d at 1015; *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 599 (E.D. Pa. 2016).

 Plaintiffs' claim of tortious interference with prospective contractual relations thus fails for their inability to identify a single prospective business relationship that has been interfered

with by Republic.  We are told that "Mr. Hill and InterArch are actively identifying prospective

opportunities and banking customers" to work with.  (Am. Compl. ¶ 195.)  But Plaintiffs fail to

identify any such "opportunities" or "customers" with whom Republic has allegedly interfered.

There is no indication of who these new prospective financial institutions might be, nor how

Plaintiffs' prospective relationship with them was in any way affected by something Republic

did or did not do.  Absent such a showing, Plaintiffs' tortious interference with prospective

contractual relationship claim must be dismissed.

**J.      InterArch's Claim for Breach of Duty of Loyalty (Count XI)
          Must Be Dismissed**

InterArch next claims that Defendants Dean and Chessa breached their duty of loyalty

towards InterArch.  This claim focuses on InterArch's allegation that Defendants Dean and

Chessa took confidential and trade secret information with them when they left InterArch and

then allegedly used it to harm InterArch's interests.  (Compl. ¶¶ 202, 205.)

Plaintiffs have averred that, "[u]pon information and belief, Defendants Mr. Dean and

Mr. Chessa both signed employment contracts with InterArch when they began working at

InterArch."  (Am. Compl. ¶ 200.)  However, Plaintiffs neither attach copies of these employment

contracts nor provide any indication of the terms of these alleged employment contracts.

InterArch has not stated a plausible claim that Defendants Dean and Chessa violated contractual

duties of loyalty to InterArch where the duties at issue (and the contracts memorializing such

duties) are never disclosed and never discussed in the Amended Complaint.  Plaintiffs thus assert

what amounts to a claim of breach of contractual duties of loyalty without ever disclosing (or

even mentioning) the terms of the controlling employment contracts.  Where the duty of loyalty

allegedly breached by an employee defendant comes from an employment agreement, a claim for

such a breach lies only in contract (and not tort).  *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d

588, 621 (E.D. Pa. 2010).  Plaintiffs have failed to allege the requisite elements of a breach of

loyalty claim based on breach of the alleged employment contracts.

If Plaintiffs rely on common law duties of loyalty applicable to at-will employees that

exist outside the alleged employment agreements, their duty of loyalty claim still must be

dismissed.  The scope of the common law duty of loyalty is narrowly circumscribed.  Included is

"a duty to refrain from competing with the principal and from taking action on behalf of, or

otherwise assisting, the principal's competitors throughout the duration of" the employment; and

"a duty not to use property or confidential information of the principal for the agent's own

purpose or those of a third party."  *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F. Supp. 3d 617,

667 (E.D. Pa. 2014).

As an initial matter, Republic (a bank) and InterArch (an architecture and branding firm)

are obviously not competitors; and so those aspects of the common law duty of loyalty relating to

competitors have no application here.  Nor is there any allegation that Dean or Chessa usurped a

business opportunity belonging to InterArch or solicited its customers.  *See Bro–Tech Corp.*, 651

F. Supp. 2d at 414.  If what is at issue is the intellectual property that is the subject of InterArch's

other claims against Republic, no claim of breach of the duty of loyalty can be based on such

intellectual property because all of the intellectual property at issue belonged to Republic, not

InterArch, as discussed above; and because there is nothing secret about such intellectual

property.  If InterArch's breach of duty of loyalty claim relates to some other information

allegedly taken from InterArch, InterArch fails to identify it.  A plaintiff must "give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006).  Thus, "it is crucial that a

complaint contain a factual basis with relation to each Defendant that clearly demonstrates a

22

potential for liability, otherwise the defendant cannot be said to have fair notice." *Major Tours, Inc. v. Colorel*, 720 F.Supp.2d 587, 603 (D.N.J. 2010).

The most that can be gleaned from the Amended Complaint as to the confidential information allegedly misappropriated is that it includes "insights regarding consumer behavior, and the strategies, techniques and processes they developed from those insights," such as "how consumers respond to various architectural design elements," "how consumers respond to various marketing and promotional materials, campaigns, and programs," and "how to combine architectural design elements, brand design elements, and marketing and promotional elements to create a distinctive, attention-getting bank brand for retail banking services." (Am. Compl. ¶ 51.) Such a description is so vague that it fails to put Defendants Dean and Chessa on notice of what they are accused of misappropriating. They misappropriated InterArch's "insights" and their "strategies, techniques and processes"? It is unclear what such an allegation might mean. InterArch's inability to identify what Dean and Chessa allegedly took from InterArch and later used against it is fatal to its breach of duty of loyalty claim, requiring dismissal.

### K.    Plaintiffs' Declaratory Judgment Claim (Count XII) Should Be Dismissed

Plaintiffs request a declaration from the Court that InterArch's communications with outside counsel regarding this litigation are privileged, and that Defendants Dean and Chessa "do not have the authority to waive the privilege." (Am. Compl. at 215.) Plaintiffs also seek an injunction requiring Defendants (i) to return unspecified "documents, information, data, files, or other materials that Defendants took, copied, caused to be taken or copied, or received from InterArch"; (ii) to stop "copying, distributing, displaying, or otherwise using" such materials, and (iii) to stop using unspecified privileged InterArch communications. (*Id.*) As before, Plaintiffs are entitled to none of this relief.

In connection with alleged communications involving Defendants Dean and Chessa and InterArch attorneys relating to the provision of legal advice to InterArch, such communications could be privileged (assuming all the requirements for privilege have been met) and the privilege would belong to InterArch.  However, while InterArch alleges that Mr. Dean may have been privy during his tenure at InterArch to certain privileged communications with InterArch's attorneys, (Am. Compl. ¶ 61), there is no claim anywhere in the Amended Complaint that Mr. Dean has improperly disclosed or made use of (or intends to improperly disclose or make use of) such information – because there is no basis for any such claim.

A declaration that certain communications are privileged, and that the privilege belongs to InterArch, is therefore inappropriate where no actual dispute or adversity exists and the requested declaration will change nothing.  Federal courts lack jurisdiction to issue declaratory judgments where there is no "actual dispute between adverse litigations, and where there is no likelihood that the requested declaration will bring about some change or have some effect." *Porta v. Klagholz*, 19 F. Supp. 2d 290, 294 (D.N.J. 1998).  "[D]eclaratory relief is appropriate where there is a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests."  *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1093 (E.D. Pa.1994).  This law applies with full force here and requires dismissal of InterArch's declaratory judgment claim.

InterArch's requested injunctive relief is also unwarranted.  As to InterArch's request that the Court order Defendants to stop using claimed privileged communications, there is not (and could not be) any claim in the Amended Complaint that Defendants have used (or intend to use) such information – assuming they have it.  So too the other injunctive relief Plaintiffs request relating to unspecified materials Defendants Dean and Chessa allegedly took with them.

A declaratory judgment is only appropriate where "the declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *CGU Life Ins. Co. of Am. v. Metro. Mortg. & Sec. Co.*, 131 F. Supp. 2d 670, 674 (E.D. Pa. 2001). Moreover, an actual case or controversy must exist for declaratory relief to issue, which requires, among other things, adverse interests among the parties. *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647–49 (3d Cir. 1990). To establish the required adversity of interest, "there must be a substantial threat of real harm that remains 'real and immediate' throughout the course of the litigation." *Cnty. Council of Northampton Cnty. v. SHL Systemhouse Corp.*, 55 F. Supp. 2d 334, 336 (E.D. Pa. 1999). However, "[w]here the plaintiff's action is based on a contingency, it is unlikely that the parties' interest will be sufficiently adverse . . . ." *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 411–12 (3d Cir.1992).

An order from the Court instructing Defendants Dean and Chessa not to use or disclose indeterminate communications that they have not disclosed and do not intend to disclose (and are not sure they were even privy to in the first place) would serve no useful purpose. An injunction requiring Defendants Dean and Chessa not to use and to return unspecified InterArch materials (which they do not believe they took anyway) will not resolve any uncertainty or afford any relief. The required adversity of interest among the parties is not present.

## IV.   **Conclusion**

For the foregoing reasons, Defendants, Republic First Bancorp, Inc., Rodney Dean, and John Chessa, respectfully request that the Court dismiss Plaintiffs' claims against them in the Amended Complaint with prejudice.

Respectfully submitted,

/s/ George M. Vinci, Jr.
George M. Vinci, Jr., Esquire
Neal R. Troum, Esquire
Spector Gadon Rosen Vinci P.C.
1635 Market Street
Seventh Floor
Philadelphia, PA 19103
(215) 241-8888
gvinci@lawsgr.com, ntroum@lawsgr.com

Dated: March 16, 2023                 *Attorneys for Defendants*

**<u>Certification</u>**

I, Neal R. Troum, certify that I spoke with James, DelBello, Jr., counsel for

Plaintiffs, and discussed Defendants' position with respect to the claims in the Amended

Complaint.  Mr. DelBello indicated that Plaintiffs were not inclined to dismiss any of

their claims at this time.


Dated: March 16, 2023                                   /s/ Neal R. Troum_____
                                                        Neal R. Troum

**<u>Certificate of Service</u>**

I, Neal R. Troum, hereby certify that I filed the foregoing with the Court's

ECF/CM electronic filing system, which served it upon all counsel of record.


Dated: March 16, 2023                    /s/ Neal R. Troum_____

                                         Neal R. Troum