# EXHIBIT "1"

**MASTER AGREEMENT FOR BRANDING/MARKETING/ ADVERTISING/CONSULTING SERVICES**

This Master Agreement (the "Agreement") is entered into as follows:

Agreement Date for Reference Purposes: January 1, 2010

Agreement Term: Until December 31, 2010, and thereafter continues in effect until terminated in accordance with the terms of this Agreement.

| | |
|---|---|
| the Bank: | Republic First Bank (the "Bank") |
| Address: | Two Liberty Place<br>50 S. 16th Street, Suite 2400<br>Philadelphia, PA 19102 |
| Consultant: | InterArch |
| Address: | 9000 Atrium Way Suite 100<br>Mount Laurel, NJ 08054 |
| Phone: | 856-439-9000   Fax: 856-439-9005 |
| E-mail: | IA@SSH-INC.Com Vendor No. 22-22 |

Consultant agrees to provide professional services ("Services"), as hereinafter described in this Master Agreement.

### Article 1 - PROJECT SCOPE OF SERVICES

A. *Branding/Marketing/Advertising/Consulting Services.*

Scope to Potential Services Include:
  i. Printed Materials:
      a. Work with client for brochure copy
      b. Design marketing brochures
      c. Obtain quotes
      d. Negotiate best and final price
      e. Press checks
      f. Coordinate delivery
  ii. Marketing:
      a. Develop in-store marketing campaign
      b. Develop buck slips and direct mail
      c. Develop video loop
      d. In-store posters and branding
      e. Store wraps
  iii. Grand Openings:
      a. Develop ads and handouts
  iv. Advertising:
      a. Develop print media for media buy
  v. Ad Specialties:
      a. Research and design items & request samples
      b. Request quotes & negotiate pricing
      c. Ensure all proper testing for child safety, lead content have been conducted
      d. Coordinate delivery & manage timelines
      e. Track shipments and delivery
      f. Prepare shipping instructions and shipping labels
      g. Prepare schedule for magic money machine
      h. Manage Magic Money Machines giveaways for children and adults for each month
      i. Order any promotional products needed
      j. Order all apparel and materials for Blitzing
      k. Negotiate best and final price
  vi. ATM:
      a. Develop graphics for ATM screens
      b. Develop graphics for ATM receipts
  vii. Events:
      a. Develop handouts and leave behinds
  viii. Website updates

### Article 2 - SERVICES PER AMENDMENT

Consultant agrees that it shall furnish Services as authorized and confirmed by execution of amendments to this Agreement or other form of written authorization from Bank ("Amendment"). Any Amendment shall be in writing, and shall be executed by Consultant and Bank prior to the commencement by Consultant of any Services. The method and amount of compensation for Services shall be based upon a fixed fee, the hourly rates for Consultants services and personnel, or any combination thereof.

SERVICES/PERSONNEL
"See Addendum A 2009 - Rate Schedule"

### Article 3 - SCHEDULE

The Services shall be rendered in accordance with the terms of any Amendment.

While this Agreement continues in effect it shall serve as a master agreement pursuant to which the Bank may request and Consultant may provide services of the type that Consultant customarily provides.

### Article 4 - REIMBURSABLE EXPENSES

The following expenses ("Reimbursable Expenses") shall be reimbursed to Consultant to the extent same and direct out-of-pocket expenses of consultant, its employees and/or contractors incurred in connection with the Project and subject to prior authorization as noted:

A. Reproductions charges shall be billed at actual cost. Invoices shall be provided to support all charges upon request.

B. Postage and handling of drawings, specifications and other Documents; overnight shipping, faxes

C. Expenses of transportation in connection with out-or-town travel Including customary Air Travel, Rail Travel, long distance voice, fax and data communications; and filing/administration fees paid for

1

securing approval of authorities having jurisdiction over the Project. Travel reimbursement for mileage shall be made at the current IRS allowable rates. Bridge Tolls, road tolls, and parking fees are allowable reimbursable expenses.

D. Expense of any perspective renderings, photography, models and mock-ups requested by the Bank.

All reimbursable expenses shall be paid at actual costs with no mark-up and supported by invoices and expense statements. All other expenses such as but not limited to Long Distance Telephone, Cell Phones, and Blackberry charges shall be considered non-reimbursable unless previously approved in writing by the Bank.

**Article 5 - SERVICES**
A.   *Basic Scope*

1. Consultant shall devote the time, attention and energy necessary for the competent and effective performance of the Services, and Consultant shall use its best efforts to achieve the Bank's objectives, including without limitation activities with other persons working on the Project, handling and distributing communications relating to the Project and making local telephone calls.

2. During the term of this Agreement, Consultant shall maintain the competence and skills commensurate with Consultant's responsibilities under this Agreement and as required by law.

3. Consultant shall promptly comply with and take all steps necessary to cause all analyses, drawings, designs, plans, specifications, studies and all other documents or instruments prepared or drafted under the terms of its Agreement to comply with all laws, statutes, ordinances and other governmental rules, regulations and requirements, including all amendments thereto, arising out of or relating to Consultant's performances of the Services, including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes and state laws, regulations and codes relating to access for individuals with disabilities to public accommodations.

4. All Services performed hereunder by Consultant shall be subject to review and approval by the Bank at intervals mutually agreed upon at the time of authorization to perform Services.

5. Consultant shall review alternative systems and Approaches with the Bank, prepare analyses, drawings, other documents, and make reasonable revisions to such documents. When necessary, Consultant shall consult with public agencies and other organizations concerning utility services and requirements.

6. Consultant shall recommend to the Bank what appropriate investigations, surveys, tests, analyses and reports are necessary for any project.

B.   *Ethical Code of Conduct and Procurement Philosophy*

1. It is the intention of the Bank that procurement will be made to the best advantage in the open market without favoritism. Best advantage is defined as the most favorable offer available in the competitive market considering prices, quality, performance and payment terms.

2. All employees of the Bank involved in the procurement function are obliged under its "Code of Conduct" to perform business in an ethical manner, thus prohibiting them to accept any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction. Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations. Specifically, no illegal or improper payment is to be made to any person or entity.

3. By execution of this Agreement, Consultant acknowledges awareness of the Bank's "Code of Conduct" and procurement philosophy noted herein. Additionally, Consultant acknowledges its intention to cooperate fully with the Bank in developing only ethical business relationships.

4. Should Consultant encounter any business activity in its efforts to establish a business relationship with the Bank which suggest a violation of philosophy, Consultant shall communicate such encounter to the CEO of the Bank.

5. Consultant represents that by entering into this Agreement that it is not in violation of any legal contractual or other prohibition or restriction.

**Article 6 – BANK'S RESPONSIBILITIES**
A.   *Information*

1. the Bank shall provide sufficient information regarding requirements for the Project.

2. the Bank shall furnish additional information and shall render approvals and decisions as expeditiously as necessary for the orderly process of the Services.

3. the Bank shall make arrangements for Consultant to enter upon public and private lands as reasonably required for Consultant to perform the Services (where applicable).

B.   *Bank Representative.* Until a replacement is designated by the Bank, the individual(s) named below shall serve as the Bank's authorized agent(s) and representative(s) for the purpose of this Agreement (Individually or collectively, "the Bank's Representative"):

2

Harry D. Madonna
Name
Two Liberty Place
50 S. 16th Street, Suite 2400
Address
Philadelphia, PA 19102
City, State Zip Code

Bank's Representative or his designees shall:

1. Be responsible for clarifying the intent of the Bank with respect to this Agreement;
2. Be responsible for the management of the Project, Consultant and the Bank's agents, employees, contractors and other consultants working on the Project;
3. Periodically review Consultant's work;
4. Provide approvals and authorizations as required hereunder for Consultant to take certain actions; and
5. Review and approve Consultant's request for payment. Unless Consultant receives written notice to the contrary, no person(s) other than the individual(s) designated herein as the Bank's Representative shall be authorized to act on the behalf of the Bank with respect to this Agreement.

From time to time, as is appropriate for the particular project, the Bank's Representative may delegate in writing his responsibilities or tasks related to this Agreement to others within the Bank or their subcontractors and suppliers.

### Article 7 - COMPENSATION

A.    **Payments.** Consultant shall provide the Bank with invoices for services rendered in accordance with the terms of each Amendment and the Bank shall pay Consultant within thirty (30) days after the receipt of each such invoice.

B.    **Payment of Termination.** Except for a termination of this Agreement due to the breach of thereof by Consultants, the Bank will pay for all costs and fees earned up to the date of termination within thirty (30) days after Consultant has delivered any all documents prepared pursuant to this Agreement prior to the date of termination. The compensation earned by and to be paid to Consultant by the Bank in lieu of the Fee described in Article 7A, shall be determined by the Bank in its reasonable discretion taking into account the value to the Project of the Services provided by Consultant prior to the date of termination.

C    **Offset.** Notwithstanding anything to the contrary contained in this Agreement, (i) the Bank may reduce any payments due Consultant under this Agreement by amounts owed by Consultant to the Bank or any Affiliate of the Bank (as hereinafter defined) resulting from any contract or other agreement between Consultant and the Bank and/or such Affiliate ("Affiliate Contract"), and/or (ii) the Bank may reduce any payments due Consultant under any Affiliate Contract by amounts owed by Contractor to the Bank under this Agreement. For purposes of this Agreement, an "Affiliate" shall be any entity controlling, controlled by or under common control with, the Bank.

### Article 8 - THE INSTRUMENTS OF SERVICE

A.    All designs, drawings, specifications, studies and other instruments of service produced for the project by or on behalf of Consultant pursuant to this Agreement ("Instruments of Service") shall be suitable for the intended purpose and use.

B.    Upon completion, one (1) copy of all Instruments of Service shall be submitted to the Bank's Representative. Upon termination of this Agreement or at any other time upon request by the Bank, Consultant shall deliver to the Bank the specifications, drawings, templates, reproducible copy, mock-ups, list of materials, list of suppliers, proofs, and other information and materials that represent the work product from Services.

C.    Consultant agrees that all work product created or provided to the Bank pursuant to Services hereunder shall be original to Consultant or its contractors and not copied from other work in a manner that infringes the intellectual property rights of any third party or breaches a contract that Consultant or its contractors have with any third party. Consultant agrees that the Bank owns all work product resulting from the Services and the intellectual property rights there as a work for hire for the Bank. If any such work product or right is not by law a work for hire, Consultant hereby assigns such rights to the Bank without reservation.

D. Consultant represents and warrants that it has all necessary rights and authorities to grant the rights granted hereunder, and that it will not use or incorporate in any work product hereunder any material, design, graphic, brand, content or other property that belongs to a third party unless it has obtained the written approval of the third party and of the Bank prior thereto.

### Article 9 - THIRD PARTY CONSULTANTS

A.    Consultant shall be responsible for the engagement of any third party consultants necessary fur the completion of Consultant's services hereunder. All third party consultants shall be duly licensed in their respective field of specialization and shall perform services in accordance with accepted professional standards. Nothing in this proposal shall be deemed to create any contractual relationship or obligation between the Bank and any individual, firm, or organization hired by Consultant.

B.    Consultant shall take all steps necessary to obtain written assignments of ownership and intellectual property rights, without reservation of rights, from any contractor it hires to create, develop or produce any work product. Consultant shall provide those assignments to the Bank upon request.

### Article 10 - LIENS

A.    Consultant shall pay all third party consultants and other subcontractors and material suppliers engaged by Consultant in a timely manner to prevent liens being filed with respect to the Site or the Project or any of the work product to be produced or delivered pursuant to the Services.

3

If the Bank receives a notice of claim of lien due to non-payment by Consultant, or if a lien is filed due to non-payment by Consultant, Consultant shall, within thirty (30) days after receipt of written notice, (a) resolve the claim or lien and provide the Bank with a lien waiver or release in recordable form or (b) alternatively at Consultant's expense, post a bond satisfactory to the Bank indemnifying the Bank against any such lien. Should Consultant fail to secure such waiver/release or bond within such thirty (30) days, the Bank may, without notice, procure the bond at Consultant's expense or resolve the claim and make payment directly or indirectly to the claimant and deduct same from any monies due to Consultant.

## Article 11 - CONFIDENTIALITY

Consultant shall sign a Bank confidentiality agreement.

## Article 12 – WARRANTY AND INDEMNITY

A.  Consultant warrants that the Services and related deliverables will be original to Consultant or its contractors and will not infringe the trademark, copyright, patent or other intellectual property rights of a third party.

B.  Indemnification - Per Agency Agreement attached as Addendum B.

## Article 14 - TERMINATION

This Agreement may be terminated at any time by either party for any or no reason by providing 30 days' prior written notice of termination to the other party.

If Consultant seeks to terminate this Agreement, it must complete any project in progress and provide the project deliverables, unless the Bank has agreed in writing that the project may be terminated prior to completion.

## Article 15 - CONSULTANT'S RECORDS

A.  Consultant shall maintain full and accurate records of all accounts of time and costs incurred in connection with this Agreement, including without limitation the Services, Additional Services and Reimbursable Expenses.

B.  the Bank shall have the right to inspect and copy, with Consultants assistance and cooperation, Consultant's books and financial records pertaining to the Bank, the Services of Consultants financial condition.

## Article 16 - RELATIONSHIP OF PARTIES

Consultant is an independent contractor with the respect to the Services performed hereunder. Nothing contained herein shall be deemed to create the relationship of partner principal, or joint venture between the parties. Consultant has no right of authority to incur obligations of any kind in the name of or for the account of the Bank nor to commit or bind the Bank to any contract or other obligation.

## Article 17 - NOTICES

All notices to be delivered under this Agreement shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing receipt to sender. Each such notice shall be deemed delivered upon actual delivery or refusal.

Notices shall be address as follow:

To the Bank:  Republic First Bank
Street Address:  50 S. 16th Street, Suite 2400
City/State/Zip:  Philadelphia, PA  19102
Attn:  Harry D. Madonna

To Consultant:  InterArch, Inc.
Street Address:  9000 Atrium Way, Suite 100
City/State/Zip:  Mount Laurel, NJ 08054
Attn:  Shirley Hill, President

## Article 18 - MICELLANEAOUS PROVISIONS

A.  This Agreement shall be governed by and construed in accordance with the law of the Commonwealth of Pennsylvania.

B.  Failure or delay on the part of either party to exercise and right, power, privilege or remedy under this Agreement shall not constitute a waiver thereof.

C.  No modification or waiver by either party of any provision of the Agreement shall be deemed to have been made unless made in writing and signed by parties.

D.  The provisions of the Agreement shall be severable and the invalidity of and provision, or portion thereof, shall not affect the enforceability of remaining provisions.

E.  Consultant shall not transfer or assign this Agreement without the prior written consent of the Bank. the Bank may transfer or assign this Agreement without prior written consent of Consultant.

F.  Consultant hereby warrant and represents the Consultant does not and will not during the course of the Project discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age, handicap or other unlawful basis.

G.  This Agreement shall be binding on, and inure to the benefit of, the respective Parties successors and assigns.

H.  The provisions of Articles 8, 10-12, and 15-18 survive termination or expiration of this Agreement for any reason.

I.  This Agreement may be executed in one or more counterparts, including fax and email counterparts, all of which, when taken together shall constitute one fully executed agreement.

J.  That certain Agency Agreement dated January 1, 2010 by and between InterArch and the Bank is attached hereto and incorporated herein by reference.

**IN WITNESS WHEREOF**, Owner Developer and Consultant through their duly authorized signatories have executed this Agreement as set forth below.

**Republic First Bank**

By: _____

Name: HARRY D. MADONNA

Title: CEO

Date: 1/1/10

**InterArch**

By: _____

Name: _____

Title: _____

Date: _____

5

# Agency Agreement

THIS AGENCY AGREEMENT ("Agreement") is entered into this 1st day of January, 2010, by and between REPUBLIC FIRST BANK, a Pennsylvania corporation with a business address of Two Liberty Place, 50 S. 16th Street, Suite 2400, Philadelphia, PA 19102 (the "Bank") and INTERARCH, INC. a New Jersey corporation with a business address of 9000 Atrium Way, Suite 100, Mount Laurel New Jersey 08054 ("InterArch").

## Background

InterArch has provided to, and the parties hereto desire InterArch to provide to, the Bank various services pursuant to a Rebranding Agreement between the parties dated January 1, 2010, including without limitation, branding, marketing, advertising and consulting services (collectively the "Services").

The parties hereto desire to memorialize certain terms and conditions by which their relationship has been governed and by which they desire their relationship to continue to be governed.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants contained herein, and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, and intending to be bound hereby, the parties hereto agree as follows:

1. **Definition.** For purposes of this Agreement, the term "Project" shall mean any specific work for which the Bank desires any of the Services offered by InterArch during the term hereof. Project shall be deemed to include all Projects undertaken by InterArch for the Bank during the term hereof and all Projects either completed and/or started by InterArch prior to the date hereof.

2. **Other Terms.** The specific Services required of InterArch by the Bank for any individual Project as well as the specific compensation and other terms and conditions shall be set forth in a separate agreement signed by both parties hereto; it being agreed that the terms set forth in the Agreement shall be deemed a part of any such separate agreement.

3. **Agency Designation.** The Bank hereby designates InterArch as its agent for purposes described in the Projects and InterArch hereby accepts such designation as the Bank's agent hereunder. InterArch shall be representative of and shall advise and consult with the Bank (1) during planning and Project completion, and until final payment to the contractors is due, and (2) as and additional service at the Bank's discretion from time to time during the correction period described in the contracts. InterArch shall have authority to act on behalf of the Bank only to the extent provided in contracts with the Bank and this Agreement unless otherwise agreed to.

4. <u>Duties and Responsibilities.</u>  As signed hereunder, InterArch will be entitled to rely upon any instructions or directions furnished to it by the Bank's Chief Executive Officer ("CEO") or other representative designated in writing by CEO as such by the Bank and to apply to such individuals for directions or instructions in connection with its duties, and will be entitled to treat as genuine, and as the document it purports to be, any letter or other document furnished to it by such individuals. InterArch shall incur no liability or responsibility to the Bank or any third party for any action taken in reliance on, and in accordance with, any such instruction, direction, notice, resolution, waiver, consent, order, certificate, or other paper, document or instrument which conforms to the applicable requirements of this Agreement and which is reasonably believed by InterArch to be genuine and to have been signed, delivered, given or authorized by the proper party or parties.

5. <u>Indemnification by the Bank.</u>  Bank shall fully indemnify InterArch against, and defend and hold it, its officers, directors, employees, agents, and other representatives harmless form, any and all liability related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by InterArch and its officers, directors, employees, agents and other representatives which may arise out of acts performed or omitted by the Bank in connection with Projects and this Agreement due to the Bank's or its officers, directors, employees, agents or other representatives own gross negligence or willful misconduct.

6. <u>Indemnification by InterArch.</u>  InterArch shall fully indemnify the Bank against, and defend and hold it, its officers, directors, employees, agents, and other representatives harmless form, any and all liability related expenses (including without limitation reasonable fees and expenses of its counsel) incurred by the Bank and its officers, directors, employees, agents and other representatives which may arise out of acts performed or omitted by InterArch in connection with Projects and this Agreement due to InterArch's or its officers, directors, employees, agents or other representatives own gross negligence or willful misconduct.

7. <u>Notification of Claim.</u>  If any action or claim shall be brought or threatened to be brought against a party in respect of which indemnity may be sought pursuant hereto, such party shall, as soon as practicable (or, in the case of any action or claim which is threatened to be brought, as soon as practicable after such party actually becomes aware of the same) notify the party against whom indemnity may be sought in writing of such action or claim, and the circumstances thereof. In the event of any action or claim being brought or threatened to be brought against such party for which indemnification hereunder may be sought, each of the parties hereto shall provide to the other party hereto such information and assistance as such party shall reasonably request. Each party shall to the extent reasonable and practicable in all circumstances fully cooperate with and consult with the other party as and when reasonably requested by such party in respect of any action or claim referred to herein.

8. **Survival.** The obligations set forth in Paragraphs 5, 6 and 7 shall survive any termination of this Agreement.

9. **Amendments.** The agreement may be amended, supplemented or otherwise modified only by a written instrument executed and delivered by each of the parties hereto.

10. **Governing Law and Jurisdiction.** This Agreement will be governed by, and construed and interpreted in accordance with, the laws of the Commonwealth of Pennsylvania applicable to contracts entered into, and to be fully performed, in the Commonwealth of Pennsylvania. In order to enforce the provisions of Section 18 hereof, the parties agree that the federal and state courts located in the County of Philadelphia, Commonwealth of Pennsylvania, shall have exclusive jurisdiction to hear and determine any suits, actions or proceedings and to settle any disputes between the parties relating to this Agreement and for such purpose each of the parties irrevocably submits to the jurisdiction of such courts. The provisions of this Paragraph 10 shall survive any termination of this Agreement.

11. **Termination.** This Agreement shall be subject to the annual approval of the Bank Board(s); provided, however, that this Agreement may be terminated by either party upon not less than thirty days' written notice (the "Notice Period") should the other party fail to materially perform in accordance with the terms of this Agreement and fails to cure such failure to perform within the Notice Period.

12. **Counterparts.** This Agreement may be executed by the parties hereto on separate counterparts, which counterparts taken together will be deemed to constitute one and the same instrument.

13. **Notices.** Any notice provided for herein must be in writing and shall be deemed given when received and shall be addressed as follows: (i) if to the Bank, to Republic First Bank, Two Liberty Place, 50 S. 16th Street, Suite 2400, Philadelphia, PA 19102, Attn: CEO, and (ii) if to InterArch to InterArch, Inc., 9000 Atrium Way, Suite 100, Mount Laurel, New Jersey 08054, Attn: President. A party may, by notice given in writing to the other party at its above address, designate another address for receipt of notices hereunder.

14. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

15. **Severability.** In case any one or more of the provisions contained in this Agreement should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall in no way be affected, prejudiced or disturbed thereby.

16. **Assignment.** InterArch may not assign this Agreement, or any of its rights or obligations under this Agreement, whether by operation of law or otherwise, without the prior written consent of the Bank.

17. **No Third Party Rights.** Nothing contained in this Agreement or referred to in this Agreement is intended, or shall be construed, to give to any person or other entity other than the parties to this Agreement any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision of this Agreement. This Agreement and all of its provisions are for the sole and exclusive benefit of the parties to this Agreement and their respective successors and permitted assigns.

18. **Arbitration.**

    (a) Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

    (b) Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim; dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statues of limitations

    (c) The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon in accordance with applicable law in any court having jurisdiction thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**Republic First Bank**

By: _[signature]_

Name: HARRY D. MADONNA

Title: CEO

**InterArch, Inc.**

By: _____

Name: Shirley Hill

Title: President