# EXHIBIT "2"



**MASTER AGREEMENT FOR
BRANDING/ MARKETING/ ADVERTISING
CONSULTANT SERVICES**

This Master Agreement (the "Agreement") is entered into as follows:

Agreement Date for Reference Purposes:   January 4, 2010

Agreement Term:

| | |
|---|---|
| Owner/Developer: | Republic First Bancorp, Inc. |
| Address: | 50 South 16th Street<br>Suite 2400<br>Philadelphia, PA 19102 |
| Consultant: | InterArch |
| Address: | 9000 Atrium Way Suite 100<br>Mount Laurel, NJ 08054 |
| Phone: | 856-439-9000    Fax: 856-439-9005 |
| E-mail: | IA@SSH-INC.Com   Vendor No. 22-22 |

Consultant agrees to provide professional services ("Services"), as hereinafter described in this Master Agreement.

### Article 1 – PROJECT SCOPE OF SERVICES

A.   *Branding, Marketing and Advertising*

*Detailed description of scope as outlined in Addendum C*

Scope to Include:
  i. Printed Materials:
  ii. Marketing:
  iii. Grand Openings:
  iv. Advertising:
  v. Ad Specialties:
  vi. ATM:
  vii. Events:

$10,000.00 per month for 12 months commencing January 2009

Client's request for work not listed above will be handled on a project by project basis with fixed fees associated.

B.   *Additional Consultant Services*

Services listed above are inclusive of this contract and Amendments here in. Any additional Consultant Services not listed above will be billed directly to Republic First Bancorp Inc. in care of InterArch.

Additional services ("Additional Services") may be required because of unusual Site conditions or local code or other regulatory requirements. These additional services shall be described in Article 2 below and set forth in an Amendment as contemplated in Article 2.

### Article 2 – ADDITIONAL SERVICES PER AMENDMENT

Consultant agrees that it shall furnish Additional Services as authorized and confirmed by execution of any amendment to this Agreement ("Amendment"). Any Amendment shall be in writing, and shall be executed by Consultant and Owner/Developer prior to the commencement by Consultant of any Additional Services. The method and amount of compensation for Additional Services shall be based upon a fixed fee, the hourly rates for Consultants services and personnel set forth below, or any combination thereof.

SERVICES/PERSONNEL
"See Addendum A 2009 - Rate Schedule"

### Article 3 – SCHEDULE

The Services shall be rendered in accordance with the following schedule:

January 1, 2010 – December 31, 2010

### Article 4 – REIMBURSABLE EXPENSES

The following expenses ("Reimbursable Expenses") shall be reimbursed to Consultant to the extent same and direct out-of-pocket expenses of consultant, its employees and/or contractors incurred in connection with the Project and subject to prior authorization as noted:

A.   Reproductions charges shall be billed at actual cost. Invoices shall be provided to support all charges upon request.

B.   Postage and handling of drawings, specifications and other Documents; overnight shipping, faxes

C.   Expenses of transportation in connection with out-or-town travel Including customary Air Travel, Rail Travel, long distance voice, fax and data communications; and filing/administration fees paid for securing approval of authorities having jurisdiction over the Project. Travel reimbursement for mileage shall be made at the current IRS allowable rates. Bridge Tolls, road tolls, and parking fees are allowable reimbursable expenses.

D.   Expense of any perspective renderings, photography, models and mock-ups requested by Owner/Developer.

All reimbursable expenses shall be paid at actual costs with no mark-up and supported by invoices and expense statements. All other expenses such as but not limited to Long Distance Telephone, Cell Phones, and Blackberry charges shall be considered non-reimbursable unless previously approved in writing by Owner/Developer.

### Article 5 – SERVICES

A.   *Basic Scope*

  1.   Consultant shall devote the time, attention and energy necessary for the competent and effective performance of the Services, and Consultant shall use its best efforts to achieve Owner/Developer's objectives, including without limitation activities with other persons

working on the Project, handling and distributing communications relating to the Project and making local telephone calls.

2. During the term of this Agreement, Consultant shall maintain the competence and skills commensurate with Consultant's responsibilities under this Agreement and as required by law.

3. Consultant shall promptly comply with and take all steps necessary to cause all analyses, drawings, designs, plans, specifications, studies and all other documents or instruments prepared or drafted under the terms of its Agreement to comply with all laws, statutes, ordinances and other governmental rules, regulations and requirements, including all amendments thereto, arising out of or relating to Consultant's performances of the Services, including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes and state laws, regulations and codes relating to access for individuals with disabilities to public accommodations.

4. All Services performed hereunder by Consultant shall be subject to review and approval by Owner/Developer at intervals mutually agreed upon at the time of authorization to perform Services.

5. Consultant shall review alternative systems and Approaches with Owner/Developer, prepare analyses, drawings, other documents, and make reasonable revisions to such documents. When necessary, Consultant shall consult with public agencies and other organizations concerning utility services and requirements.

6. Consultant shall recommend to Owner/Developer what appropriate investigations, surveys, tests, analyses and reports are necessary for any project.

B. Ethical Code of Conduct and Procurement Philosophy

1. It is the intention of Owner/Developer that procurement will be made to the best advantage in the open market without favoritism. Best advantage is defined as the most favorable offer available in the competitive market considering prices, quality, performance and payment terms.

2. All employees of Owner/Developer involved in the procurement function are obliged under its "Code of Conduct" to perform business in an ethical manner, thus prohibiting them to accept any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction. Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations. Specifically, no illegal or improper payment is to be made to any person or entity.

3. By execution of this Agreement, Consultant acknowledges awareness of Owner/Developer's "Code of Conduct" and procurement philosophy noted herein. Additionally, Consultant acknowledges its intention to cooperate fully with Owner/Developer in developing only ethical business relationships.

4. Should Consultant encounter any business activity in its efforts to establish a business relationship with Owner/Developer which suggest a violation of its philosophy, Consultant shall communicate such encounter to the Senior Vice President of Facilities.

5. Consultant represents that by entering into this Master Agreement that it is not in violation of any legal contractual or other prohibition or restriction.

Article 6 – OWNER/DEVELOPER'S RESPONSIBILTIES

A. Information

1. Owner/Developer shall provide sufficient information Regarding requirements for the Project.

2. Owner/Developer shall furnish additional information and shall render approvals and decisions as expeditiously as necessary for the orderly process of the Services.

3. Owner/Developer shall make arrangements for Consultant to enter upon public and private lands as reasonably required for Consultant to perform the Services

B. Owner/Developer Representative. The individual(s) named below shall serve as Owner/Developer's authorized agent(s) and representative(s) for the purpose of this Agreement (individually or collectively, "Owner/Developer's Representative"):

<u>Andrew Logue</u>
Name

<u>50 16th Street Suite 2400</u>
Address

<u>Philadelphia, PA 19102</u>
City, State Zip Code

Owner/Developer's Representative shall:

1. Be responsible for clarifying the intent of the Owner/Developer with respect to this Agreement or the Construction Documents.

2. Be responsible for the management of the Construction Documents, the Project, Consultant and the Owner/Developer's agents, employees, contractors and other consultants working on the Project.

3. Periodically review Consultant's work;

4. Provide approvals and authorizations as required hereunder for Consultant to take certain actions; and

5. Review and approve Consultant's request for payment. Unless Consultant receives written notice to the contrary for a Vice President or the President of Owner/Developer or its parent corporation, no person(s) other than the individual(s) designated herein as the Owner/Developer" Representative shall be authorized to act on the behalf of Owner/Developer with respect to this Agreement

Article 7- COMPENSATION

A. Payments. Consultant shall provide Owner/Developer with any monthly invoices for services rendered. Owner/Developer shall pay Consultant within thirty (30) day after the receipt of each such invoice.

B. Payment of Termination. Except for a termination of this Agreement due to the breach of thereof by Consultants, Owner/Developer will pay for all costs and fees earned up to the date of termination within thirty (30) days after Consultant has delivered any all documents prepared pursuant to this Agreement prior to the date of termination. The compensation earned by and to be paid to Consultant by Owner/Developer in lieu of the Fee

described in Article 7A, shall be determined by owner/Developer in its reasonable discretion taking into account the value to the Project of the Services provided by Consultant prior to the date of termination.

C.  **Offset.** Notwithstanding anything to the contrary contained in this Agreement, (i) Owner/Developer may reduce any payments due Consultant under this Agreement by amounts owed by Consultant to Owner/Developer or any Affiliate of Owner/Developer (as hereinafter defined) resulting from any contract or other agreement between Consultant and Owner/Developer and/or such Affiliate ("affiliate Contract"), and/or (ii) Owner/Developer may reduce any payments due Consultant under any Affiliate Contract by amounts owed by Contractor to Owner/Developer under this Agreement. For purposes of this Agreement, an "Affiliate" shall be any entity controlling, controlled by or under common control with, Owner/Developer.

### Article 8- THE INSTRUMENTS OF SERVICE

A.  All designs, drawings, specifications, studies and other instruments of service produced for the Project by or on behalf of Consultant pursuant to this Agreement ("Instruments of Service") shall be suitable for the intended purpose and use.

B.  Upon completion, one (1) copy of all instruments of Service shall be submitted to Owner/developer's Representative.

C.  All work product shall remain the sole property of Consultant, who grants the Owner/Developer a limited license to utilize such work products on those projects in which Consultant has been engaged. Owner/Developer hereby waives any claim against Consultant and agrees to indemnify and hold Consultant harmless from any claim or liability for injury or loss arising from Owner/Developer's unauthorized reuse of Consultant's designs, drawings or specifications.

### Article 9- THIRD PARTY CONSULTANTS

A.  Consultant shall be responsible for the engagement of any third party consultants necessary for the completion of Consultant's services hereunder. All third party consultants shall be duly licensed in their respective field of specialization and shall perform serviced in accordance with accepted professional standards. Nothing in this proposal shall be deemed to create any contractual relationship or obligation between Owner/Developer and any individual, firm, or organization hired by Consultant.

### Article 10- LIENS

A.  Consultant shall pay all third party consultants and other subcontractors and material suppliers engaged by Consultant in a timely manner to prevent liens being filed with respect to the Site or the Project. If Owner/Developer receives a notice of claim of lien due to non-payment by Consultant, or if a lien is filed due to non-payment by Consultant, Consultant shall, within thirty (30) days after receipt of written notice, (a) resolve the claim or lien and provide Owner/Developer with a lien waiver or release in recordable form or (b) alternatively at Consultant's expense, post a bond satisfactory to Owner/Developer indemnifying Owner/Developer against any such lien. Should Consultant fail to secure such waiver/release or bond within such thirty (30) days, Owner/Developer may, without notice, procure the bond at Consultant's expense or resolve the claim and make payment directly or indirectly to the claimant and deduct same from any monies due to Consultant.

### Article 11- CONFIDENTIALITY

Consultant shall sign a Republic First Bank confidentiality agreement.

### Article 12 - INDEMNITY

A.  Indemnification by Republic First Bank – Per Addendum B.

B.  Indemnification by InterArch – Per Addendum B.

C.  Notification of Claim – Per Addendum B.

D.  Survival – Per Addendum B – Agency Paragraph 8.

### Article 14- TERMINATION

A.  Per Addendum B- Agency Agreement Paragraph 11

### Article 15- CONSULTANT'S RECORDS

A.  Consultant shall maintain full and accurate records of all accounts of time and costs incurred in connection with this Agreement, including without limitation the Services, Additional Services and Reimbursable Expenses..

B.  Owner/Developer shall have the right to inspect and copy, with Consultants assistance and cooperation, Consultant's books and financial records pertaining to Owner/Developer, the Services of Consultants financial condition.

### Article 16- RELATIONSHIP OF PARTIES

Consultant is an independent contractor with the respect to the Services performed hereunder. Nothing contained herein shall be deemed to create the relationship of partner principal, or joint venture between the parties. Consultant has no right of authority to incur obligations of any kind in the name of or for the account of Owner/Developer nor to commit or bind Owner/Developer to any contract or other obligation.

### Article 17- NOTICES

All notices to be delivered under this Agreement shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing a receipt to sender. Each such notice shall be deemed delivered upon actual delivery or refusal.

Notices shall be address as follow:

| | |
|---|---|
| To Owner/Developer: | Republic First Bank |
| Street Address: | 50 16th Street Suite 2400 |
| City/State/Zip: | Philadelphia, PA 19102 |
| Attn: | Andrew Logue |
| | |
| To Consultant: | InterArch, Inc. |
| Street Address: | 9000 Atrium Way, Suite 100 |
| City/State/Zip: | Mount Laurel, NJ 08054 |
| Attn: | Shirley Hill, President |

### Article 18- MICELLANEAOUS PROVISIONS

A.  This Agreement shall be governed by and construed in accordance with the law of the state wherein Project is located.

B.      Failure or delay on the part of either party to exercise and right, power, privilege or remedy under this Agreement shall not constitute a waiver thereof.

C.      No modification or waiver by either party of any provision of the Agreement shall be deemed to have been made unless made in writing and signed by parties.

D.      The provisions of the Agreement shall be savable and the invalidity of and provision, or portion thereof, shall not affect the enforceability of the remaining provisions.

E.      Neither party shall assign or transfer and interest in this agreement.

F.      Consultant hereby warrant and represents the Consultant does not and will not during the course of the Project discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age, handicap or other unlawful basis.

G.      This agreement shall be binding on, and inure to the benefit of, the respective parties successors and assigns.

IN WITNESS WHEREOF, Owner/Developer and Consultant through their duly authorized signatories have executed this Agreement as set forth below.

**Republic First Bank**      **InterArch**

By:_____      By:_____

Name:_____      Name:_____

Title:_____      Title:_____

Date:_____      Date:_____