IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| | : | CIVIL ACTION |
| **INTERARCH, INC.,** | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No.    22-cv-04735 |
| | : | |
| **REPUBLIC FIRST** | : | |
| **BANCORP, INC. et al.,** | : | |
| *Defendants.* | : | |

<u>MEMORANDUM</u>

**KENNEY, J.**                                                                                               **JANUARY 18, 2024**

## I.  INTRODUCTION

Defendants Republic First Bancorp, Inc., Rodney Dean, and John Chessa (together, "Defendants" or "Republic"), move to dismiss Counts I (copyright infringement), V (trade dress infringement), and VI of Plaintiff InterArch, Inc.'s ("InterArch") Second Amended Complaint (the "SAC"). For the foregoing reasons, the motion is **GRANTED** as to Counts V and VI, and **DENIED** as to Count I.

## II.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). To plead a facially plausible claim, the plaintiff must plead factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true

the factual allegations contained in the complaint but disregards rote recitals of the elements of a cause of action, legal conclusions, and conclusory statements. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). With this standard in mind, and because the Court views the facts alleged in the light most favorable to Plaintiff, the Court will only dismiss those claims which are insufficiently pled on the face of the SAC.

### III. DISCUSSION

Since the opinion is written primarily for the parties who are well aware of the record and pleadings in this case, the Court will dispense with a lengthy factual background. In brief, the lawsuit stems from allegations that Republic hired InterArch to design its banks, then fired InterArch, but retained its designs (ostensibly contrary to contractual agreements) and poached InterArch's key employees.

#### a. Trade Dress Infringement

InterArch's trade dress infringement claim must be dismissed because InterArch does not sufficiently allege that the trade dress was associated with itself, rather than its former client, Republic. Trade dress is "the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992)). A plaintiff making a trade dress infringement claim must plead that "(1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir.

2007). Assuming, without deciding, that Plaintiff has successfully pleaded the first element, it fails to plead that the design is inherently distinctive or has acquired secondary meaning, nor has it pleaded a likelihood of confusion.

To successfully plead inherent distinctiveness, a plaintiff must plead that the trade dress is "(i) unusual and memorable; (ii) conceptually separable from the product; and (iii) likely to serve primarily as a designator of origin of the product." *Duraco Prods, Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1434 (3d Cir. 1994). Trade dress is "inherently distinctive if [its] intrinsic nature serves to identify a particular source." *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 2023 WL 4200169, at *25 (D.N.J. June 27, 2023) (alteration in original) (citation omitted). Alternatively, a plaintiff can fulfill the second element of a trade dress claim by pleading secondary meaning, which requires pleading that "in the minds of the public, the primary significance of a product feature or term [must be] to identify the source of the product rather than the product itself." *Duraco*, 40 F.3d at 1440 (alteration in original) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). Trade dress has acquired secondary meaning "[w]hen the primary significance of the trade dress to a consumer is in designating not the product[,] but its producer." *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 82 (3d Cir. 1982).

In pleading the third element of trade dress infringement, "[a] likelihood of confusion exists where consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Latinfood*, 2023 WL 4200169, at *24 (internal quotation marks and citation omitted). The likelihood of confusion element is typically a factual question that can be satisfied upon pleading that the defendant intended to confuse the public into purchasing a competing product by using a trade dress similar to the plaintiff's trade dress. *See, e.g.*, *I.M. Wilson, Inc. v. Otvetstvennostyou*

*"Grichko"*, 500 F. Supp. 3d 380, 410 (E.D. Pa. 2020). When the likelihood of confusion is at issue, courts in the Third Circuit consider the *Lapp* factors, which assess "whether two marks are likely to cause consumer confusion." *Latinfood*, 2023 WL 4200169, at *24 (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)) (internal citation omitted). The most important consideration underlying these factors is whether "ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." *Id.* (alteration in original) (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 216 (3d Cir. 2000)).

InterArch fails to plead both of these elements for much the same reason: it has not put forth any facts suggesting that the trade dress is identifiable with *InterArch* in any way. The SAC is replete with photographs and descriptions suggesting that InterArch created a distinctive trade dress used by Republic and other banks. *See* ECF No. 73 ¶¶ 59-65. However, none of those photographs or descriptions evince any plausible connection between the designs and InterArch. InterArch essentially concedes as much in their SAC, stating that "[c]onsumers came to associate the InterArch Trade Dress, *and therefore Republic*, with a fun, informal, customer-friendly and dog-friendly banking experience." *Id.* ¶ 65 (emphasis added). InterArch admits that consumers associated its designs with Republic, not with InterArch.

InterArch attempts to assert that it is identifiable as the source of the trade dress by noting that some of its advertisements include pictures of Shirley Hill and her dog, sometimes accompanied by Vernon Hill. *Id.* ¶¶ 61-62. InterArch goes on to argue that "[t]his personal, visible association between the trade dress and InterArch's founder and the creator of that dress destroys Defendants' unsupported allegation that consumers would not associate the trade dress with

Shirley Hill and InterArch. Indeed, Ms. Hill and her trademark red dress is herself an element of that trade dress." ECF No. 84 at 10.

However, nothing in the SAC or in the photographs identifies Mrs. Hill as *associated with InterArch*. *See* ECF No. 73 ¶ 62. The photographs have no mention of InterArch or even of Ms. Hill's name, and InterArch has not provided any reason that a customer would see a picture of the Hills or their dog and think that the bank's branding would be associated with a six-person design firm that is not identified anywhere in those photographs or marketing materials.

The SAC does contain some assertions regarding customers' associations of the designs with InterArch, but these are conclusory. For example, InterArch alleges that "[c]onsumers came to associate the InterArch trade dress and copyrights with a fun, informal, customer-friendly and dog-friendly banking experience." ECF No. 73 ¶ 12. *See also id*. ¶ 136 ("[C]onsumers had come to associate the distinctive 'look and feel' of the unique architectural design . . . with InterArch."), ¶ 65 ("InterArch's Trade Dress developed strong secondary meaning, as openly acknowledged by Republic in its 'The Power of Red is Back' slogan."). These statements do not provide any facts linking the designs or the slogan with InterArch, and InterArch provides no mechanism by which a Republic bank consumer would see the designs or slogan and know to associate them with InterArch.

Finally, InterArch's pleadings on the likelihood of confusion element fail at a threshold stage, so there is no need for the Court to consider the factually-intensive *Lapp* factors, which assess "whether two marks are likely to cause consumer confusion." *Latinfood*, 2023 WL 4200169, at *24 (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)) (internal citation omitted). This is so because there are not two products to compare. Both parties claim they own the rights to the designs in Republic's banks. This is an issue addressed by InterArch's copyright

infringement and breach of contract claims, but there is no way to compare the products when there is only one product at issue.

Consequently, drawing all reasonable inferences in InterArch's favor, it has not pleaded that the trade dress designates it as the source or originator of the product, nor has it pleaded that there is any possibility of consumers being confused about whether Republic or InterArch is the true owner of the trade dress. Count V is therefore dismissed.

### b. Unfair Competition

InterArch's unfair competition claim suffers the same infirmities as its trade dress infringement claim and will therefore be dismissed as well. The New Jersey unfair competition statute prohibits companies from "appropriat[ing] for . . . their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J.S.A. § 56:4-1. Republic is a bank that offers "commercial banking services." ECF No. 73 ¶ 41. InterArch is a design firm that offers a "blend of architectural design, marketing and branding services." *Id.* ¶ 2. InterArch does not allege that Republic deals the same product (or services) that InterArch does; nowhere in the SAC does InterArch suggest that Republic sells design, marketing, or branding services to consumers. The case law on this statute makes clear that impermissible copying only makes out a violation where defendants copied the product "and then realized a substantial profit on the sale of the duplicate." *Columbia Broadcasting System, Inc. v. melody Recordings, Inc.*, 341 A.2d 348, 355 (N.J. Super. 1975). In other words, stating an unfair competition claim would have required InterArch to allege that Republic sold the designs that ostensibly belonged to InterArch. Since they did not do so, Count VI is dismissed.

### c. Copyright Infringement

InterArch has stated sufficient facts to allege a claim of copyright infringement. Republic only challenges InterArch's use of the architectural copyrights. Although Republic is correct that *Hill v. Commerce Bancorp, Inc.* reflects that "Commerce owns the IP [at issue]," that decision was issued over 13 years ago, with many intervening events in those years. 2010 WL 2539696, at *6 (D.N.J. June 17, 2010). Moreover, it is not clear that the copyrights at issue in *Hill* are precisely those at issue in this litigation, since they are not identified specifically in the *Hill* decision, nor the Amended Complaint in that case. *See id.*; ECF No. 77-5 ¶¶ 11, 98. Those copyrights were deemed to be owned by Commerce, not Republic, and InterArch alleges that it "created th[o]se [copyrighted] works for Republic and/or allowed Republic to adapt similar works that InterArch had created for Commerce." ECF No. 73 ¶ 49. InterArch's allegations that it owns the copyrights are sufficient to survive a motion to dismiss. *See id.* ¶¶ 8, 48. Republic's motion to dismiss Count I is denied.

## IV. CONCLUSION

For the reasons stated above, Republic's Motion is **GRANTED** as to Counts V and VI, and **DENIED** as to Count I.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**